# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WEATHER KING HEATING & AIR, INC. | ) | Case No. 19-52957-amk |
| | ) | |
| Debtor. | ) | Judge Alan M. Koschik |
| | ) | |
| WEATHER KING HEATING & AIR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 20-5023 |
| | ) | |
| The U.S. SMALL BUSINESS ADMINISTRATION and JOVITA CORRANZA, as Administrator of the U.S. Small Business Administration, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT'S MOTION FOR MANADATORY WITHDRAWAL OF REFERENCE

The United States of America (the "United States"), on behalf of the U.S. Small Business Administration ("SBA") and Jovita Carranza, in her capacity as Administrator for the SBA, hereby moves (this "Motion") to withdraw the reference of the above-captioned adversary proceeding ("Adversary Proceeding"). This Motion is brought pursuant to 28 U.S.C. § 157(d), and Rule 5011 of the Federal Rules of Bankruptcy Procedure.

## INTRODUCTION

Withdrawal of the reference here is mandatory under 28 U.S.C. § 157(d) because Plaintiff's claims in the Adversary Proceeding require the Bankruptcy Court to interpret new non-bankruptcy law—the Coronavirus Aid, Relief, and Economic Stimulus ("CARES") Act,

Pub. L. 116-136, 134 Stat. 281, and the emergency rules issued by the SBA as authorized by the CARES Act in section 1114. Plaintiff's claims relate to the Paycheck Protection Program ("PPP"), CARES Act § 1102, 15 U.S.C. § 636(a)(36), a $659 billion loan guarantee program created under the CARES Act that has extended hundreds of thousands of loans to small businesses and non-profits across the nation over the past two months. Plaintiff argues, among other things, that the SBA violated the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, by exceeding its statutory authority, or acting arbitrarily or capriciously, when it issued an emergency rule excluding bankrupt entities from the PPP. The SBA addressed the bankruptcy exclusion in two separate agency rules. Congress, through the CARES Act and Small Business Act, explicitly delegated authority to the Administrator to issue those rules. Resolving the issues raised in the Adversary Proceeding requires an interpretation—not merely an application—of the newly enacted CARES Act, which necessitates withdrawal of the reference.

On May 22, 2020, in the Adversary Proceeding, the Bankruptcy Court entered a preliminary injunction order against the SBA, concluding that the Plaintiff was likely to succeed on the merits on its APA claims that the SBA exceeded its statutory authority to implement the CARES Act PPP and that the SBA's PPP rules, issued under Congress's authorization in the CARES Act, would apply retroactively to Plaintiff. Bankr. Dkt. 26 at 2-3. The preliminary injunction order incorporated the "findings and conclusions stated" in the Bankruptcy Court's May 21, 2020 oral decision. *Id.* at 2. In that oral decision, the Bankruptcy Court explained that it had the authority to enter a preliminary injunction against the SBA, but that the Bankruptcy Court "lacks authority to enter final judgments with respect to the APA claims." Bankr. Dkt. 41

at 11:20-21. Contemporaneous with filing this Motion, the United States is filing a Notice of Appeal of the Bankruptcy Court's preliminary injunction.

## BACKGROUND

### A.     The Small Business Administration

Through the Small Business Act, 15 U.S.C. § 631 *et seq.*, Congress created the SBA to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns," in order to preserve the system of free competitive enterprise that is "essential" to the economic well-being and security of the Nation. 15 U.S.C. § 631(a). To promote that objective, Congress placed the SBA under the management of a single Administrator, *id.*, § 633(a), (b)(1), who is given "extraordinarily broad powers" under section 7(a) of the Act, 15 U.S.C. § 636(a), to provide a wide variety of technical, managerial, and financial assistance to small-business concerns. *See SBA v. McClellan*, 364 U.S. 446, 447 (1960); *see generally* 15 U.S.C. § 636(a) (describing numerous varieties of general small-business loans the Administrator is "authorized" and "empowered" to make); 13 C.F.R. § 120.1. In the performance of these authorized functions, the Administrator is further empowered to "make such rules and regulations as [she] deems necessary to carry out the authority vested in [her]," and in addition to "take any and all actions . . . [that] [she] determines . . . are necessary or desirable in making . . . loans." 15 U.S.C. § 634(b)(6)-(7). SBA also has the power to establish general policies "which shall govern the granting and denial of applications for financial assistance by the Administration." 15 U.S.C. § 633(d).

### B. Section 7(a) Lending

The section 7(a) loan program is the SBA's primary program for providing financial assistance to small businesses. Under the terms of the Small Business Act, SBA financial assistance to a small business under section 7(a) may take the form of a direct loan, an immediate participation (joint) loan with a lender, or a deferred participation (guaranteed) loan initiated by a lender but a portion of which the SBA will purchase from the lender in the event of a borrower default. 13 C.F.R. § 120.2(a); *see Valley Nat'l Bank v. Abdnor*, 918 F.2d 128, 129 (10th Cir. 1990); *California Pac. Bank v. SBA*, 557 F.2d 218, 219 (9th Cir. 1977). In practice, however, the SBA ordinarily guarantees loans made by private lenders rather than disbursing funds directly to borrowers, *see United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 719 (1979), thus "reduc[ing] risk for lenders … mak[ing] it easier for them to access capital," and thereby "mak[ing] it easier for small business to get loans." *See* https://www.sba.gov/funding-programs/loans.

### C. Section 7(a) Loan Underwriting

Ordinarily, to qualify for an SBA general business loan an applicant must be an operating business organized for profit that is located in the United States, 13 C.F.R. § 120.100(a)-(c); meet the size standards for a "small" business set forth under the statute and SBA rules (usually stated in terms of number of employees, or average annual receipts), *see* 15 U.S.C. § 632(a)(2); 13 C.F.R. § 120.100(d); 13 C.F.R. Part 121; and demonstrate that the desired credit is not available elsewhere on reasonable terms, 15 U.S.C. § 632(h); 13 C.F.R. §§ 120.100(e), 120.101.

In addition to these requirements, the Small Business Act requires that "[a]ll loans made under this subsection *shall* be of such sound value or so secured as reasonably to assure repayment." 15 U.S.C. § 636(a)(6) (emphasis added). For regular 7(a) loans, the factors to

reasonably assure repayment are described in general terms in 13 C.F.R. § 120.150. Further factors are described in greater detail on the official application form for 7(a) loans, SBA Form 1919. Among other considerations, Form 1919 also considers whether the applicant has "ever filed for bankruptcy protection." *Id*. By regulation, requirements listed on Form 1919, and other official SBA forms, comprise part of the "Loan program requirements." 13 C.F.R. § 120.10. Lenders in turn agree to abide by these Loan program requirements when joining the section 7(a) lending program. *Id.*

### D. The Coronavirus Aid, Relief, and Economic Stimulus Act

On March 27, 2020, President Trump signed CARES Act into law, which was passed by Congress to provide an unprecedented package of emergency economic assistance and other support to help individuals, families, businesses, and healthcare providers cope with the enormous economic and public health crises—unlike any experienced in the lifetime of the Nation—triggered by the worldwide coronavirus ("COVID-19") pandemic. *See* SBA, Interim Final Rule, "Business Loan Program Temporary Changes; Paycheck Protection Program" (the "First Interim Final Rule"), 85 Fed. Reg. 20,811 (April 15, 2020).

Among the numerous measures taken by the CARES Act to address the COVID-19 crisis, is the PPP, CARES Act. § 1102, enacted to extend relief to small businesses experiencing economic hardship as a result of the public-health measures being taken to minimize the public's exposure to the COVID-19 virus. *See* First Interim Final Rule, 85 Fed. Reg. 20,811. Specifically, section 1102(a)(2) of the CARES Act adds a new paragraph (36) to section 7(a) of the Small Business Act, 15 U.S.C. § 636(a)(36), to extend loans to eligible small businesses for certain covered uses, including "payroll costs," the "payment of interest on any mortgage obligation," and "rent," among other approved uses. CARES Act § 1102(a)(2); 15 U.S.C.

§ 636(a)(36)(F)(i).

Otherwise, the existing section 7(a) requirements and limitations remain unaltered and govern PPP lending. The CARES Act provides that "*[e]xcept as otherwise provided in this paragraph*, the [SBA] *may* guarantee [PPP] covered loans"—not make loans directly, however—"under the same terms, conditions, and processes as a loan made under this subsection," *i.e.*, section 7(a). 15 U.S.C. § 636(a)(36)(B) (emphasis added).

The PPP then sets forth in extensive detail the precise ways in which PPP covered loans differ from other section 7(a) loans. *Id*. § 636(a)(36)(D)-(R). Among these differences, the PPP authorizes the SBA to guarantee covered loans to various non-profit organizations, independent contractors, and self-employed individuals, as well as to small business concerns, *id*. § 636(a)(36)(D)(i), (ii); relaxes size limitations to allow businesses with as many as 500 employees (or more, depending on the industry in which they operate) to receive assistance, *id*. § 636(a)(36)(D)(i)(I); and (iii) selectively waives certain of the SBA's affiliation rules used to determine small business "size."

The CARES Act leaves unaltered the requirement that "[a]ll loans made under this subsection *shall* be of such sound value or so secured as reasonably to assure repayment." 15 U.S.C. § 636(a)(6) (emphasis added).

The CARES Act initially allocated $349 billion to guarantee PPP loans. CARES Act § 1102(b)(1). On April 16, 2020, the SBA issued a notice stating that the PPP was closed to new applications. Congress then passed the Paycheck Protection Program and Health Care Enhancement Act ("CARES Act II") on April 24, 2020 to add an additional $310 billion to the PPP. PL 116-139 § 101(a)(1). The SBA began accepting new PPP applications from participating lenders on Monday, April 27, 2020.

E.     **Emergency Rulemaking Authority**

The CARES Act authorizes the Administrator of the SBA to issue emergency regulations to implement the PPP without complying with typical notice and comment requirements. CARES Act § 1114.  The Administrator of the SBA posted her First Interim Final Rule on the SBA website on April 3, 2020.  The First Interim Final Rule was subsequently published in the Federal Register on April 15, 2020.  85 Fed. Reg. 20,811.  The First Interim Final Rule "streamlin[es] the requirements of the regular 7(a) loan program." *Id.* at 20,812.  For instance, the rule states that lenders need not comply with case-by-case underwriting requirements of 13 CFR 120.150. *Id.* at 20,812.  Instead, under a section titled "What Do Lenders Have to Do in Terms of Loan Underwriting," the rule states that "Each lender's underwriting obligation under the PPP is limited to [the enumerated] items above and reviewing the 'Paycheck Protection Application Form.'"  The Paycheck Protection Application Form itself requires the borrower to certify, among other things, that it is "not presently involved in a bankruptcy."  SBA Form 2483, Question 1.

On April 24, concurrent with Congress' extension of additional funding for the PPP, SBA posted a new interim final rule, which was subsequently published in the Federal Register on April 28, 2020.  "Business Loan Program Temporary Changes; Paycheck Protection Program – Requirements – Promissory Notes, Authorizations, Affiliation, and Eligibility" (the "Fourth Interim Final Rule).  85 Fed. Reg. 23,450.  The Fourth Interim Final Rule provides additional information regarding a number of eligibility requirements.  Section III(4) of the Fourth Interim Final Rule specifically addresses applicants in bankruptcy.

It provides:

*4. Eligibility of Businesses Presently Involved in Bankruptcy Proceeding.*

*Will I be approved for a PPP loan if my business is in bankruptcy?*

No. If the applicant or the owner of the applicant is the debtor in a bankruptcy proceeding, either at the time it submits the application or at any time before the loan is disbursed, the applicant is ineligible to receive a PPP loan. If the applicant or the owner of the applicant becomes the debtor in a bankruptcy proceeding after submitting a PPP application but before the loan is disbursed, it is the applicant's obligation to notify the lender and request cancellation of the application. Failure by the applicant to do so will be regarded as a use of PPP funds for unauthorized purposes.

The Administrator, in consultation with the Secretary, determined that providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans. In addition, the Bankruptcy Code does not require any person to make a loan or a financial accommodation to a debtor in bankruptcy. The Borrower Application Form for PPP loans (SBA Form 2483), which reflects this restriction in the form of a borrower certification, is a loan program requirement. Lenders may rely on an applicant's representation concerning the applicant's or an owner of the applicant's involvement in a bankruptcy proceeding.

Fourth Interim Final Rule. 85 Fed. Reg. at 23,451.

## ARGUMENT

District courts have original jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Each district court may, however, "provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Pursuant to this authority, the United States District Court for the Northern District of Ohio issued General Order No. 2012-07 referring all bankruptcy cases filed in the district to the bankruptcy court.

However, pursuant to 28 U.S.C. § 157(d):

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party,

> for cause shown. The district court shall, on timely notice of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

The United States' motion, filed 30 days after the Plaintiff's Complaint in the Adversary Proceeding, is timely. "Courts have varied widely in the amount of delay" to allow "between learning of grounds for withdrawal and actually filing a motion to withdraw" the reference. *In re Mahlmann*, 149 B.R. 866, 869 (N.D. Ill. 1993). Delays of a few months are often allowed. *See id.* Section 157(d) "provides little guidance as to what constitutes 'timely,' but courts have generally "defined timely as 'as soon as possible after the moving party is aware of grounds for withdrawal of reference' or as 'at the first reasonable opportunity after the moving party is aware of grounds for withdrawal of reference.'" *Mahlmann*, 149 B.R. at 869 (citation omitted); *see also Sec. Farms v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers*, 124 F.3d 999, 1007 n.3 (9th Cir. 1997) (citing *In re Baldwin-United Corp.*, 57 B.R. 751, 754 (S.D. Ohio 1985); *Chowdhury v. Hansmeier*, 597 B.R. 89, 97 (D. Minn. 2019); *In re Oil Co., Inc.*, 140 B.R. 30, 33 (E.D.N.Y. 1992); *Laine v. Gross*, 128 B.R. 588, 588-89 (D. Me. 1991).

Mandatory withdrawal of the reference is required here. "The purpose of § 157(d) is to assure that an Article III judge decides issues calling for more than routine application of [federal laws] outside of the Bankruptcy Code." *Ames Dep't Stores, Inc. v. Lumbermens Mut. Cas. Co. (In re Ames Dep't Stores, Inc.)*, 512 B.R. 736, 740 (S.D.N.Y. 2014) (citation omitted) (alteration in original).

The Sixth Circuit has not ruled on whether mandatory withdrawal of a reference under § 157 (d) requires "mere consideration or a substantial and material consideration" of non-bankruptcy law. *In re Holman*, 325 B.R. 569, 572 (E.D. Ky. 2005). Districts courts in the

circuit have been split regarding which test is appropriate, but most district courts in the circuit, and elsewhere, have adopted the majority rule:  the "substantial and material" test.  *Id.* at 572-73.  Under that test, withdrawal is mandatory under § 157(d) when "substantial and material" consideration of non-bankruptcy law "is necessary for the *resolution* of a case or proceeding." *Holland v. LTV Steel Co., Inc.*, 288 B.R. 770, 773 (N.D. Ohio 2002) (citing *In re White Motor Corp.,* 42 B.R. 693, 703–704 (N.D. Ohio 1984)) (emphasis in original).  This "entails a significant interpretation of non-bankruptcy federal law."  *Holland* at 773 (citations omitted).  The non-bankruptcy law "need not be of 'cosmic proportions,' but must involve more than mere application of existing law to new facts."  *Id.* (citing *In re Vicars Ins. Agency, Inc.,* 96 F.3d 949, 954 (7th Cir.1996)).

Here, the issues raised by Plaintiff in the Adversary Proceeding require a court to determine whether the SBA exceeded its statutory authority under the newly-enacted CARES Act, or acted arbitrarily or capriciously, in excluding bankrupt entities from participation in the PPP, issues on which the Bankruptcy Court has conceded that it may not enter a final order.  Because the CARES Act was enacted less than seventy-five days ago, on March 27, 2020, this complex issue of statutory interpretation of non-bankruptcy law is an issue of first impression for courts nationwide.  Accordingly, this issue should be heard and resolved in the district court, and therefore, mandatory withdrawal of the reference is required.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests mandatory withdrawal of the reference for the Adversary Proceeding.

Dated:  June 4, 2020                                  Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JUSTIN HERDMAN
United States Attorney

SUZANA K. KOCH
Assistant U.S. Attorney
United States Attorney's Office
801 West Superior Avenue, Suite 400
Cleveland, OH  44113

/s/ Marc S. Sacks
RUTH A. HARVEY
MARGARET M. NEWELL
MARC S. SACKS
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 875
Ben Franklin Station
Washington D.C. 20044
Tel. (202) 307-1104
Fax (202) 514-9163
marcus.s.sacks@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on June 4, 2020, I electronically filed the foregoing UNITED STATES' MOTION FOR MANDATORY WITHDRAWAL OF REFERENCE with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

                                         /s/ Marc S. Sacks
                                         MARC S. SACKS
                                         Commercial Litigation Branch
                                         Civil Division
                                         United States Department of Justice