# UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| THE U.S. SMALL BUSINESS.<br>ADMINISTRATION, | ) | |
| | ) | CASE NO.: 5:20−CV−02711−JRA |
| Movants/Appellants, | ) | |
| | ) | |
| vs. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| WEATHER KING<br>HEATING & AIR, INC., | ) | |
| | ) | |
| Respondent/Appellee. | ) | |

---

## WEATHER KING HEATING & AIR, INC.'S MEMORANDUM
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

STEVEN J. HEIMBERGER (#0084618)
TODD A. MAZZOLA (#0062160)
Roderick Linton Belfance, LLP
50 South Main Street, 10th Floor
Akron, Ohio 44308
Tele: (330) 434-3000
Fax: (330) 434-9220
Email:  sheimberger@rlbllp.com
Email:  tmazzola@rlbllp.com
*Counsel for Weather King*

# TABLE OF CONTENTS

**PAGE**

Table of Authorities.................................................................................................................. ii

Statement of Issues to be Decided.......................................................................................... iv

Summary of the Argument Presented ..................................................................................... iv

# TABLE OF CASES, STATUTES AND

# OTHER AUTHORITIES

## Cases

Allentown Mack Sales & Serv., Inc. v. NLRB, 522 U.S. 359, 374 (1998)........................................ 11

BP Amoco v. Flint Hills Resources, N.D.Ill. No. 05 C 5661, 2009 U.S. Dist. LEXIS 131278, at *12 (Mar. 12, 2009) ...................................................................................................................... 10

Bus. Roundtable v. SEC, 647 F.3d 1144, 1153–54 (D.C. Cir. 2011) .......................................... 12

DV Diamond Club of Flint, LLC v. SBA, 960 F.3d 743 (6th Cir.2020) ................................. iv, 5, 7

Goldrich v. New York States Higher Ed. Servs. Corp. (In re Goldrich), 771 F.2d 28, (2d Cir. 1985) .......................................................................................................................................... 18

In re Haffner, 25 B.R. 882 (N.D. Ind. 1982)............................................................................... 19

In re Hidalgo County Emergency Service Foundation, AP No. 20-02006 (Bankr. S.D. Tex., D. Jones, J.) .................................................................................................................................... 4

In re Rose, 23 B.R. 662 (Bankr. D. Conn. 1982) ......................................................................... 17

In re Stinson, 285 B.R. 239, 246 (Bankr. W.D. Va. 2002).......................................................... 17

John M. Floyd & Assocs., Inc. v. First Florida Credit Union, 443 F.App'x 396, 398 (11th Cir.2011). 8

Judulang v. Holder, 132 S.Ct. 476, 484 (2011) .......................................................................... 11

Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994)............................................................. 15

Latin Ams. for Social & Economic Dev. v. Admr. of the FHA, 756 F.3d 447, 464 (6th Cir.2014).. 11

Morton v. Ruiz, 415 U.S. 199, 201, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974) ............................... 17

Nw. Motorcycle Ass'n v. U.S. Dept. of Agric., 18 F.3d 1468, 1481 (9th Cir. 1994) ....................... 4

Occidental Engineering Co. v. Immigration & Naturalization Service, 753 F.2d 766, 769-70 (9th Cir. 1985)........................................................................................................................................ 5

SAS Inst., Inc. v. Iancu, 138 S. Ct. 1348, 1354 (2018) ................................................................. 6

SEB S.A. v. Sunbeam Corp., S.D.Fla. No. 02-80527-CIV, 2003 U.S. Dist. LEXIS 27552, at *9 (Dec. 17, 2003) ................................................................................................................................. 10

Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89 (D.D.C. 2006)................................................... 5

Stoltz v. Brattleboro Housing Auth. (In re Stoltz), 315 F.3d 80, 88-90 (2d Cir. 2002) ................. 19

Toth v. Mich. State Hous. Dev. Auth., 136 F.3d 477, 480 (6th Cir. 1998)................................... 18

United States v. Cleasby, 139 B.R. 897, 900 (W.D. Wis. 1992).................................................. 18

Weather King Heating & Air, Inc. v. U.S. Small Business Administration et al, Case No. 5:2020ap05023, ECF Doc. No. 42 pp. 4-5............................................................................... 9

## Rules

1 CFR § 51.3 ...................................................................................................................................2

1 CFR §51.5(b)(2); and (3) ............................................................................................................2

1 CFR §51.7 ...............................................................................................................................2, 16

1 CFR §51.9 ...............................................................................................................................2, 16

13 CFR §120, 85 FR 21747, pp. 21747-21752..................................................................iv, 8, 9, 10

**Statutes**

5 U.S.C. § 552(A) ............................................................................................... iv, 14, 16

5 U.S.C. § 702 ............................................................................................................ 4

5 U.S.C. § 706 ..................................................................................................... passim

11 U.S.C. § 364(a) ................................................................................................... 14

11 U.S.C. § 525 ................................................................................... iv, v, 17, 18, 19

11 U.S.C. § 1106 ....................................................................................................... 13

11 U.S.C. § 1107 ....................................................................................................... 13

15 U.S.C. § 636 .................................................................................................... passim

## STATEMENT OF ISSUES TO BE DECIDED

<u>ISSUE 1</u>: DID THE SBA EXCEED ITS STATUTORY AUTHORITY WHEN IT EXCLUDED BANKRUPTCY DEBTORS CATEGORICALLY FROM PPP ELIGIBILITY? --5 U.S.C. § 706(2)(C).

<u>ISSUE 2</u>: IS THE SBA'S RULE EXCLUDING BANKRUPTCY DEBTORS FROM PPP PARTICIPATION ARBITRARY, CAPRICIOUS, AN ABUSE OF DISCRETION, OR OTHERWISE NOT IN ACCORDANCE WITH LAW? -- 5 U.S.C. § 706(2)(A).

<u>ISSUE 3</u>: DOES APPLYING THE BANKRUPTCY DEBTOR EXCLUSION AGAINST WEATHER KING AMOUNT TO IMPERMISSIBLE RETROACTIVE RULEMAKING IN VIOLATION OF 5 U.S.C. §706(2)(A) AND (D) AND OFFEND 5 U.S.C. § 552(A)?

<u>ISSUE 4</u>: DOES THE RULE EXCLUDING DEBTORS AS A SINGULAR CLASS OF PPP APPLICANTS THAT ARE INELIGIBLE TO PARTICIPATE BASED ON CREDITWORTHINESS CONCERNS VIOLATE 11 U.S.C. §525(A)?


## SUMMARY OF THE ARGUMENT PRESENTED

Weather King is entitled to summary judgment on its APA judicial review claims. Not only does "any" mean any as the Sixth Circuit Court of Appeals determined in <u>DV Diamond Club of Flint, LLC v. SBA</u>, 960 F.3d 743 (6th Cir.2020) in rejecting the SBA's argument that it remained free to exclude businesses outside of the eligibility requirements that are set forth in 15 U.S.C. § 636(a)(36), but "same" means same and "all" means all.

If anything, the SBA is **<u>restricted</u>** by 15 U.S.C. § 636(a)(36)(B) to employing the "**<u>same</u>** terms, conditions and processes" it uses for guaranteeing and approving non-PPP loans made under 7(a). Clearly under any fair reading of 15 U.S.C. § 636(a)(36)(B), the SBA would not be permitted to scrap 13 C.F.R. § 120.150 and Subpart B, Chapter 4 of its Standard Operating Procedures 50 10 5 in favor of creating **<u>new</u>** "quick and dirty" rule to replace "terms, conditions and processes" it regularly employs under 7(a) providing that only bankruptcy debtors are ineligible for PPP participation based on creditworthiness considerations.

Moreover, if the SBA were required by 15 U.S.C. § 636(a)(6) to ensure that "[**a]ll loans** made under [the PPP] shall be of such sound value or so secured as reasonably to assure repayment", as it

argues, the SBA would have been without authority to guarantee the some $35 billion of loans that it approved under the PPP pursuant to rules that did not require any determination of any borrowers' creditworthiness beyond that the applicant was not "involved in any bankruptcy." The SBA's own actions betray the strained statutory analysis it employs.

Even if this Court were to determine that the rule excluding bankruptcy debtors did not exceed the SBA's statutory authority, and was not the result of arbitrary and capricious rulemaking, however, the rule was not properly enacted until **after** Weather King had applied for and was approved to participate in the PPP. Accordingly, the rule is not enforceable against Weather King in accordance with 5 U.S.C. §706(2)(A) and (D) and 5 U.S.C. § 552(a)(1).

Finally, it is clear that the PPP is a government grant or benefit program dressed up in SBA loan program clothing. The program did not even-handedly disqualify Weather King from participating in the program based on creditworthiness concerns. Instead it eliminated the Debtor solely based on its status as a debtor in bankruptcy in violation of 11 U.S.C. § 525(a).

## I.    BACKGROUND FACTS AND PROCEDURE

### A. Debtor's Business and the Chapter 11 Case.

On December 16, 2019, Weather King Heating & Air, Inc. ("Weather King") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Weather King's plan of reorganization has since been approved and is being implemented.

### B. The CARES Act and the PPP.

On March 27, 2020, the President of the United States signed into law the CARES Act, § 3548, 116 Cong. (2020). Among other things, the CARES Act was intended to allow businesses – particularly small businesses who have been hit hard by COVID-19-related disruptions to the economy – to survive and continue paying their employees during the pandemic. Within the CARES Act, this policy is to be carried out through the PPP, which is set forth in Title I of the CARES Act, and which amends section 7(a) of the Small Business Act. The PPP allows lenders to provide federally-guaranteed loans to small businesses to cover payroll, as well as other expenses including payments of interest on mortgages, rent, utilities, and interest on other debt.

Neither the CARES Act, the Small Business Act, nor any other applicable law or duly-enacted regulation that was in effect at the time Weather King applied for and received approval for a PPP loan prohibited PPP loans to bankruptcy debtors.

### C. Disqualification of Bankruptcy Debtors from Participating in the PPP.

To receive a PPP loan, a qualified business must apply with any federally-insured participating lender, using an application form created by the SBA. On or about April 2, 2020, the SBA released Official SBA Form 2483, titled "Paycheck Protection Program Borrower Application Form," which is the SBA's official form of application for a PPP loan (the "Borrower PPP Application"). The Borrower PPP Application, while referenced in the SBA's First Interim Final Rule (85 FR 20811) was not appended to the First Interim Final Rule as printed in the Federal Register, as would be required

under law to enact a substantive rule of general applicability. The Borrower PPP Application was not placed on file with the Office of the Federal Register, so as to permit rulemaking by incorporation. See 1 CFR § 51.3. Moreover, it is clear from the face of the First Interim Final Rule that the bankruptcy debtor eligibility criterion of the Borrower PPP Application was not incorporated by reference into that IFR, because: (1) the Borrower PPP Application is not the type of publication that is eligible for incorporation by reference (See 1 CFR §51.7); (2) the preamble of the First Interim Final Rule does not meet the requirements for incorporating the Borrower PPP Application's bankruptcy debtor exclusion as a substantive rule of general applicability (See 1 CFR §51.5(b)(2); and (3) the language of incorporation fails to meet the requirements of 1 CFR §51.9.

The first numbered question of the Borrower PPP Application asks, "Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, *or presently involved in any bankruptcy*?" Despite the fact that no law or regulation existed disqualifying bankruptcy debtors from the PPP at the time the Borrower PPP Application was authorized for use by the SBA and provided to the Debtor, the Borrower PPP Application stated that if the applicant answered "yes" to question No. 1, "the loan will not be approved."

The Debtor otherwise met all criteria for eligibility to participate in the PPP. In fact, the Debtor applied for a PPP loan on April 14, 2020 and on April 25, 2020 was approved for the loan in the amount of $109,200.00. It was only *after* the Debtor had been approved for the loan that the SBA first issued the Fourth Interim Final Rule (effective date of April 28, 2020), stating in part that "Will I be approved for a PPP loan if my business is in bankruptcy? No. . . . The Administrator, in consultation with the Secretary, determined that providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans." 85 FR 23450, 23451.

**D. <u>Internal Contradiction and Forward-Looking Statement of Application Regarding the Interim Final Rules Issued After the First Interim Final Rule.</u>**

Despite stressing a bankruptcy debtor's "unacceptably high risk of non-repayment" as rationale for enacting a bankruptcy debtor exclusion as part of its Fourth Interim Final Rule (effective April 28, 2020), the SBA previously had *completely disavowed creditworthiness as a consideration for borrower eligibility to receive PPP loans* in its Third Interim Final Rule (effective April 20, 2020)[1], stating "The Administrator recognizes that, unlike other SBA loan programs, *the financial terms for PPP Loans are uniform for all borrowers*, and the standard underwriting process does not apply *because no creditworthiness assessment is required for PPP Loans*."[2]   85 FR 21747, 21750-51.

Moreover, the SBA issued a document entitled "PAYCHECK PROTECTION PROGRAM LOANS, Frequently Asked Questions (FAQs)" that was available on its public website.[3]   As of the date that the SBA enacted its Fourth Interim Final Rule declaring bankruptcy debtors ineligible for participation, it also provided the following guidance:

> 17. Question: I filed or approved a loan application based on the version of the PPP Interim Final Rule published on April 2, 2020. Do I need to take any action based on the updated guidance in these FAQs?
>
> Answer: No. Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application. However, borrowers whose previously submitted loan applications have not yet been processed may revise their applications based on clarifications reflected in these FAQs.

---

[1] The second Interim Final Rule issued April 15, 2020, and the third Interim Final Rule issued April 20, 2020 were silent with respect to the eligibility of debtors in bankruptcy and entities owned by debtors in bankruptcy.

[2] The rationale was used to explain why eligible businesses owned by directors or shareholders of a PPP Lender were themselves permitted to apply for a PPP Loan through the lender with which they are associated.

[3] https://www.sba.gov/sites/default/files/2020-12/Final%20PPP%20FAQs%20%28December%209%202020%29-508.pdf

**E. Weather King's Request For A Preliminary Injunction And The Bankruptcy Court's Order.**

At the time Weather King was approved for and received its PPP loan, at least one bankruptcy court had issued a temporary restraining order against the SBA enjoining enforcement of its position that a Chapter 11 debtor is ineligible to participate in the PPP, based on a determination that it was likely the rule is unlawful. See In re Hidalgo County Emergency Service Foundation, AP No. 20-02006 (Bankr. S.D. Tex., D. Jones, J.). Weather King did not want to use loan proceeds in a manner that was properly restricted by law or expose itself to fines and penalties for misuse. Accordingly, it brought the issue to the attention of the Bankruptcy Court through filing of a motion for a temporary restraining order and preliminary injunction to allow a court to make the decision regarding whether retention and use of the loan proceeds in bankruptcy was permitted by the CARES Act.

The Bankruptcy Court granted Weather King's motion for a temporary restraining order against the SBA and later its Motion for a Preliminary Injunction.

Consistent with the design of the PPP, Weather King has used the loan proceeds to pay its employees and to rehire furloughed employees and other permitted uses under the CARES Act (*e.g.*, light, heat and rent).

The SBA subsequently filed an unopposed motion to withdraw the reference from the Bankruptcy Court, which this Court granted. Pursuant to the briefing schedule adopted by the Court, the Weather King now files its Motion for Summary Judgment.

## II.    LAW AND ARGUMENT

### A.  Standard of Review.

The APA provides for judicial review of final agency decisions. 5 U.S.C. §§ 702, 706. Courts routinely resolve APA challenges to an agency's administrative decision by summary judgment. Nw. Motorcycle Ass'n v. U.S. Dept. of Agric., 18 F.3d 1468, 1481 (9th Cir. 1994). However, in cases involving review of a final agency action under the APA, courts do not utilize the standard analysis

under Fed. R. Civ. P. 56 for determining whether a genuine issue of material fact exists "because of the limited role of a court in reviewing the administrative record." <u>Sierra Club v. Mainella</u>, 459 F. Supp. 2d 76, 89 (D.D.C. 2006) (citations omitted); see also <u>Occidental Engineering Co. v. Immigration & Naturalization Service</u>, 753 F.2d 766, 769-70 (9th Cir. 1985). Summary judgment serves as the mechanism for deciding, as a matter of law, whether agency action is supported by the administrative record and otherwise consistent with the APA standard of review. <u>Sierra Club</u>, 459 F. Supp. 2d at 90.

**B.** **<u>The SBA Exceeded its Statutory Authority in Excluding Bankruptcy Debtors from PPP Participation --5 U.S.C. § 706(2)(C).</u>**

1. <u>15 U.S.C. § 636(a)(36), as enacted by Section 1102 of the CARES Act, does not permit the SBA to exclude Bankruptcy Debtors from participation.</u>

Pursuant to 5 U.S.C. § 706(2)(C), the Bankruptcy Court issued a preliminary injunction wherein it determined that the SBA's rule declaring debtors in bankruptcy ineligible to participate in the PPP is likely to be proven to be in excess of the SBA's statutory authority granted under Section 1102 of the CARES.

In issuing its decision, the Bankruptcy Court determined that the plain language of Section 1102 of the CARES Act and paragraph 15 U.S.C. § 636(a)(36), as enacted thereby, did not permit the SBA latitude to promulgate a rule declaring bankruptcy debtors ineligible to participate in the PPP. The Bankruptcy Court's analysis was similar to that provided by the United States Sixth Circuit Court of Appeals in its recent order in <u>DV Diamond Club of Flint, LLC v. SBA</u>, 960 F.3d 743 (6th Cir.2020), which denied the SBA's request for a stay pending appeal, chiefly because the appellate court determined that the SBA was unlikely to succeed on the merits of the appeal in demonstrating that the SBA did not exceed its statutory authority.

Like the <u>DV Diamond Club</u> court, the Bankruptcy Court below determined that any business concern with less than 500 employees which was operating on February 15, 2020 was eligible to receive a PPP loan. Subparagraph 15 U.S.C. § 636(a)(36)(D) specifically states that eligibility to receive PPP

loans is increased, and states that **_any business concern_** employing not more than 500 employees

***shall be*** eligible for a PPP loan.    As the Sixth Circuit Court of Appeals determined in its order

addressing the requested stay in *DV Diamond Club*:

> The term "any" carries an expansive meaning. See <u>SAS Inst., Inc. v. Iancu</u>, 138 S.
> Ct. 1348, 1354 (2018). It "refer[s] to a member of a particular group or class without
> distinction or limitation" and, in this way, "impl[ies] every member of the class or
> group." <u>Id</u>. (quoting Oxford English Dictionary (3d ed., Mar. 2016)). Thus, the
> Act's specification that "any business concern" is eligible, so long as it meets the
> size criteria, is a reasonable interpretation. That broad interpretation also comports
> with Congress's intent to provide support to as many displaced American workers
> as possible and, in doing so, does not lead to an "absurd result" as the SBA claims.

<u>Id.</u> at 746.

That is not the only reason to conclude that the CARES Act (as it stood at the time the

Plaintiff/Debtor received its PPP loan) did not permit the SBA to exclude bankruptcy debtors from

participating in the PPP based on creditworthiness concerns.  Outside of subparagraph 636(a)(36)(D),

clause 15 U.S.C. § 636(a)(36)(F)(ii) specifically directs eligibility criteria that lenders are to apply in

vetting PPP loans, stating that: "[i]n evaluating the eligibility of a borrower for a covered loan with the

terms described in this paragraph**, a lender shall consider whether the borrower— (aa)was in**

**operation on February 15, 2020; and (bb) (AA)had employees for whom the borrower paid**

**salaries and payroll taxes; or (BB)paid independent contractors, as reported on a Form 1099–**

**MISC**." (Emphasis added).

Subparagraph 15 U.S.C. § 636(a)(36)(G) then states the "borrower requirements" and requires

a borrower to certify that  **(I) that the uncertainty of current economic conditions makes**

**necessary the loan request to support the ongoing operations of the eligible recipient*;*** (II)

funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments,

and utility payments; (III) that the eligible recipient does not have an application pending for a loan

under this subsection for the same purpose and duplicative of amounts applied for or received under

a covered loan; and (IV) during the period beginning on February 15, 2020 and ending on December 31, 2020, that the eligible recipient has not received amounts under this subsection for the same purpose and duplicative of amounts applied for or received under a covered loan. (Emphasis added.)

Three things are not reasonably in dispute. The first is that paragraph 636(a)(36), as added by the Section 1102 of the CARES Act, itself contains numerous loan eligibility requirements for determining who is eligible to participate in the PPP. The second is that the PPP loans were designed to be disbursed to small businesses in financial jeopardy of ceasing operations based on the weight of the pandemic. The third is that paragraph 636(a)(36) **does <u>not</u> contain a requirement making bankruptcy debtors ineligible for a PPP loan**.

In arguing that Section 1102 of the CARES Act left it room to promulgate a rule declaring bankruptcy debtors categorically ineligible to participation in the PPP, the SBA relies on two statutory provisions of subsection 15 U.S.C. § 636(a), existing after amendment by Section 1102 of the CARES Act. The first is subparagraph 636(a)(36)(B), which states: "Except as otherwise provided in this paragraph, the [SBA] may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection." The second is paragraph 636(a)(6), which requires "[a]ll loans made under this subsection shall be of such sound value or so secured as reasonably to assure repayment." According to the SBA, subparagraph 636(a)(36)(B) means that paragraph 636(a)(6)'s "sound value" requirement remains applicable to PPP loans, and the SBA's rule barring bankruptcy debtors from participating in the PPP is authorized by that "sound value" requirement.

In <u>DV Diamond Club</u>, the Sixth Circuit considered 15 U.S.C. § 636(a)(36)(B), stating that "[t]his provision likely constitutes a catch-all governing **procedures otherwise unaffected by the mandate of the CARES Act and the PPP and does not detract from the broad grant of eligibility**." *Id.* at 747 (Emphasis added). Placed into context in this case, the SBA is attempting to use this "catch-all provision" to import (and then selectively employ) the substantive command of 15

7

U.S.C. § 636(a)(6), which requires "[a]ll loans made under this subsection shall be of such sound value or so secured as reasonably to assure repayment."

Considering its text, 15 U.S.C. § 636(a)(36)(B) is not reasonably interpreted to permit the SBA to promulgate a **new rule** rendering bankruptcy debtors as the singular class of applicants who are ineligible for PPP loans based on the "sound value" requirement of 15 U.S.C. § 636(a)(6). Subparagraph 636(a)(36)(B) reads: "Except as otherwise provided in this paragraph, the [SBA] may guarantee covered loans under the **same terms, conditions, and processes as a loan made under this subsection**. The meaning of the word "same" is plain. Read in context, it prohibits the SBA from adopting new and different "terms, conditions and processes" for guaranteeing PPP loans that are not expressly set forth in the CARES Act. See, *e.g.,* John M. Floyd & Assocs., Inc. v. First Florida Credit Union, 443 F.App'x 396, 398 (11th Cir.2011)(plain meaning of "same terms" cannot encompass new rights and obligations).

Prior to the passage of the CARES ACT, the SBA had, in fact, established its terms, conditions and processes for ensuring that SBA loans are of "such sound value . . . as reasonably to assure repayment" within the meaning of 15 U.S.C. § 636(a)(6) for its loan programs. Those terms, conditions and processes are set forth in 13 C.F.R. § 120.150 entitled "What are the SBA's lending criteria." That rule sets forth seven areas of consideration for evaluating creditworthiness: (a) character, reputation, and credit history of the applicant (and the Operating Company, if applicable), its associates, and guarantors; (b) experience and depth of management; (c) strength of the business; (d) past earnings, projected cash flow, and future prospects; (e) ability to repay the loan with earnings from the business; (f) sufficient invested equity to operate on a sound financial basis; and (g) potential for long-term success.

The SBA admits that it is **not** following these **same terms, conditions and processes** that are used for other Section 7(a) SBA loans to determine whether a PPP loan is of "such sound value

or so secured as reasonably to assure repayment."  As the SBA noted in its motion requesting withdrawal of the reference, it is **<u>not</u> using 13 C.F.R. § 120.150's lending criteria** to determine that there is a reasonable assurance that the PPP loan will be repaid. <u>Weather King Heating & Air, Inc. v. U.S. Small Business Administration et al</u>,  Case No. 5:2020ap05023, ECF Doc. No. 42 pp. 4-5. Likewise, the SBA is **<u>not</u>** using the **<u>same</u>** credit standards set forth in Subpart B, Chapter 4 of its Standard Operating Procedures 50-10-5[4] to determine that there is a reasonable assurance that PPP loans will be repaid.

Exchanging use of 13 C.F.R. § 120.150's robust creditworthiness lending criteria (and the even more robust credit standards set forth in Subpart B, Chapter 4 of the SBA's Standard Operating Procedures 50 10 5) for the SBA's new rule that singularly excludes bankruptcy debtors from the PPP loan program based on creditworthiness assumptions quite obviously does not guarantee loans "under the **<u>same</u>** terms, conditions, and processes as a loan made under this subsection [*i.e.*, 7(a) loans]." The SBA has created **new** terms, conditions and processes for PPP loan eligibility that are **different** from those used for other SBA small business loans.  To the extent that the SBA attempts to employ subparagraph 636(a)(36)(B) to justify enforcement of its rule, it must respect the restrictive language of that subparagraph.   Simply put, "same" means same!

A second problem with the SBA's argument when considering the text of the CARES Act is that the establishment of a rule that excludes only debtors in bankruptcy based on "sound value" considerations and applies no creditworthiness assessment to any loan applicant beyond asking whether it is "currently involved in any bankruptcy" does not comport with 15 U.S.C. § 636(a)(6)'s express requirement that "**<u>[a]ll loans </u>**made under this **subsection shall be of such sound value or**

---

[4] <u>https://www.sba.gov/sites/default/files/2019-02/SOP%2050%2010%205%28K%29%20FINAL%202.15.19%20SECURED%20copy%20paste.pdf</u>  Beginning at page 177.

**so secured as reasonably to assure repayment**." See <u>SEB S.A. v. Sunbeam Corp.</u>, S.D.Fla. No. 02-80527-CIV, 2003 U.S. Dist. LEXIS 27552, at *9 (Dec. 17, 2003), fn. 3 (the plain meaning of "all" is all, every, the total amount); <u>BP Amoco v. Flint Hills Resources</u>, N.D.Ill. No. 05 C 5661, 2009 U.S. Dist. LEXIS 131278, at *12 (Mar. 12, 2009)(the plain meaning of "all" is a collective reference to each item included in the whole category.)

If a PPP loan applicant is not a debtor in bankruptcy, the SBA does nothing and requires nothing to be done by lenders to determine that there is a reasonable assurance that the PPP loan will be repaid. The SBA stated as much in its Third Interim Final Rule: "The Administrator recognizes that, unlike other SBA loan programs, the financial terms for PPP Loans are uniform for all borrowers, and the standard underwriting process does not **apply because no creditworthiness assessment is required for PPP Loans**." 13 CFR 120, 85 FR 21747, pp. 21747-21752 (Emphasis added).

The SBA's argument that it remains obliged under 15 U.S.C. § 636(a)(6) to assure that PPP loans are of "sound value to reasonably assure repayment," and is carrying out that obligation by singularly excluding bankruptcy debtors from participating in the program, is a sophistry.

Looking to the statute as a whole, it is clear that Congress's aim was "to provide support to as many displaced American workers as possible" during a global pandemic by a speedy infusion of capital. See <u>DV Diamond Club</u>, at 746. The actual terms of the PPP demonstrate that Congress authorized this relief without concern for the likelihood of repayment of a PPP loan. The program requirements, as enacted through the express language of the statute, do not permit a lender to take collateral for security or to collect personal guarantees. 15 U.S. Code § 636(a)(36)(J). The SBA has no recourse against any individual shareholder, member, or partner of an eligible recipient of a covered loan for nonpayment, except in situations of misuse of funds. 15 U.S. Code § 636(a)(36)(F)(v). The entire design of the PPP is that the loans are forgivable (*i.e.*, are not repaid) so long as they are used for the purposes set forth by 15 U.S. Code § 636(a)(36). Finally, an applicant is, in essence, required

to certify its condition of financial distress – i.e., that "uncertainty of current economic conditions makes necessary the loan request to support the ongoing operations of the eligible recipient" – to qualify for the loan. 15 U.S.C. § 636(a)(36)(G)(i). It is clear that the legislature did not intend the SBA to be hamstrung by 15 U.S.C. § 636(a)(6)'s requirement that **"[a]ll loans** made under this subsection **shall be of such sound value or so secured as reasonably to assure repayment**." Such a requirement would be fundamentally incompatible with the purpose of the CARES Act and the new PPP small business loan product that it adds in paragraph 636(a)(36). Said another way, the "sound value" requirement is inconsistent with the terms of the PPP, and therefore excluded by the "[e]xcept as otherwise provided in this paragraph" proviso of subparagraph 636(a)(36)(B).

   **C.** **Alternatively, the SBA's Rule is Arbitrary, Capricious, an Abuse of Discretion, or Otherwise not in Accordance with Law --5 U.S.C. § 706(2)(A).**

   Although the Bankruptcy Court declined to address the issue, the facts demonstrate that even if it were determined that the SBA did not exceed its statutory authority in making bankruptcy debtors ineligible for PPP loans, its rule is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and should be set aside under 5 U.S.C. § 706(2)(A).

   Under the APA, the court will set aside a final agency action if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Latin Ams. for Social & Economic Dev. v. Admr. of the FHA, 756 F.3d 447, 464 (6th Cir.2014). In making this assessment, the court must determine whether the agency considered the relevant factors and has provided an explanation that rationally connects the data with the choice made. *Id.* Not only must an agency's decreed result be within the scope of its lawful authority but the process by which it reaches that result must be logical and rational." Allentown Mack Sales & Serv., Inc. v. NLRB, 522 U.S. 359, 374 (1998*)*. At base, arbitrary and capricious review functions to "ensur[e] that agencies have engaged in reasoned decisionmaking.*"* Judulang v. Holder, 132 S.Ct. 476, 484 (2011).

The SBA's rule excluding bankruptcy debtors from participating in the PPP fails all "rational rulemaking" considerations.

First, the SBA has promulgated internally inconsistent rules. A regulation that is internally inconsistent is, by definition, arbitrary and capricious within the meaning of APA § 10, 5 U.S.C. § 706. See Bus. Roundtable v. SEC, 647 F.3d 1144, 1153–54 (D.C. Cir. 2011) (vacating a rule that lacked datum on a crucial assumption and was based on a discussion that was "internally inconsistent and therefore arbitrary").

The SBA disclaims creditworthiness altogether as a consideration under the PPP in its Third Interim Final Rule, stating "[t]he Administrator recognizes that, unlike other SBA loan programs, the financial terms for PPP Loans are uniform for all borrowers, and the standard underwriting process does not apply **because no creditworthiness assessment is required for PPP Loans**. Business Loan Program Temporary Changes; Paycheck Protection Program—Additional Eligibility Criteria and Requirements for Certain Pledges of Loans, 85 Fed. Reg. 21747 (April 20, 2020), p. 21750 (Emphasis added). The SBA then purports to establish creditworthiness as the basis for disqualifying bankruptcy debtors in in its Fourth Interim Final Rule, citing the "unacceptably high risk of non-repayment of the unforgiven loans." 85 Fed. Reg. 23450, 23451. This is the rationale that the SBA expressed in the Fourth Interim Final Rule to support its decision to exclude bankruptcy debtors as a singular class of potential applicants that would be disqualified from PPP participation based on creditworthiness concerns.

Either 15 U.S.C. § 636(a)(6) is incorporated into 15 U.S.C. § 636(a)(36) and thus requires a creditworthiness assessment for **all PPP loan applicants** or it is not incorporated into 15 U.S.C. § 636(a)(36) permitting a creditworthiness assessment an eligibility factor for **none**. The SBA cannot have it both ways. It strains credulity for the SBA to state that its action is in keeping with 15 U.S.C. § 636(a)(6)(requiring **all** SBA loans to be of sound value) where the SBA has approved hundreds of

billions of dollars in PPP loans to borrowers with no creditworthiness assessment, no collateral or personal guarantees, and without recourse against shareholders, members or partners of the borrowers. All such loans do not include reasonable assurances of repayment: None of them do.

It is also clear that despite the SBA's claim that 15 U.S.C. § 636(a)(36)(B) permits it to "guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection," the SBA is not using the **same terms, conditions and processes** it uses for guaranteeing non-PPP loans made to small businesses under 7(a). Instead, it has completely dispensed with the creditworthiness terms, conditions and processes it has established under 13 C.F.R. § 120.150 and Subpart B, Chapter 4 of its Standard Operating Procedures 50 10 5 and replaced them by automatically rejecting of a single class of applicants – bankruptcy debtors.

These problems are only compounded when the rationale cited by the SBA to exclude debtors in bankruptcy is scrutinized and considered against the backdrop of small businesses that the SBA has determined are eligible for PPP loans.

First, in contradiction to the SBA's cited reason that PPP loan participation by bankruptcy debtors would lead to an unacceptably high risk of unauthorized use of funds, bankruptcy debtors are subject to judicial oversight and submit monthly reports to a bankruptcy court that is available to creditors, including the lending bank. 11 U.S.C. §§ 1106, 1107; Fed. R. Bankr. P. 2015(a). This is in contrast to borrowers outside of bankruptcy that the SBA deems eligible, whose use of the funds is not subject to oversight by anyone other than the borrowers themselves.

Second, in contradiction to the SBA's cited rationale that PPP loan participation by bankruptcy debtors would lead to an unacceptably high risk of non-repayment, lenders would actually be in a better position to have their unsecured loans paid (all PPP loans are unsecured) if the borrower is a debtor in bankruptcy. This is because unlike all other PPP loans where the lender stands as a general unsecured creditor in the event of a default, a loan given to a Chapter 11 debtor in possession such as

Weather King will be subject to an administrative priority, placing the lender above other general unsecured creditors with a priority for receiving payment. See 11 U.S.C. § 364(a).

The SBA entirely failed to consider important aspects of the problem – that the CARES Act is designed to provide relief for small business employees during a global pandemic and that to the extent that assurance of payment and risk of misuse of funds are proper considerations, bankruptcy provides the lender superior protection over masses of borrowers who receive a PPP loan.

As explained above, the SBA's attempted justification for excluding only debtors in bankruptcy from participating in the PPP based risk of unauthorized use or non-repayment is so implausible that it could not be chalked up to a difference in view or the product of agency expertise.

The SBA's bankruptcy debtor exclusion is an exercise is arbitrary and capricious rule making and should be set aside as such.

### D. Applying the Bankruptcy Debtor Exclusion to Weather King Amounts to Impermissible Retroactive Rulemaking -- 5 U.S.C. §706(2)(A) and (D) and 5 U.S.C. § 552(a).

The APA provides that courts also have the power to hold unlawful and set aside agency actions that are made "without observance of procedure required by law." 5 U.S.C. §706(2)(D).

The SBA is attempting to rely on its Fourth Interim Final Rule with its effective date of April 28, 2020 to prohibit Debtor's use of loan proceeds applied for and received prior to the rule's effective date. Such retroactive rulemaking violates 5 U.S.C. §706(2)(A) and (D).

To begin with, the SBA itself appears to have stated that the Fourth Interim Final Rule (which was the first interim final rule to include the bankruptcy debtor exclusion) has prospective application only – *i.e.,* it applies to PPP loans applied for and received in the second funding phase of the PPP that began on April 27, 2020. On April 29, 2020, the SBA issued further guidance in the form of Frequently Asked Questions ("FAQ") number 17. That FAQ states that "Borrowers and lenders may

rely on the guidance provided in this document as SBA's interpretation of the CARES Act and of the Paycheck Protection Program Interim Final Rules ("PPP Interim Final Rules")" and further states:

> 17. Question: I filed or approved a loan application based on the version of the PPP Interim Final Rule published on April 2, 2020. Do I need to take any action based on the updated guidance in these FAQs?
>
> Answer: No. Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application. However, borrowers whose previously submitted loan applications have not yet been processed may revise their applications based on clarifications reflected in these FAQs.

Contrary to the suggestion of this FAQ, the SBA now attempts to enforce its Fourth Interim Final Rule made effective on April 28, 2020 retroactively against the Plaintiff/Debtor, which applied for and received PPP funding prior to the effective date of the Fourth Interim Final Rule.

A regulation is deemed to have retroactive effect when it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994).

The SBA's rule excluding bankruptcy debtors from PPP participation was not an interpretation of a rule that was previously promulgated by the SBA. April 28, 2020 was the first time that the position was announced in a rule. No law, regulation, or rule of any kind existed prior to the April 28, 2020 effective date of the Fourth Interim Final Rule excluding bankruptcy debtors and Debtor's loan was applied for and approved prior to that date.

The SBA attempts to save its position by stating that the First Interim Final Rule published on April 15, 2020 made reference to SBA Form 2483 and that the form, in turn, asks the question "Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy?" and requires a lender to disapprove the loan if the answer to the question is "yes." In essence, the SBA is saying that it has incorporated

a substantive rule of general applicability that it has announced in Form 2483 by reference into its First Interim Final Rule. The SBA's attempt to switch gears and argue that it enacted its bankruptcy debtor exclusion prior to April 28, 2020 by its reference to Form 2483 does not withstand legal scrutiny. Such an attempt at incorporation by reference violates 5 U.S. Code § 552(a)(1)(D) and (E) and is not enforceable against Weather King.

The Director of the Office of the Federal Register has promulgated rules for notice by incorporation at 1 CFR Part 51 that the SBA would have to follow if it intended to publish a substantive rule of general applicability outside of a rule that is published in the Federal Register.

1 CFR Part 51 requires all of the following in order for a substantive rule of general applicability and/or statement of statement of general policy to be deemed effective by incorporation by reference:

> 1 CFR § 51.3: "When will the Director approve a publication?
>      * * *
> (b) The Director will formally approve the incorporation by reference of a publication in a final rule when the following requirements are met:
> (1) The publication is eligible for incorporation by reference (See §51.7).
> (2) The preamble meets the requirements of this part (See §51.5(b)(2)).
> (3) The language of incorporation meets the requirements of this part (See §51.9).
> (4) The publication is on file with the Office of the Federal Register.
> (5) The Director has received a written request from the agency to approve the incorporation by reference of the publication."

It is self-evident from a review of the First Interim Final Rule that the SBA did not lawfully incorporate a substantive rule of general applicability that bankruptcy debtors are ineligible to participate in the PPP by doing what 1 CFR Part 51 expressly requires by reference in accordance with law. Form 2483 is not the type of publication that is eligible for incorporation: it does not relate to "published data, criteria, standards, specifications, techniques, illustrations, or similar material." See 1 C.F.R. §51.7. Additionally, the First Interim Final Rule does not use the proper language that would be required to incorporate a rule housed in SBA Form 2483 by reference. See 1 C.F.R. § 51.9(b)((1)-

(5) and (c)(1)-(3).  Finally, as conceded by the SBA on the hearing for preliminary injunction, Form 2483 was not placed on file with the Office of the Federal Register in connection with its promulgation of the First Interim Final Rule.

While it is true the SBA can create forms containing requirements that are consistent with its substantive rules of general applicability that otherwise have been duly enacted, if it intends to promulgate a substantive rule of general applicability in the first instance outside of the four corners of its promulgated rule, that substantive rule of general applicability must be published in the Federal Register or be properly incorporated by reference pursuant to 1 CFR Part 51.  The SBA did neither here prior to April 28, 2020, and the SBA's April 28, 2020 rule cannot be applied retroactively to exclude the Plaintiff/Debtor's participation in the PPP.  Compare *Morton v. Ruiz,* 415 U.S. 199, 201, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974).

E.       **The SBA's Violation of 11 U.S.C. §525(a).**

Section 525(a) of the Bankruptcy Code provides in relevant part that "a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, [or] discriminate with respect to such a grant against . . . a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title . . . ."  Section 525(a)'s list is illustrative and not exhaustive. See, *e.g.,* In re Stinson, 285 B.R. 239, 246 (Bankr. W.D. Va. 2002).

A governmental agency may not deny an applicant participation in a government program based on its status as a bankruptcy debtor. For example, in In re Rose, 23 B.R. 662 (Bankr. D. Conn. 1982), the court held that a state mortgage financing program could not deny a mortgage to a former debtor on that basis. The court explained, "If a state has chosen to enact a program of home financing for its citizens, §525 prohibits that state from exempting debtors or bankrupts from those benefits

solely because of bankruptcy and without taking into account present financial capability. To hold to the contrary would frustrate the Congressional policy of granting the debtor a fresh start by denying him a means open to other citizens of acquiring a home." Id. at 666-67.

While a governmental lender may consider an applicant's bankruptcy as part of an overall inquiry into its creditworthiness, it may not deny entry into a loan program altogether on a basis that discriminates against bankruptcy debtors. See, e.g., Goldrich v. New York States Higher Ed. Servs. Corp. (In re Goldrich), 771 F.2d 28, (2d Cir. 1985); United States v. Cleasby, 139 B.R. 897, 900 (W.D. Wis. 1992) ("Consideration of a past discharge in determining whether to provide credit to the debtor does not violate § 525(a) to the extent that the decision is part of an overall evaluation of purely economic criteria, such as future financial responsibility").

The PPP is a government program expressly designed to provide relief to small businesses affected by COVID-19. It is a public benefit in which Congress leveraged the SBA's 7(a) loan network to ensure speedy relief. Its "loan" features are secondary to that purpose. Through the "bankruptcy disqualification" provision of the Fourth Interim Final Rule the SBA is denying the Plaintiff/Debtor's participation in the PPP program in a discriminatory fashion, solely on the basis that it is a debtor in bankruptcy and in violation of section 525(a) of the Bankruptcy Code and not as a result of an evaluation of its overall creditworthiness. The PPP was enacted for the very purpose of providing relief to struggling small businesses hit by the pandemic, such as Debtor, without regard to creditworthiness. As previously stated, the SBA's Third Interim Final Rule, in fact, disavows creditworthiness as a consideration for PPP participation.

The SBA is expected to rely on Toth v. Mich. State Hous. Dev. Auth., 136 F.3d 477, 480 (6th Cir. 1998) as demonstrating that Congress intended § 525(a)'s protections to be limited to a narrow class of grants that are similar to the enumerated "licenses, permits, charters, [and] franchises," – i.e., governmental authorizations that permit a pursuit aimed at economic betterment. Id. at 480. The

situation here is unique. Congress was reacting to a global pandemic where local, state and federal government actors issued a range of proclamations ranging from shuttering non-essential businesses and issuing stay-at-home orders to public pleas to self-isolate. In that environment created, in part, by governmental reactions to a real and present crisis, access to PPP funds quite literally decided which struggling employers would receive a government benefit to stay in business and those who would cease operating. When a subsidy is cast in the form of a loan, even though it is in reality a public benefit that has a repayment proviso if used for improper purposes, it falls within the protection of Section 525. See In re Haffner, 25 B.R. 882 (N.D. Ind. 1982) (although technically a "loan," the program was a sale support mechanism, i.e., a subsidy, and was therefore covered by section 525).

The common qualities of the property interests protected under section 525(a), i.e., "license[s], permit[s], charter[s], franchise[s], and other similar grants," are that these property interests are unobtainable from the private sector and essential to a debtor's fresh start. Stoltz v. Brattleboro Housing Auth. (In re Stoltz), 315 F.3d 80, 88-90 (2d Cir. 2002). The PPP is not truly a loan program. It is a government support program. The target recipients are small businesses in financial distress. The "loan" is 100% forgiven provided a borrower plays by the CARES Act rules. The PPP could only be offered by the government; private lenders do not give away money. PPP funds "are unobtainable from the private sector." Id. at 90.

Denying Plaintiff/Debtor access to PPP funds solely because it is a debtor violates § 525(a).

III.   **CONCLUSION**

Based on all of the foregoing, Weather King is entitled to summary judgment on its APA judicial review claims and its claim that exclusion of the Debtor violates 11 U.S.C. 525(a).

Respectfully submitted,

Roderick Linton Belfance LLP

*/s/* Steven J. Heimberger
STEVEN J. HEIMBERGER (#0084618)
TODD A. MAZZOLA (#0062160)
50 South Main Street, 10th Floor
Akron, Ohio 44308
Tele: (330) 434-3000
Fax: (330) 434-9220
sheimberger@rlbllp.com
tmazzola@rlbllp.com
*Counsel for Weather King*

## CERTIFICATE OF SERVICE

I hereby by certify that on October 25, 2021, a copy of the foregoing was served electronically via ECF as follows:

Steven J. Heimberger - sheimberger@rlbllp.com

Suzana Krstevski Koch - suzana.koch@usdoj.gov; Jasmine.Levitt@usdoj.gov, Albion.Manellari@usdoj.gov, Iris.Lugo@usdoj.gov,Angela.Jubera@usdoj.gov, rebecca.clarahan@usdoj.gov, CaseView.ECF@usdoj.gov

Marcus S. Sacks - marcus.s.sacks@usdoj.gov

*/s/* Steven J. Heimberger
STEVEN J. HEIMBERGER (#0084618)
TODD A. MAZZOLA (#0062160)