# UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| THE U.S. SMALL BUSINESS. ADMINISTRATION, *et al.*, | ) ) ) | |
| | ) | CASE NO.: 5:20CV2711 |
| Movant/Appellants, | ) ) | |
| vs. | ) ) | JUDGE JOHN R. ADAMS |
| WEATHER KING HEATING & AIR, INC., | ) ) ) ) | |
| Respondent/Appellee | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, and in accordance with this Court's orders dated December 21, 2020 (Dkt. 7) and September 24, 2021 (Dkt. 14), the United States of America (the "United States"), on behalf of the U.S. Small Business Administration ("SBA") and Isabella Casillas Guzman,[1] moves for summary judgment on each of Weather King Heating and Air Inc.'s claims. In support of this Motion, the United States submits the attached Memorandum of Points and Authorities together with its exhibits.

---

[1] Ms. Guzman has succeeded Ms. Carranza as the U.S. Small Business Administration's Administrator. *See* Fed. R. Civ. P. 25(d).

## TABLE OF CONTENTS

STATEMENT OF THE ISSUES ........................................................................ 1

CASE BACKGROUND ................................................................................. 3

    A.      Statutory and Regulatory Background................................................. 3

           1.     The Small Business Administration ....................................... 3

           2.     The CARES Act ................................................................. 5

           3.     PPP Lending Under The CARES Act ..................................... 6

           4.     2021 Economic Aid Act ...................................................... 8

    B.      Procedural History ........................................................................10

LEGAL STANDARD ..................................................................................12

SUMMARY OF THE ARGUMENT..................................................................12

ARGUMENT.............................................................................................13

I.     SBA DID NOT VIOLATE SECTION 525(A) OF THE
      BANKRUPTCY CODE IN DISQUALIFYING DEBTORS
      FROM RECEIVING PPP LOANS..............................................................13

    A.      PPP Proceeds Are Loans.................................................................15

    B.      Loans Are Not Covered By Section 525(a).........................................16

    C.      PPP Loans Are Not "Similar  Grants" To Licenses, Permits, Charters, Or
      Franchises....................................................................................19

    D.      Subsequent Legislation  Confirms  That Congress Did Not Intend For The
      PPP To Be Subject to Section 525(a) .................................................22

II.    WEATHER KING'S APA CLAIMS FAIL AS A MATTER OF LAW ........................24

    A.      The EAA Fatally Undermines Plaintiff's APA Claims.......................24

    B.      The SBA Did Not Exceed Its Statutory Authority Under 5 U.S.C. §
      706(2)(C)....................................................................................28

           1.     *Chevron*'s Step One: Congress Did Not Speak To The Direct

Question At Issue in the CARES Act .......................................................29

2.    *Chevron*'s Step Two:  SBA Did Not Act in An
        Arbitrary, Capricious, or Unreasonable Manner .....................................37

C.    The SBA Did Not Act Arbitrarily  Or Capriciously  Under 11 U.S.C. §
        706(2)(A) .............................................................................................40

D.    Weather King's Retroactivity Arguments Also Fail ...........................................45

CONCLUSION ...............................................................................................47

## **TABLE OF AUTHORITIES**

**Cases**                                                                 **Pages**

*Agaña v. United States SBA (In re Archbishop of Agaña)*,
    Nos. 19-00010,  20-00002,
    2021 WL 1702311 (Bankr. D. Guam Feb. 23, 2021) ..................................................... passim

*Alpha Visions Learning Acad., Inc. v. Carranza*,
    No. 20-00071, 2020 WL 2893413 (Bankr. W.D. Tenn. June 2, 2020) .................................. 16

*Andrus v. Glover Constr. Co.*,
    446 U.S. 608 (1980) ......................................................................................................... 28

*Atrium Med. Ctr. v. U.S. Dept. of Health and Human Servs.*,
    766 F.3d 560 (6th Cir. 2014) ........................................................................................... 31

*Ayes v. U.S. Dep't of Veterans Affairs*,
    473 F.3d 104 (4th Cir. 2006) ..................................................................................... passim

*Barnhard v. Peabody Coal Co.*,
    537 U.S. 149 (2003) ......................................................................................................... 20

*Bell v. New Jersey*,
    461 U.S. 773 (1983) ......................................................................................................... 29

*Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc.*,
    467 U.S. 837 (1984) ................................................................................................... passim

*Conn. Nat'l Bank v. Germain*,
    503 U.S. 249 (1992) ......................................................................................................... 20

*Cont'l Cas. Co. v. United States*,
    314 U.S. 527 (1942). ........................................................................................................ 28

*Defy Ventures, Inc. v. SBA*,
    No. CCB-20-1838, 2020 WL 3546873 (D. Md. June 29, 2020);). ...................................... 35

*DHS v. Regents of the Univ. of Cal.*,
    140 S. Ct. 1891 (2020) ..................................................................................................... 46

*Diocese of Rochester v. U.S. Small Bus. Admin.*,
    466 F. Supp. 3d 363 (W.D.N.Y. 2020) ...................................................................... passim

*DV Diamond Club of Flint, LLC v. SBA*,

iv

960 F.3d 743 (6th Cir. 2020) ............................................................................... passim

*Exquisito Servs., Inc. v. United States,*
823 F.2d 151 (5th Cir. 1987) ............................................................................. 19

*In re Gateway Radiological Consultants*,
983 F.3d 1239 (11th Cir. 2020) .......................................................................... passim

*In re Goldrich*,
771 F.2d 28 (2d Cir. 1985) ............................................................................. 19-21

*Hancock v. Dodson*, 958 F.2d 1374 (6th Cir. 1992) ................................................. 13

*Henry Anesthesia Assocs. LLC v. Carranza,*
No. 20-06084-LRC,
2020 WL 3002124 (Bankr. N.D. Ga. June 4, 2020) ........................................... passim

*Hidalgo Cty. Emergency Serv. Found. v. Carranza*,
962 F.3d 838 (5th Cir. 2020) ...................................................................... 3, 15-16

*Jones v. United States,*
526 U.S. 227 (1999) ........................................................................................ 38

*Motor Vehicle Mfrs. Assoc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .......................................................................................... 42

*Penobscot Valley Hosp. v. Carranza,*
620 B.R. 1 (D. Me. Jan. 2020) ...................................................................... 5, 22

*Penobscot Valley Hosp. v. Carranza,*
No. 20-1006, 2021 WL 150412 (D. Me. Jan. 12, 2021) ....................................... 15

*Pharaohs GC, Inc. v. SBA,*
990 F.3d 217 (2d Cir. 2021) .................................................................... 16, 24, 35

*Roman Catholic Church of the Archdiocese of Santa Fe v. SBA*,
615 B.R. 644 (Bankr. D.N.M. May 1, 2020) ...................................................... 16

*Russello v. United States*,
464 U.S. 16 (1983) ......................................................................................... 20

*SBA v. McClellan*,
364 U.S. 446 (1960) ................................................................................... 3, 32

v

*Schuessler v. SBA*,
  Adv. Proc. No. 20-02068-bhl,
  2020 WL 2621186 (Bankr. E.D. Wisc. May 22, 2020) ................................................. passim

*Springfield Hosp., Inc. v. Carranza*,
  No. 20-1003,
  2020 WL 3422335 (Bankr. D. Vt. June 22, 2020) ........................................................ 6, 16

*Tenn. Hosp. Ass'n v. Azar*,
  908 F.3d 1029 (6th Cir. 2018).  ........................................................................................ 30

*Toth v. Mich. State Hous. Dev. Auth.*,
  136 F.3d 477 (6th Cir. 1998) ...................................................................................... passim

*Tradeways, Ltd. v. U.S. Dep't of the Treasury*,
  No. ELH-20-1324,
  2020 WL 3447767 (D. Md. June 24, 2020) ................................................................ passim

*United States v. Rutherford*,
  442 U.S. 544 (1979) ............................................................................................................ 29

*United States v. Kimbell Foods*,
  440 U.S. 715 (1979) .............................................................................................................. 4

*Watts v. Pa. Hous. Fin. Co.*,
  876 F.2d 1090 (3d Cir. 1989) ...................................................................................... passim

*Whitman v. Am. Trucking Assoc.*,
  531 U.S. 457 (2001) ............................................................................................................ 38

## Statutes

5 U.S.C. §§ 706 ......................................................................................................... passim

11 U.S.C. § 525 ........................................................................................................ passim

11 U.S.C. § 1183-84 .......................................................................................................... 10

15 U.S.C. § 631 .................................................................................................................... 7

15 U.S.C. § 632 .................................................................................................................... 4

15 U.S.C. § 633 .................................................................................................................... 4

15 U.S.C. § 634 ............................................................................... 3, 4, 32

15 U.S.C. § 636 ................................................................................. passim

15 U.S.C. § 9005 .......................................................................................6

15 U.S.C. § 9012 .......................................................................................6

Consolidated Appropriations Act (2021 CAA),
    PUB. L. NO. 116-260, 134 Stat. 1182 (2021) ...................................... passim

Coronavirus Aid, Relief, and Economic Stimulus Act (CARES Act),
    PUB. L. NO. 116-136, 134 Stat. 281 (2020) ......................................... passim

Extending Authority for Commitments for the Paycheck Protection
    Program and Separating Amounts Authorized,
    PUB. L. NO. 115-147,134 Stat. 660 (2020) ................................................9

Paycheck Protection Program & Health Care Enhancement Act,
    PUB. L. NO. 116-139, 134 Stat. 620 (2020) ........................................ 8, 29

Paycheck Protection Program Flexibility Act of 2020 (PPP Flexibility Act),
    PUB. L. NO. 116-142, 134 Stat. 641 (2020) ..................................... 7, 8, 29

Small Business Act,
    PUB. L. NO. 85-536,
    72 Stat. 384 (1958) (codified at 15 U.S.C. §§ 631–657u) ............................ passim

**Regulations**

13 C.F.R. § 120.10 .................................................................................4, 7

13 C.F.R. § 120.100 ....................................................................................4

13 C.F.R. § 120.101 ....................................................................................4

13 C.F.R. § 120.150 ....................................................................................5

13 C.F.R. § 120.2 .......................................................................................4

13 C.F.R. Part 121 ....................................................................................37

13 C.F.R. Part 122 ....................................................................................37

**Rules**

30 Fed. Reg. 9353 (July 29, 1965) ...............................................................................4

85 Fed. Reg. 20811 (Apr. 15, 2020) ................................................................. passim

85 Fed. Reg. 23450 (Apr. 28, 2020) ................................................................. passim

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF THE ISSUES

ISSUE 1:  Did the U.S. Small Business Administration ("SBA") violate 11 U.S.C. § 525(a) by disqualifying entities in bankruptcy from receiving PPP loans?

ISSUE 2:  Did SBA violate the Administrative Procedures Act by disqualifying entities in bankruptcy from receiving PPP loans?

## INTRODUCTION

In response to "the incredible economic devastation wrought by the COVID-19 pandemic," *Tradeways, Ltd. v. U.S. Dep't of the Treasury*, Civil Action No. ELH-20-1324, 2020 WL 3447767, at *3 (D. Md. June 24, 2020), Congress passed the Coronavirus Aid, Relief, and Economic Stimulus Act (CARES Act), Pub. L. No. 116-136, 134 Stat. 281 (2020), signed into law on March 27, 2020.  The CARES Act created the Paycheck Protection Program ("PPP"), § 1102, 134 Stat. at 286-94, a $659 billion loan program administered by the Small Business Administration ("SBA") (which provide loan guarantees to lenders who make PPP loans) to provide relief to small businesses expeditiously.

Although Weather King Heating & Air Inc. ("Weather King") was not eligible for the PPP as a bankrupt debtor, it obtained $109,200 in program funds by misrepresenting a material fact on its PPP application (SBA Form 2483, attached as Exhibit 1).  Specifically, Weather King falsely certified on its application form that it was not currently involved in bankruptcy proceedings when, in fact, it was.[2]  The rules established by the SBA clearly prohibited debtors in bankruptcy from participating in the PPP and, indeed, the application form itself indicated that

---

[2] *See* Dkt. 121 in 19-52957 (Weather King lender stating: "[Weather King] was not truthful when it completed the Application by denying it was a debtor in bankruptcy and therefore by certifying that the information contained in the application was true and accurate in all material respects, it committed fraud upon Dollar Bank.").

the applicant would be ineligible if it responded in the affirmative when asked if it was currently involved in bankruptcy proceedings.[3]  Ex. 1 at 1.  Nevertheless, Weather King took the money, and only *then* did it initiate an adversary proceeding against the United States to contend that it should be eligible for the PPP and authorized to keep the funds it had obtained through false certification.  This false certification was plainly improper.  But, in any event, Plaintiff's[4] claims under 11 U.S.C. § 525 and the Administrative Procedures Act ("APA") fail as a matter of law.

Plaintiff's claims under section 525 of the Bankruptcy Code fail because, as demonstrated below, PPP proceeds are loans.  Under the Sixth Circuit's controlling decision in *Toth v. Mich. State Hous. Dev. Auth.*, 136 F.3d 477, 480 (6th Cir. 1998), section 525(a) does not cover loans or loan guarantees by its plain terms.  Moreover, as further developed below, even if the proceeds of the PPP loans at issues could be characterized as "grants," PPP loans are not "other similar grants" protected by section 525(a).  Thus, *Toth* is dispositive of Plaintiff's section 525 claim.  Plaintiff's APA claims fail because neither the CARES Act nor the Small Business Act prohibits the challenged bankruptcy disqualification, the rule disqualifying debtors like Plaintiff has promulgated before the PPP began, and the Administrative Record[5] demonstrates SBA based its decision upon consideration of the relevant factors and shows no clear error of

---

[3] The application also requires the applicant to "certify that the information provided in this application . . . is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000." Ex. 1 at 2.

[4] For ease of reference, Weather King is alternatively referred to as "Plaintiff" herein in light of the fact that Weather King is the plaintiff in the underlying adversary proceeding. *See infra* at 10-12 (describing procedural history in detail).

[5] The Administrative Record includes public record documents and the attached Declaration of SBA Deputy Associate Administrator for Capital Access John A. Miller (Miller Decl.), Exhibit 2, who has been duly authorized by the SBA to "to explain the basis for the SBA's determination to exclude debtors in bankruptcy from obtaining PPP loan guarantees." Miller Decl. ¶ 1.

judgment.[6]

## CASE BACKGROUND

### A.  Statutory and Regulatory Background

#### 1.  The Small Business Administration

Because Congress authorized the SBA to administer the PPP, and established the PPP under a pre-existing SBA loan program, the backdrop against which the SBA functions and that loan program operates provides important context. *In re: Gateway Radiology Consultants P.A.*, 983 F.3d 1239, 1247 (11th Cir. 2020). Congress created the SBA to "aid, counsel, assist, and protect insofar as is possible the interests of small-business concerns." *SBA v. McClellan*, 364 U.S. 446, 447 (1960) (quoting the Small Business Act of 1953, PUB. L. NO. 83-163, § 202, 67 Stat. 232, 232 (1953)). In so doing, Congress gave the SBA "extraordinary broad powers to accomplish these important objectives, including that of lending money to small businesses whenever they could not get necessary loans on reasonable terms from private lenders." *Id.*

Congress likewise delegated to the SBA an array of rulemaking and other powers. *Gateway*, 983 F.3d at 1248. It empowered the SBA to "make such rules and regulations as [it] deems necessary to carry out the authority vested in" it, to "take any and all actions . . . when it determines such actions are necessary or desirable in making . . . or otherwise dealing with or realizing on loans," and to "establish general policies . . . which shall govern the granting and

---

[6] Even if Plaintiff's claims did not fail on the merits for the reason set above, Plaintiff's claims for injunctive relief would still fail because this Court lacks subject matter jurisdiction over Plaintiff's claims. By statute, "no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the [SBA] Administrator or [her] property." 15 U.S.C. § 634(b)(1). The Fifth Circuit recently held that this provision precludes an injunction against the same SBA policy at issue here. *See In re Hidalgo Cty. Emergency Serv. Found.*, 962 F.3d 838, 840 (5th Cir. 2020) (concluding under Section 634(b) that a court exceeded its authority by requiring SBA to allow an entity in bankruptcy to participate in the PPP). Thus, this Court does not have subject matter jurisdiction to issue injunctive relief that effectively mandates that SBA forgive Plaintiff's PPP loan.

denial of applications  for financial assistance." 15 U.S.C. §§ 633(d), 634(b)(6)-(7); *see also* 30 Fed. Reg. 9353, 9353 (July 28, 1965).  Congress also authorized the SBA to "specify detailed definitions  or standards by which a business  concern may be determined  to be a small business concern." 15 U.S.C. § 632(a)(2)(A).

The SBA supports small businesses primarily  through "Section 7(a) loans," referring to the section of the Small  Business Act authorizing  their issuance.  *See* Small Business Act, PUB. L. NO. 85-536, § 7(a), 72 Stat. 384, 387-89 (1958) (amending the Small Business Act of 1953).  The SBA may provide  Section  7(a) loans  through  a variety  of financing  arrangements,  *id.*, but typically guarantees loans made by private lenders.  *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 719 n.3 (1979).  Ordinarily,  an applicant  seeking a general Section 7(a) business  loan must be a for-profit business  located in the United States, 13 C.F.R. § 120.100(a)-(c); meet the size standards for a  "small  business  concern,"  15  U.S.C.  §  632(a)(2);  13  C.F.R.  §  120.100(d); 13 C.F.R. pt. 121; and demonstrate  that the desired credit is not available  elsewhere on reasonable terms. 15 U.S.C. § 632(h); 13 C.F.R. §§ 120.100(e), 120.101.

Additionally,  applicants  "must be creditworthy."  13 C.F.R. § 120.150.  This creditworthy requirement  flows directly from Section 7(a) of the Small  Business Act requiring  that "[a]ll loans made under  this subsection  shall be of such sound value or so secured as reasonably  to assure repayment."  Small  Business Act § 7(a), 72 Stat. at 398 (codified at 15 U.S.C. § 636(a)(6)).  Under the Section  7(a) Loan Program, then, and "[i]n obedience of that statutory mandate, the SBA has long included  a creditworthiness  requirement in its lending  criteria."  *Gateway*, 983 F.3d at 1248. Specifically,  any Section  7(a) loan applicant  must undergo  a creditworthiness  inquiry  that considers the "credit history of the applicant,"  the "[s]trength of the business,"  the "[a]bility  to repay the loan with  earnings from the business,"  and the "[p]otential  for long-term  success." 13

C.F.R. § 120.150.  In the same vein, and "[c]onsistent with the soundness and repayment criteria, the SBA considers an applicant's bankruptcy status or history."  *Gateway*, 983 F.3d at 1248.  The SBA's official Section 7(a) Loan Application Form, SBA Form 1919 (Ex. 3), historically has asked applicants whether they have "ever filed for bankruptcy protection."  SBA Form 1919, and all other "official SBA notices and forms," are part of the SBA's "Loan Program Requirements" imposed upon lenders.  13 C.F.R. § 120.10.  The SBA also allows lenders to consider "past bankruptcy" and in fact requires that each lender's credit analysis include a discussion of any "bankruptcy filings" by the loan applicant when the lender recommends approving a loan application.  *Gateway*, 983 F.3d at 1248.

### 2.    The CARES Act

The CARES Act was signed into law on March 27, 2020, in order to provide emergency economic assistance to ameliorate the effects of the COVID-19 pandemic.  The act "temporarily adds a new product," known as the PPP, "to the [SBA's Section] 7(a) Loan Program."  *Id*.; *see also* CARES Act § 1102(a), 134 Stat. at 286 (noting "Section 7(a) of the Small Business Act . . . is amended" in creating the PPP).  The PPP provides loans to eligible businesses for specified expenses.  *See* CARES Act § 1102, 134 Stat. at 290 (enumerating "allowable" expenses for PPP loans) (codified at 15 U.S.C. § 636(a)(36)(F)).  PPP loans used for certain allowable expenses, such as payroll costs, mortgage interest payments, and rent, are eligible for forgiveness.  CARES Act § 1105, 134 Stat. at 298 (codified at 15 U.S.C. § 9005(b)).  Other allowable expenses under the PPP—such as costs related to the continuation of group health care benefits—will not be forgiven.  *Gateway*, 983 F.3d at 1247 ("The statutory list of allowable uses of loan funds is longer than the list of uses that qualify for loan forgiveness; all forgivable uses are allowable, but not all allowable uses are forgivable.").

Under the CARES Act, Congress expressly gave the SBA rulemaking power for the PPP,

specifying that the SBA "shall issue regulations to carry out this title." CARES Act § 1114, 134 Stat. at 312 (codified at 15 U.S.C. § 9012). Further, "Congress ordered that it be done posthaste," *Gateway*, 983 F.3d at 1249, requiring that the SBA issue regulations implementing the PPP "[n]ot later than 15 days after the date of enactment of this Act." 15 U.S.C. § 9012. To that end, Congress also directed that PPP regulations be issued "without regard to the notice requirements under [the APA]." *Id.*; *see also Gateway*, 983 F.3d at 1249 ("Recognizing the rulemaking deadline would otherwise be impossible, Congress freed the SBA from having to comply with the notice requirement that is a familiar part of the rulemaking process.").

### 3.   PPP Lending Under The CARES Act

As the Eleventh Circuit opined, "Section 7(a) matters to this case because the PPP was not created as a standalone program; instead it was added in § 7(a), albeit with several of that subsection's general eligibility requirements relaxed." *Gateway*, 983 F.3d at 1249. For instance, unlike the traditional Section 7(a) Loan Program, the PPP includes nonprofit organizations and relaxes size limitations, CARES Act § 1102(a)(2), 134 Stat. at 288 (codified at 15 U.S.C. § 636(a)(36)(D)), and exempts applicants from demonstrating that credit is not available elsewhere. CARES Act § 1102(a)(2), 134 Stat. at 291 (codified at 15 U.S.C. § 636(a)(36)(I)). Where not expressly modified, however, pre-existing Section 7(a) requirements govern the PPP. CARES Act, § 1102(a)(2), 134 Stat. at 287 (noting that, "[e]xcept as otherwise provided," the SBA "may guarantee covered loans under the same terms, conditions, and processes" as other Section 7(a) loans) (codified at 15 U.S.C. § 636(a)(36)(B)). One requirement Congress left in place is the statutory mandate that "[a]ll loans" must be of "sound value." 15 U.S.C. § 636(a)(6); *see also Gateway*, 983 F.3d at 1249 ("What the CARES Act did not do for PPP loans is also significant. It did not exempt them from the § 7(a) sound value requirement.").

Pursuant to Congress's broad delegation of authority, the SBA posted its first regulations

implementing the PPP on April 2, 2020, less than one week after the CARES Act's passage. In its First Interim Final Rule, the SBA explained that the need to "provide relief to America's small businesses expeditiously," as Congress intended, required "streamlining the requirements of the regular 7(a) program." 85 Fed. Reg. at 20,812. To that end, the SBA determined that PPP lenders would not have to undertake the multi-factor creditworthiness test set forth at 13 C.F.R. § 120.150. *Id*. Instead, lenders would "rely on certifications of the borrower" required on the PPP Application Form. *Id*. Under the heading "What do lenders have to do in terms of loan underwriting?" the SBA notes that lenders' must only "[f]ollow[] applicable [Bank Secrecy Act] protocols," "[c]onfirm[] receipt of information demonstrating" salaries, taxes, and payroll costs, and "[c]onfirm[] receipt of borrower certifications contained in [the PPP] [A]pplication [F]orm." *Id*. at 20,815; *see also id*. ("Each lender's underwriting obligation under the PPP is limited to the items above and reviewing the [PPP] Application Form."). One question contained in the PPP Application Form asks whether the borrower is "presently involved in any bankruptcy." SBA Form 2483 (Ex. 4); *See also* Standard Operating Procedure 50-10 5(K) at 39 (allowing lenders to consider "bankruptcy history").[7] By regulation, requirements listed on Form 1919 and other official SBA forms comprise part of the "Loan program requirements." 13 C.F.R. § 120.10. Lenders agree to abide by these requirements when joining the section 7(a) lending program. *Id*.; *see also* SBA Forms 3506 (Ex. 5) and 3507 (addressing new PPP lenders) (Ex. 6).

In a rule providing additional explanation and guidance to borrowers, the SBA explained that, "[i]f the applicant . . . is the debtor in a bankruptcy proceeding . . . the applicant is ineligible to receive a PPP loan." *See* Fourth Interim Final Rule (Ex. 7). The Fourth Interim Final Rule also

---

[7]*Available at* https://www.sba.gov/sites/default/files/2019-
02/SOP%2050%2010%205%28K%29%20FINAL%202.15.19%20SECURED%20copy%20past
e.pdf.

"explain[ed] why bankruptcy debtors are ineligible." *Gateway*, 983 F.3d at 1250. Specifically, the SBA determined that, "in consultation with the [Treasury] Secretary . . . providing PPP loans to debtors in bankruptcy would present an unacceptably high risk" of both "unauthorized use of funds" and "non-repayment of unforgiven loans." Fourth Interim Final Rule, 85 Fed. Reg. at 23,451. The Fourth Interim Final Rule further noted that "the Bankruptcy Code does not require any person to make a loan or financial accommodation to a debtor in bankruptcy" and that SBA Form 2483 (Ex. 4), which contains the bankruptcy certification, "is a loan program requirement." *Id.*

Congress initially authorized the SBA to guarantee up to $349 billion worth of PPP loans. CARES Act § 1102(b)(1), 134 Stat. at 293. On April 16, 2020, Congress increased the authorization to $659 billion. Paycheck Protection Program & Health Care Enhancement Act (CARES Act II), PUB. L. NO. 116-139, § 101(a)(1), 134 Stat. 620, 620 (2020). Through the Paycheck Protection Program Flexibility Act of 2020, signed into law June 5, 2020, Congress, *inter alia*, altered certain requirements for loan forgiveness and revised the deferral period for PPP loans. PUB. L. NO. 116-142, § 3, 134 Stat. 641, 641-42 (2020). As initially enacted, the CARES Act required PPP funds to be disbursed within just three months. CARES Act § 1102(a)(2), 134 Stat. at 286 (defining "covered period" to end on June 20, 2020). Congress subsequently extended PPP commitments through August 8, 2020. Extending Authority for Commitments for the Paycheck Protection Program & Separating Amounts Authorized, PUB. L. NO. 116-147, § 1, 134 Stat. 660, 660 (2020).

### 4. 2021 Economic Aid Act

As noted above, part of the Consolidated Appropriations Act of 2021, Congress enacted the Economic Aid Act, 2021, Pub L. No. 116-260, 134 Stat. 1182 (2020) ("2021 EAA"). Division N, Title III of the 2021 EAA, entitled "CONTINUING THE PAYCHECK PROTECTION

PROGRAM AND OTHER SMALL BUSINESS SUPPORT," appropriates an additional $284,450,000,000 for the PPP, § 323(d)(1)(A), 134 Stat. at 2019, and makes a number of other changes to the PPP. For instance, Congress expanded PPP eligibility to housing cooperatives, news organizations, and 501(c)(6) and destination marketing organizations. § 316–318, 134 Stat. at 2011–15. Congress also expanded the categories of allowable expenses for PPP proceeds, § 304, 134 Stat. at 1993, and mandated a simplified forgiveness application for loans up to $150,000. § 307, 134 Stat. at 1998.

Particularly relevant to this matter, in section 320 of the act, entitled "Bankruptcy Provisions," Congress made *certain* categories of bankrupt debtors potentially eligible for PPP loans, subject to the SBA Administrator's advance, categorical authorization.  134 Stat. at 2015. The amendments to the Bankruptcy Code in section 320 would become effective *only* if "the [SBA] submits to the Director of the Executive Office for United States Trustees a written determination that, subject to satisfying any other eligibility requirements, any debtor in possession or trustee that is authorized to operate the business of the debtor under section 1183, 1184, 1203, 1204, or 1304 of title 11, United States Code, would be eligible for a [PPP] loan." § 320(f)(1)(A).

Specifically, section 320 amends the Bankruptcy Code to permit a bankruptcy court to "authorize a debtor in possession or a trustee that is authorized to operate the business of the debtor under section 1183, 1184, 1203, 1204, or 1304 of [title 11]" to obtain a PPP loan. With section 320, then, Congress recognized that the SBA previously ruled all debtors in bankruptcy ineligible for PPP loan guarantees and did not invalidate that rule. Rather, Congress created a path for certain categories of debtors to be potentially eligible for PPP loan guarantees, explicitly establishing the SBA Administrator as a gatekeeper who must first determine whether, with the discretion delegated to the SBA, those categories of debtors will be permitted to obtain PPP loan guarantees.

Congress made debtors in subchapter V of Chapter 11 potentially eligible for PPP loans, subject to the SBA Administrator's advance, express written determination, but not traditional Chapter 11 debtors, like Plaintiff. 11 U.S.C. § 1183-84. No such express written determination was made.

Thus, under the 2021 EAA, bankruptcy courts cannot exercise this new authority to authorize PPP loans to certain debtors, though not traditional Chapter 11 debtors like Plaintiff, unless the Administrator determined to make the enumerated categories of debtors eligible to participate in the PPP. The Administrator did not issue the above referenced written determination. In the SBA's first interim final rule issued after the 2021 EAA, it continued to prohibit bankrupt debtors from obtaining PPP loan guarantees.[8]

### B. Procedural History

As noted above, unlike the vast majority of other cases challenging the bankruptcy exclusion, Weather King obtained a PPP loan by falsely certifying that it was not in bankruptcy.[9] *See* Ex. 1; Compl. ¶ 30. Subsequently, Plaintiff received a PPP loan based upon that false certification. Compl. ¶ 30 ("Debtor's owner . . . worked with Dollar Bank FSB . . . to apply for and obtain a PPP loan . . . . The loan was approved and subsequently funded on April 25, 2020."). That Plaintiff here *obtained* a PPP loan separates this case from nearly every other case in which a PPP applicant has sought to enjoin the SBA for its exclusion of debtors in bankruptcy

---

[8] *See* Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act 26–27 (Jan. 6, 2021), https://go.usa.gov/xAUhZ (providing that "[t]he Borrower Application Form for PPP loans (SBA Form 2483), which reflects this restriction in the form of a borrower certification, is a loan program requirement" and lenders may continue to "rely on an applicant's representation concerning the applicant's or an owner of the applicant's involvement in a bankruptcy proceeding.").

[9] In the only other case Defendants are aware of in which a plaintiff obtained a PPP loan by falsely certifying it was not in bankruptcy and then sought (and obtained) an injunction from the bankruptcy court, the Eleventh Circuit, on direct appeal, vacated the injunction, ruling for the SBA and rejecting claims identical to that made by Plaintiff here. *See generally In re: Gateway Radiology Consultants P.A.*, 983 F.3d 1239 (11th Cir. 2020).

from obtaining PPP loans. The relief sought in those cases, an injunction requiring the SBA to process a debtor's loan application without disqualification for bankruptcy so that the debtor may obtain a PPP loan, is relief that Plaintiff has already received. Plaintiff instead brought an adversary proceeding in bankruptcy court on May 5, 2020, seeking injunctive relief effectively forcing SBA to not deny Plaintiff loan forgiveness on the basis of its ineligibility due to its bankruptcy status. *See, e.g.,* Compl. ¶ 35 (requesting that the Court "enjoin the SBA from enforcing its unlawful and discriminatory policy that forbids Debtor from participating in the PPP").

On May 22, 2020, the bankruptcy court entered a preliminary injunction order against the SBA, concluding that the Plaintiff was likely to succeed on the merits on its APA claims that the SBA exceeded its statutory authority to implement the CARES Act PPP and that the SBA's PPP rules, issued under Congress's authorization in the CARES Act, would apply retroactively to Plaintiff. Bankr. Dkt. 26 at 2-3. The preliminary injunction order incorporated the "findings and conclusions stated" in the bankruptcy court's May 21, 2020 oral decision. *Id.* at 2. In that oral decision, the Bankruptcy Court explained that it had the authority to enter a preliminary injunction against the SBA, but that the Bankruptcy Court "lacks authority to enter final judgments with respect to the APA claims." Bankr. Dkt. 41. at 11:20-21.

On June 4, 2020, the United States (1) moved to withdraw the reference of the adversary proceeding to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d), and Rule 5011 of the Federal Rules of Bankruptcy Procedure; and (2) timely filed a notice of appeal of the Bankruptcy Court's preliminary injunction. This Court granted the United States' motion to withdraw the reference on December 4, 2020. Dkt. 2. As the result of the order withdrawing the reference, the current case number, 5:20CV2711, was created. Dkt. 4. At the same time, the Court

11

consolidated the appeal proceeding filed by the United States, 5:20CV1241, and, for the purposes of a clean record, made 5:20CV2711 the lead matter and administratively closed 5:20CV1241. *Id.* The Court then ordered the parties to submit a briefing schedule for cross motions for summary judgment. *Id.* On December 17, 2020, the Court entered a briefing schedule in which the parties would each file cross motions for summary judgment thirty days after the Court ruled on Plaintiff's motion to "complete the administrative record." Dkt. 7. This Court denied Plaintiff's motion to complete the administrative record on September 24, 2021. Dkt. 14.

## **LEGAL STANDARD**

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ P. 56(c); *see also Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992).

## **SUMMARY OF THE ARGUMENT**

Congress passed the CARES Act to address a massive decrease in commercial activity caused by efforts to stem the spread of the pandemic. The PPP is a key part of the CARES Act, providing $659 billion in loan guarantees for small businesses across the nation. Faced with large but finite resources and acute need, Congress delegated expansive authority to the SBA to administer the PPP and get loans to qualified businesses as quickly as possible. In doing so however, Congress left intact its statutory commandment that the SBA ensure program loans be of "sound value" so as "reasonably to assure repayment." 15 U.S.C. § 636(a)(6).

To meet these Congressional obligations, the SBA transformed its current small business

loan program, which requires case-by-case underwriting before a loan can be approved, into an easily administrable loan guarantee system with minimal underwriting. Specifically, the SBA used its existing underwriting factors to draw bright line rules that lenders could quickly evaluate, such as by excluding debtors in bankruptcy.

Weather King contends that this exclusion of debtors from bankruptcy violated 11 U.S.C. § 525(a). But, as demonstrated below, PPP proceeds are loans. As explained in more detail below, controlling precedent from the Sixth Circuit establishes that section 525(a) does not cover loans and loan guarantees by its plain terms. Second, Plaintiff contends that SBA violated the APA by (1) exceeding its authority and (2) acting in an arbitrary and capricious manner in violation of the APA, and (3) improperly engaging in retroactive rulemaking. But, as demonstrated below, these arguments also fail. Indeed, following the enactment of the 2021 EAA, both courts to consider similar APA arguments in the context of the PPP bankruptcy exclusion are rejected them.[10] The same result should be reached here. Neither the CARES Act nor the Small Business Act prohibits the challenged bankruptcy disqualification, and the record demonstrates SBA based its decision upon consideration of the relevant factors, showed no clear error of judgment, or improper retroactive rulemaking because the rule disqualifying debtors like Plaintiff was promulgated before the PPP began. For all of these reasons, this Court should grant Defendants' motion for summary judgment.

## ARGUMENT

## I.    SBA DID NOT VIOLATE SECTION 525(A) OF THE BANKRUPTCY CODE IN DISQUALIFYING DEBTORS FROM RECEIVING PPP LOANS

Like many other plaintiffs before it, Weather King contends that SBA's exclusion of

---

[10] *See, e.g., U.S. Small Business Admin. v. Vestavia Hills, Ltd.*, No. 20-01308, 2021 WL 1165038 (S.D. Cal. Mar. 26, 2021); *Archbishop of Agaña v. SBA*, No. 20-0002, 2021 WL 1702311 (D. Guam February 22, 2021).

entities in bankruptcy from receiving PPP loans violated 11 U.S.C. § 525(a). *See* Compl. ¶¶ 36-50. Section 525(a) prohibits governmental units from denying "a license, permit, charter, franchise, or other similar grant" solely on the basis of bankruptcy. It does not apply to this case for several reasons. *First*, PPP proceeds are loans. As developed below, the Sixth Circuit in controlling precedent has concluded that section 525(a) does not cover loans and loan guarantees by its express terms. This is dispositive of Weather King's section 525 claims as the bankruptcy court determined. *See* May 21, 2020 Oral Ruling of Bankruptcy Court, Bankr. Dkt. 41, at 17-21. *Second*, even if a PPP loan was characterized as a "grant," PPP loan proceeds are in no way similar to "a license, permit, charter, [or] franchise." Thus, consistent with the Sixth Circuit's controlling decision in *Toth*, the overwhelming majority of courts in other jurisdictions have also rejected substantial similar Section 525 arguments to those made by Plaintiff here.[11] As further developed

---

[11] *See, e.g.*, *Vestavia Hills, Ltd.*, 2021 WL 1165038, at *18-19; *Archbishop of Agaña v. SBA,*, 2021 WL 1702311; *Penobscot Valley Hosp. v. Carranza*, 620 B.R. 1, 5-6 (D. Me.), *adopting in part*, Adv. Nos. 20-1005, 20-1006, 2020 WL 3032939 (Bankr. D. Me. June 3, 2020); *Tradeways, Ltd. v. U.S. Dep't of the Treasury*, No. CV ELH-20-1324, 2020 WL 3447767, at *19 (D. Md. June 24, 2020); *Diocese of Rochester v. U.S. Small Bus. Admin.*, 466 F. Supp. 3d 363, 380 (W.D.N.Y. 2020); *Henry Anesthesia Assoc. LLC v. Carranza*, Adv. No. 20-6084, 2020 WL 3002124, at *7 (Bankr. N.D. Ga. June 4, 2020); *Schuessler v. SBA*, Adv. No. 20-2065, 2020 WL 2621186, at *9 (Bankr. E.D. Wis. May 21, 2020).

In addition, numerous other courts have rejected suits challenging the bankruptcy exclusion on APA or sovereign immunity grounds. *See, e.g.*, *NRP Lease Holdings LLC v. Carranza*, No. 20-00606 (M.D. Fla. Jan. 19, 2021); *USF Federal Credit Union v. Gateway Radiology Consultants, P.A. (In re Gateway Radiology Consultants, P.A.)*, 983 F.3d 1239 (11th Cir. 2020); *Coastal Int'l Inc. v. Carranza*, Adv. Proc. No. 20-03027 (N.D. Cal. June 29, 2020); *Fishing Vessel Owners Marine Ways, Inc. v. Seattle Machine Works*, Adv. Proc. No. 20-01040 (Bankr. W.D. Wa. June 24, 2020); *In re Hidalgo Cty. Emergency Servs. Found.*, 962 F.3d 838 (5th Cir. 2020); *Dancor Transit, Inc. v. SBA*, Adv. No. 2:20-AP-07024 (Bankr. W.D. Ark. June 22, 2020); *Fox Valley Pro Basketball Inc. v. SBA*, No. 20-CV-793 (E.D. Wis. June 16, 2020); *In re Edison Price Lighting, Inc.* No. 20-22614 (Bankr. S.D.N.Y. June 16, 2020); *Eisenga v. SBA*, Adv. Proc. No. 20-00048 (Bankr. E.D. Wis. June 9, 2020); *iThrive Health, LLC v. Carranza*, Adv. Proc. No. 20-00151 (Bankr. D. Md. June 8, 2020); *Hartshorne Mining, LLC. v. Carranza*, Adv. No. 20-4012 (Bankr. W.D. Ky. June 1, 2020); *Jack Cty. Hosp. Dist. v. SBA*, Adv. No. 20-04035 (Bankr. N.D. Tex. May 21, 2020); *Starplex Corp. v. Carranza*, Adv. No. 20-00095 (Bankr. D. Ariz. May 21, 2020); *NAI*

below, the same result should be reached here.

### A.  PPP Proceeds Are Loans

PPP loans are, bluntly put, loans.  Through the PPP, Congress "authorized the [SBA] to guarantee favorable loans to certain businesses affected by the COVID-19 pandemic."  *Pharaohs GC, Inc. v. U.S. SBA*, 990 F.3d 217, 223 (2d Cir. 2021).  To that end, Congress placed the PPP within "section 7(a) of the Small Business Act, 15 U.S.C. § 636(a)," which contains "SBA's primary program for providing financial assistance to small businesses," and "authorized the SBA Administrator to guarantee PPP loans 'under the same terms, conditions, and processes' as 7(a) loans," except as where otherwise specified.  *Id.* at 224 (quoting 15 U.S.C. § 636(a)(36)(B)); *see also Pharaohs GC*, 990 F.3d at 227 ("PPP was not created as a standalone program but was added into the existing § 7(a) program"); *Gateway*, 983 F.3d at 1249; *In re Hidalgo Cty. Emergency Servs. Found.*, 962 F.3d 838, 840 (5th Cir. 2020) ("The PPP is implemented under section 7(a) of the Small Business Act . . . .").

---

*Cap., Inc. v. Carranza*, Adv. No. 20-01051 (Bankr. C.D. Cal. May 20, 2020); *PPV, Inc. v. Carranza*, Adv. No. 20-03054 (Bankr. D. Or. May 20, 2020); *Inland Family Practice Ctr., LLC v. SBA*, Adv. No. 20-06016 (Bankr. S.D. Miss. May 15, 2020); *Okorie v. SBA*, Adv. No. 20-06015 (Bankr. S.D. Miss. May 15, 2020); *Abe's Boat Rentals, Inc. v. Carranza*, Adv. No. 20-01029 (Bankr. E.D. La. May 13, 2020); *J.H.J., Inc. v. Carranza*, Adv. No. 20-05014 (Bankr. W.D. La. May 12, 2020); *Areway Acquisition, Inc. v. SBA*, Adv. No. 20-01037 (Bankr. N.D. Ohio May 12, 2020); *Breda, LLC v. Carranza*, Adv. No. 20-01008 (Bankr. D. Me. May 11, 2020); *Trudy's Texas Star, Inc. v. Carranza*, Adv. No. 20-01026 (Bankr. W.D. Tex. May 7, 2020); *Asteria Educ., Inc. v. Carranza*, Adv. No. 20-05024 (Bankr. W.D. Tex. Apr. 30, 2020); *Cosi, Inc. v. SBA*, Adv. No. 20-50591 (Bankr. D. Del. Apr. 30, 2020).

*But see Springfield Hosp., Inc. v. Carranza*, Adv. Proc. No. 20-1003, 2020 WL 3422335 (Bankr. D. Vt. June 22, 2020), appeal docketed, No. 20-3903 (2d Cir.); *Alpha Visions Learning Acad., Inc. v. Carranza*, Adv. Proc. No. 20-00071, 2020 WL 2893413 (Bankr. W.D. Tenn. June 2, 2020), appeal docketed, No. 20-02416 (W.D. Tenn.); *Roman Catholic Church of the Archdiocese of Santa Fe v. SBA*, 2020 Bankr. LEXIS 1211 (Bankr. D.N.M. May 1, 2020), appeal docketed, No. 20-00473 (D.N.M.); *Organic Power LLC v. SBA*, Adv. Proc. No. 20-00055 (Bankr. D.P.R. July 24, 2020), appeal docketed, No. 20-01411 (D.P.R.).

Throughout the statute creating the PPP, Congress unambiguously designated the PPP as a "loan" program. *See, e.g.*, CARES Act § 1102, 134 Stat. at 287 (discussing "paycheck protection loans"); *see also Tradeways*, 2020 WL 3447767, at *17 ("In total, the world 'loan' appears some 75 times in the CARES Act provisions establishing the PPP. The takeaway is clear: the $659 billion disbursed to borrowers through the PPP are loans, not grants.").[12] Correspondingly, the statute repeatedly refers to recipients of PPP loans as "borrowers." *See, e.g.*, 15 U.S.C. § 636(a)(36)(G) (specifying "Borrower Requirements"). Consistent with Congress's denomination of the PPP as a loan program, PPP borrowers enter into "actual loan[s]" with private lending institutions and sign promissory notes in which they agree to repay the loan balance, with interest, prior to a specified maturity date. *Diocese of Rochester v. U.S. Small Bus. Admin.*, 466 F. Supp. 3d 363, 379 (W.D.N.Y. 2020); *see also* 85 Fed. Reg. at 23,450. In addition, borrowers must comply with specific and mandatory requirements to be eligible for forgiveness, and their compliance will be evaluated by lenders or the SBA; unless and until compliance is determined, borrowers have a payment obligation. *See* 85 Fed. Reg. at 20,811.

As developed in the next sub-section, these facts are sufficient to resolve this claim. Because the PPP is a loan guarantee program, and because loan guarantee programs are not subject to Section 525(a) by its plain terms, that provision has no applicability to SBA's policy of limiting eligibility for participation in the PPP based on bankruptcy status.

### B.      Loans Are Not Covered By Section 525(a)

Controlling precedent in the Sixth Circuit makes clear that Section 525(a) does not

---

[12] Congress refers to PPP proceeds as "Paycheck protection *loans*" and grants the SBA authority to "guarantee *covered loans* under same terms, conditions, and processes as a *loan* made under this subsection." 15 U.S.C. § 636(a)(36)(B) (emphasis added). In turn, Congress defined "covered loan" to mean "*a loan* made under this paragraph during the covered period." 15 U.S.C. § 636(a)(36)(A)(ii) (emphasis added).

explicitly cover loans or loan guarantees. Specifically, the Sixth Circuit determined that Section 525(a) applies only to "benefits conferred by government that are unrelated to the extension of credit" and, thus, does not loan programs. *Toth v. Mich. State Hous. Dev. Auth.*, 136 F.3d 477, 480 (6th Cir. 1998). As the Sixth Circuit explained, "[t]he intent of Congress incorporated into the plain language of § 525(a) should not . . . insulate a debtor from all adverse consequences of a bankruptcy filing or discharge" and consideration of "an applicant's financial responsibility is an essential part of any lender's evaluation of a post-discharge application for a loan or extension of credit." *Toth*, 136 F.3d at 480. Thus, in *Toth*, the court rejected the plaintiff's claim that Michigan's denial of her application for a low income home improvement loan based upon a recent discharge in bankruptcy was discriminatory under section 525(a). The court explained that "the courts of appeals that have approached the question have read the statute's reach narrowly, focusing upon the specific language of the statute." *Id*. at 479−80. The Sixth Circuit followed suit, concluding that "[t]he items enumerated in the statute—licenses, permits, charters, and franchises—are benefits conferred by government that are unrelated to the extension of credit." *Id*. at 480. The court further explained:

> [T]he target of § 525(a) is government's role as a gatekeeper in determining who may pursue certain livelihoods. It is directed at governmental entities that might be inclined to discriminate against former bankruptcy debtors in a manner that frustrates the "fresh start" policy of the Bankruptcy Code, by denying them permission to pursue certain occupations or endeavors. The intent of Congress incorporated into the plain language of § 525(a) should not be transformed by employing an expansive understanding of the "fresh start" policy to insulate a debtor from all adverse consequences of a bankruptcy filing or discharge. A reckoning of an applicant's financial responsibility is an essential part of any lender's evaluation of a post-discharge application for a loan or extension of credit.

*Id*. Thus, *Toth* is controlling with respect to Weather King's section 525 claim and alone resolves Count I of Plaintiff's Complaint.

17

Other circuits have reached the same conclusion.  For instance, the Third Circuit concluded that Section 525(a) is inapplicable to a program providing emergency loans to homeowners facing imminent mortgage foreclosure.  *See Watts v. Pa. Hous. Fin. Co.*, 876 F.2d 1090, 1093 (3d Cir. 1989).  Likewise, the Fourth Circuit concluded that Section 525(a) applies only to governmental authorizations that "permit an individual to pursue some occupation or endeavor aimed at economic betterment" and, thus, does not apply to a home loan guarantee program.  *Ayes v. U.S. Dep't of Veterans Affairs*, 473 F.3d 104, 108 (4th Cir. 2006).  The Fifth and Second Circuits have reached the same conclusion.  *See In re Exquisito Servs., Inc.,* 823 F.2d 151, 153 (5th Cir. 1987) (citing *Goldrich* and explaining that Section 525(a) should be construed narrowly); 3 William N. Norton III, Bankruptcy Law and Practice § 59:2 (3d ed. Apr. 2020 Update) ("[Section] 525(a) does not apply to the extension or guarantee of new credit to a debtor."); *In re Goldrich*, 771 F.2d 28 (2d Cir. 1985) (holding that Section 525(a) did not apply to a student loan guarantee program, explaining that a "credit guarantee is not a license, permit, charter or franchise; nor is it in any way similar to those grants," and thus falls outside Section 525(a)'s ambit).

Moreover, the Sixth Circuit's decision in *Toth* as well as these holdings from the Second, Third, Fourth, Fifth, and Circuits are consistent with fundamental principles of statutory interpretation.  *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others"; namely "courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").  Section 525(a) prohibits certain discrimination by the government against debtors in awarding or denying "a license, permit, charter, franchise, or other similar grant."  The absence of loans makes clear Congress's exclusion was intentional.  *See Barnhard v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) ("[W]hen the items expressed are members of an associated group or series,

18

[it] justif[ies] the inference that items not mentioned were excluded by deliberate choice, not inadvertence.").

In addition, the language of section 525(a), contrasts sharply with language from the very same section, just several provisions down, where Congress amended section 525 to prohibit governmental units from denying "a student grant, loan, loan guarantee, or loan insurance to a person that is or has been a debtor." 11 U.S.C. § 525(c)(1); *see also Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). Clearly, then, Congress knows how and when to include loans in enumerating applicable categories. Its specific inclusion of both grants and loans in section 525(c) also demonstrates it understands the distinction between "grants" and "loans." Had Congress intended section 525(c) to apply to loan guarantees beside those of the student loan variety, it would have said so. *See Ayes*, 473 F.3d at 110 ("That Congress chose . . . to narrowly amend § 525 . . . is strong evidence that its failure to mention other kinds of loan guaranties in § 525(c) was intentional.").

## C.     PPP Loans Are Not "Similar Grants" To Licenses, Permits, Charters, Or Franchises

Plaintiff may contend that PPP proceeds are not loans, but instead are grants. That argument is wrong for the reasons demonstrated above (*see supra* at 16-19). But even if PPP loan guarantees were "grants," Plaintiff's argument would still fail PPP loan guarantees are not a "grant" similar to "a license, permit, charter, [or] franchise" is unavailing. The courts of appeals to have considered the issue have repeatedly "refuse[d] to venture beyond the confines of the statutory language to broadly construe § 525(a)'s specific 'other similar grant' language.'" *Ayes*, 473 F.3d at 111; *see also Toth*, 136 F.3d at 480; *Watts*, 876 F.2d at 1093-94; *Goldrich*, 771 F.2d

at 30–32.

For instance, in *Ayes*, the Fourth Circuit affirmed a district court's dismissal of a complaint accusing the United States of violating section 525(a) for refusing to extend home loan guarantees to veterans following their discharges in bankruptcy. 473 F.3d at 107. Relying on the provision's plain language, the Circuit Court reasoned the loan guarantee at issue bore no "family resemblance" to the items listed in section 525(a): those items "are all governmental authorizations that typically permit an individual to pursue some occupation or endeavor aimed at economic betterment." *Id.* at 108 (citing *Watts*, 876 F.2d at 1093). According to the Fourth Circuit, section 525(a) implicates "government's role as a gatekeeper in determining who may pursue certain livelihoods," *id.* at 109 (quoting *Toth*, 136 F.3d at 480), and "is composed solely of benefits conferred by the state." *Id.* at 110 (quoting *Goldrich*, 771 F.2d at 30). A home loan guarantee, though, "does not implicate the government's gate-keeping role . . . because . . . a person can obtain a home loan or guaranty from the private sector," a refusal does not mean that person is "doomed to homelessness," and "governmental units do not exercise exclusive or even pervasive control over the 'world' of home loans." *Id.* at 109.

Likewise, the United States Courts of Appeals for the Third Circuit has held that loans in the context of housing are neither a license, permit, charter, or franchise, nor a similar grant, for purposes of section 525(a). *Watts*, 876 F.2d at 1093. In short, guarantees of business loans—even more so than housing loans and extensions of credit in other contexts deemed outside section 525(a)'s purview—bear no semblance to licenses, permits, charters, and franchises. *First*, they do not do not provide a right to engage in a specific activity or profession, and therefore do not implicate "government's role as a gatekeeper in determining who may pursue certain livelihoods." *Ayes*, 473 F.3d at 109 (quoting *Toth*, 136 F.3d at 480). *Second*, "governmental units do not

20

exercise exclusive or even pervasive control" over them. *Ayes*, 473 F.3d at 109. *Third*, they are not "benefits conferred by the state that are unrelated to credit." *Id.* at 110.

As Judge Fagone in the District of Maine explained in analyzing this argument, "[e]ach of the enumerated items . . . . involves some permission for the holder of the grant to act in a particular way. . . . Withholding a permission to engage in activity that is essential to the enjoyment of the benefits of a fresh start . . . is different from declining to provide assistance in the form of a loan . . . that might be useful to obtaining a fresh start." *Penobscot Valley Hosp.*, 2020 WL 3032939, at *10–11. At bottom, "[h]ad Congress intended to extend § 525's protections to other government loan guaranties besides student loans, it easily could have revised § 525(a) . . . ." *Id.* Alternatively, Congress "could have included some term in § 525(c) that would have supported extension of § 525(a)'s protections to all government loan guaranties, not just those of the student loan variety." *Id.*

Consequently, even assuming PPP loans may be characterized as grants, for all the reasons explained above, they are not grants similar to "licenses, permits, charters, or franchises," as required by section 525(a). Businesses excluded from PPP loans are not, by law, prohibited from operating, as with a refusal to provide a license, permit, charter, or franchise. The SBA thus is not acting "as a gatekeeper in determining who may pursue certain livelihoods." *Ayes*, 473 F.3d at 109. Nor does SBA "exercise exclusive or even pervasive control over the world" of business loans, as the opportunity to seek funds elsewhere is still possible. *Id.* ("If a governmental entity refuses to guarantee a home loan for a bankrupt individual . . . that individual is not doomed to homelessness; [they] may seek a guaranty from family or friends, may seek another private loan, perhaps on less favorable terms, or [they] may rent.").

PPP loans simply are not "benefits conferred by the state that are unrelated to credit." *Id.*

at 110. Congress has unquestionably limited section 525(a)'s coverage to those instances where debtors may experience discrimination in obtaining certain benefits conferred by government—such as occupational licenses or permits—while not drafting section 525 so broadly as to insulate debtors from "any and all adverse consequences of a bankruptcy filing." *Watts*, 876 F.2d at 1094.

### D. Subsequent Legislation Confirms That Congress Did Not Intend For The PPP To Be Subject to Section 525(a)

Subsequent legislation further confirms the conclusion that the PPP is not subject to Section 525. As noted above, part of the Consolidated Appropriations Act of 2021, Congress enacted the 2021 EAA. *See supra* at 8-10. One notable aspect of the 2021 EAA is that it contains a provision amending section 525 of the Bankruptcy Code to add a new subsection that expressly bars discrimination based on bankruptcy status in the provision of certain CARES Act benefits, but not PPP loans. *See* Pub. L. No. 116-260, div. FF, tit. X, § 1001(c), 134 Stat. at 3217. This new provision, which is codified at 11 U.S.C. § 525(d), specifies that "[a] person may not be denied relief under sections 4022 through 4024 of the CARES Act (15 U.S.C. 9056, 9057, 9058) because the person is or has been a debtor under this title." The referenced provisions of the CARES Act generally relate to payment forbearance and moratoriums on foreclosures and evictions in properties with federally backed mortgages. These provisions are wholly unrelated to the PPP.

As one court has recognized, a strong negative inference can be drawn from Congress's decision not to include the CARES Act provisions establishing the PPP within the coverage of the new subsection of Section 525 that precludes bankruptcy discrimination with regard to other CARES Act benefits. If "Congress intended for section 525 to apply to PPP loan guarantees, it would have stated so expressly in the 2021 EAA as it did with the amendment addressing federally-backed multifamily mortgage loans." *Agaña v. United States SBA (In re Archbishop of*

*Agaña)*, Nos. 19-00010, 20-00002, 2021 Bankr. LEXIS 460 (Bankr. D. Guam Feb. 23, 2021) (quotation marks omitted).  This conclusion follows from the established principle of statutory construction that "[w]hen Congress provides exceptions in a statute . . . [t]he proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth."  *United States v. Johnson*, 529 U.S. 53, 58 (2000); *see also Pharaohs GC*, 990 F.3d at 227 (recognizing that when Congress modifies the rule applicable to only one particular type of entity it "strongly suggests that Congress deliberately chose not to change" the rule applicable to other similarly situated entities).

That inference is especially appropriate here because at the same time that Congress created Section 525(d), it also extended the PPP.  The issue whether the SBA's bankruptcy exclusion implicates section 525(a) has been litigated in more than fifty cases across the nation.  *See Schuessler v. SBA,* Adv. No. 20-02065-bhl, 2020 WL 2621186, at *9 (Bankr. E.D. Wis. May 22, 2020) ("Bankruptcy courts around the country are now facing a deluge of section 525(a) challenges to the SBA's PPP rule.").  Against that backdrop, Congress's decision not to include the PPP when it amended Section 525 cannot be treated as an accidental omission.  Because Congress chose to extend Section 525 to a limited number of specified CARES Act benefits, it would be improper to conclude that the PPP is nonetheless covered as well.

That Congress did not intend for the PPP to be subject to Section 525 is underscored by another provision in the Economic Aid Act that makes clear that differential treatment of debtors in bankruptcy is permissible.  In Section 320 of that Act, which will be discussed in detail below, Congress created a process through which the SBA Administrator can issue a written determination that will render certain entities in bankruptcy eligible for PPP loans.  *See* 134 Stat. at 2015-16.  But this eligibility takes effect only if "the Administrator submits to the Director of

the Executive Office for United States Trustees a written determination" that the debtors in question are eligible.  Economic Aid Act § 320(a), (f), 134 Stat. at 2015-16; *see supra* at 12.  The provision thus expressly contemplates that certain entities in bankruptcy may receive PPP loans with the SBA's authorization, while other debtors, like traditional Chapter 11 debtors, will not.  Given that Congress has specifically allowed for entities in bankruptcy to be treated differently in the administration of the PPP, it follows that Congress did not intend for the PPP to be subject to a separate, general statutory provision that would allegedly bar such differential treatment.

## II.  WEATHER KING'S APA CLAIMS FAIL AS A MATTER OF LAW

Plaintiff's APA claims fail for a number of reasons.  First, as explained in more detail below, the 2021 EAA fatally undermines Plaintiff's APA claims.  Indeed, following the enactment of the 2021 EAA, as detailed below, both courts that have reached the issue have rejected similar APA claims to those made by Plaintiff here.  Neither the CARES Act nor the Small Business Act prohibits the challenged bankruptcy disqualification, the Administrative Record demonstrates SBA based its decision upon consideration of the relevant factors and show no clear error of judgment, and SBA established the bankruptcy exclusion before the PPP began.

### A.  The EAA Fatally Undermines Plaintiff's APA Claims

Weather King's APA claims contend, in part, that Congress legislated that Chapter 11 debtors like Weather King were eligible for PPP loans, or that SBA acted arbitrarily or capriciously in excluding them by regulation.  To the extent those arguments had any merit in May 2020, when the bankruptcy court below enjoined the SBA, that merit evaporated when Congress renewed the PPP in the 2021 EAA.  This is because Plaintiff's argument is premised on its conclusion that Congress intended for Chapter 11 debtors to be eligible for PPP loan guarantees.  As demonstrated below, Plaintiff's understanding of the CARES Act is incorrect because it disregards language in the CARES Act, the statutory "sound value" requirement in 15 U.S.C. § 636(a)(6), and the SBA's

long-standing consideration of bankruptcy status. The EAA, however, confirms that Congress never intended to mandate the eligibility of Chapter 11 debtors, because the same Congress that enacted the CARES Act later authorized SBA to make certain debtors in bankruptcy eligible for the PPP, but specifically excluded debtors, like Plaintiff, in traditional Chapter 11 bankruptcy. The legislation eviscerates any claim that Congress, in the CARES Act, mandated the eligibility of debtors or that SBA's exclusion of them was contrary to the APA.

The EAA reopened the PPP and appropriated additional funding for loan guarantees. *See* EAA § 323(a)(1)(B), (d)(1)(A), 134 Stat. at 2019. The EAA also expanded PPP eligibility criteria is specific ways. For instance, Congress expanded PPP eligibility to housing cooperatives, news organizations, and 501(c)(6) and destination marketing organizations. *Id.* § 316–318, 134 Stat. at 2011–15.

Of particular relevance here, in section 320 of the EAA, entitled "Bankruptcy Provisions," Congress made *certain* categories of bankrupt debtors potentially eligible for PPP loans, subject to the SBA Administrator's advance, categorical authorization.[13] 134 Stat. at 2015. Specifically, section 320 amends the Bankruptcy Code to permit a bankruptcy court to "authorize a debtor in possession or a trustee that is authorized to operate the business of the debtor under section 1183, 1184, 1203, 1204, or 1304 of [title 11]" to obtain a PPP loan. This list of bankruptcy code sections refers to three specific categories of debtors who are potentially eligible for PPP loans, subject to the SBA Administrator's advance, express written determination:

---

[13] The amendments to the Bankruptcy Code in section 320 would have only become effective if "the [SBA] submits to the Director of the Executive Office for United States Trustees a written determination that, subject to satisfying any other eligibility requirements, any debtor in possession or trustee that is authorized to operate the business of the debtor under section 1183, 1184, 1203, 1204, or 1304 of title 11, United States Code, would be eligible for a [PPP] loan." § 320(f)(1)(A), 134 Stat. at 2016.

1. Debtors or trustees as set forth in subchapter V of Chapter 11, created by the Small Business Reorganization Act to streamline bankruptcy for small businesses. 11 U.S.C. § 1183–84.

2. Debtors or trustees as set forth in Chapter 12, which allows "family farmers" and "family fisherman" to restructure their finances. 11 U.S.C. § 1203–04.

3. Debtors in Chapter 13, which enables individuals with regular income to develop a plan to repay all or part of their debt. 11 U.S.C. § 1304.

Of crucial importance, the list in section 320 does not extend potential eligibility to traditional Chapter 11 debtors who operate under sections 1107 or 1108 of the bankruptcy code. Here, Plaintiff is not proceeding under subchapter V, Chapter 12 or Chapter 13; instead, Plaintiff filed a traditional Chapter 11 bankruptcy, operating under 11 U.S.C. § 1107. The EAA thus does not extend potential eligibility to Plaintiff.

With section 320, Congress recognized that the SBA had previously excluded all debtors from PPP loan guarantees and did not invalidate that rule. Rather, Congress created a path for *certain* categories of debtors to be *potentially* eligible for PPP loan guarantees. But, in doing so, Congress excluded traditional Chapter 11 debtors from potential eligibility. That exclusion is purposeful and unequivocally demonstrates that Congress had no intent to mandate that traditional Chapter 11 debtors be eligible for PPP loan guarantees. *See Barnhart v. Peabody*, 537 U.S. 149, 168 (2003) (explaining that "items not mentioned" in a statute are "excluded by deliberate choice, not inadvertence" when the "items expressed are members of an associated group or series"); *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent"). This well-accepted rule of statutory construction is based upon the principle of *expressio unius est exclusio alterius*, meaning that "legislative affirmative description implies denial of the nondescribed [items]."

26

*Cont'l Cas. Co. v. United States*, 314 U.S. 527, 533 (1942).

Further, the EAA also explicitly recognized the SBA's authority to determine whether bankrupt entities should be eligible. The EAA established the SBA Administrator as a gatekeeper who must first determine whether, with the discretion delegated to the SBA, the listed categories of debtors will be permitted to obtain PPP loan guarantees. § 320(f)(1)(A), 134 Stat. at 2016. Absent the SBA Administrator's written determination, these categories of debtors remained ineligible for the PPP pursuant to the SBA's current rules.[14]

Taken together, these amendments make clear that Plaintiff errs in asserting that the CARES Act mandates Chapter 11 debtor eligibility. Congress plainly had no such intent because the very same Congress that passed the CARES Act *excluded* traditional Chapter 11 debtors like Plaintiff from potential eligibility. *See Bell v. New Jersey*, 461 U.S. 773, 785 n.12 (1983) ("Congress is not merely expressing an opinion . . . but is acting on what it understands its own prior [legislative] acts to mean."). The EAA instead confirms that Congress delegated authority to the SBA to determine whether bankrupt debtors should be eligible for PPP loan guarantees. Plaintiff is wrong to disregard that delegated authority in favor of its view of who should be eligible for PPP loan guarantees. *See generally Vestavia Hills*, 2021 WL 1165038, at *12-13 (holding that the EAA "does not require the SBA to expand or narrow PPP eligibility requirements with respect to debtors in bankruptcy; at most, it acknowledges that the SBA is permitted to determine certain categories of debtors in bankruptcy are eligible for the PPP.").

Finally, the EAA marked the fourth time that Congress amended the PPP.[15] Each of the

---

[14] In the SBA's first interim final rule issued after the EAA, it continued to prohibit bankrupt debtors from obtaining PPP loan guarantees. *See supra* at 7-10.

[15] For previous amendments to the PPP, *see* Extending Authority for Commitments for the Paycheck Protection Program & Separating Amounts Authorized, PUB. L. NO. 116-147, 134 Stat. 660 (2020), Paycheck Program Flexibility Act of 2020, PUB. L. NO. 116-142, 134 Stat. 641

four amendments came after the SBA promulgated its rule excluding debtors in bankruptcy from PPP loan guarantees and after bankrupt debtors brought publicized challenges to that rule under the APA. In the first three amendments, Congress declined the opportunity to mandate that debtors in bankruptcy be eligible for PPP loan guarantees. In the EAA, Congress provided potential eligibility only for three specific types of debtors, none of which include traditional Chapter 11 debtors like Plaintiff. If Congress had ever intended for Chapter 11 debtors to receive PPP loan guarantees, it had ample opportunity to say so. *See United States v. Rutherford*, 442 U.S. 544, 554 n.10 (1979) ("[O]nce an agency's statutory construction has been fully brought to the attention of the public and the Congress, and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned."). Instead, Congress in the EAA, excluded Chapter 11 debtors. The Court should therefore reject Plaintiff's APA claims, which are fundamentally premised on the mistaken view that Congress did not intend for Chapter 11 debtors like Plaintiff to be excluded.

### B. The SBA Did Not Exceed Its Statutory Authority Under 5 U.S.C. § 706(2)(C)

Weather King wrongly contends the SBA exceeded its statutory authority 706(2)(C) of the APA in excluding bankrupt entities from receiving PPP loans. Section 706(2)(C) allows reviewing courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C). Here, even if there could be any question after the passage of the EAA, the SBA's exclusion of entities in bankruptcy and entities with owners in bankruptcy was well within the

---

(2020), and Paycheck Protection Program & Health Care Enhancement Act, Pᴜʙ. L. Nᴏ. 116-139, 134 Stat. 620 (2020).

broad authority Congress delegated to the Administrator in the CARES Act.

Where allegations under section 706(2)(C) implicate an agency's construction of a statute it is charged with administering, courts must apply the principles of deference described in *Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984). "[The Sixth Circuit] reviews the propriety of agency action under the two-step framework set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 . . . (1984)." *Tenn. Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1037 (6th Cir. 2018). *Chevron* articulates a two-step process. *Id.* The first step asks whether Congress "had an intention on the precise question at issue.'" *Id.* (quoting *Chevron*, 467 U.S. at 843 n.9). "'If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" *Id.* (quoting *Chevron*, 467 U.S. at 842−43). "But if the statute is instead 'silent or ambiguous with respect to the specific issue,' we then ask, at step two of the analysis, 'whether the agency's answer is based on a permissible construction of the statute.'" *Id.* at 1037−38 (quoting *Chevron*, 467 U.S. at 843). "'[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the Administrator of an agency." *Atrium Med. Ctr. v. U.S. Dept. of Health and Human Servs.*, 766 F.3d 560, 566 (6th Cir. 2014) (quoting *Chevron*, 467 U.S. at 844).

### 1. *Chevron*'s Step One: Congress Did Not Speak To The Direct Question At Issue in the CARES Act

At the time Plaintiff applied for a PPP loan, Congress had not directly addressed the precise question under *Chevron*'s step one: whether bankrupt debtors may obtain a PPP loan guarantee. Congress made the considered decision not to enact the PPP as a freestanding program, but rather to utilize the preexisting infrastructure of the SBA's Section 7(a) Lending Program. *See* First Interim Final Rule, 85 Fed. Reg. at 20,8111 (recognizing that the CARES Act "temporarily adds"

the PPP to the SBA's Section 7(a) Lending Program).  To avoid doubt, Congress confirmed its PPP placement within the Section 7(a) Lending Program was deliberate, specifying that "[e]xcept as otherwise provided" in the CARES Act, the Administrator "may" guarantee PPP loans "under the same terms, conditions, and processes" as loans under Section 7(a) of the Small Business Act. 15 U.S.C. § 636(a)(36)(B); *Gateway*, 983 F.3d at 1256 ("As we've pointed out, the PPP was not created as a standalone program but was added into the existing § 7(a) program, which subjects it to existing conditions and regulations, as well as existing SBA authority.").

Pursuant to the Small Business Act, Congress granted the SBA "extraordinarily broad powers" in the administration of loans to small businesses under the Section 7(a) Lending Program, *McClellan*, 364 U.S. at 447, including expansive rulemaking authority. 15 U.S.C. § 634(b)(6)–(7). That background authority necessarily extends to the PPP. *Gateway*, 983 F.3d at 1256 ("We presume that Congress is aware of existing law when it passes legislation.").  In fact, the CARES Act expressly empowers the SBA to issue regulations implementing the PPP. 15 U.S.C. § 9012. Indeed, understanding that the CARES Act left gaps that the SBA would need to fill, Congress did not merely authorize the SBA to adopt implementing regulations for the PPP; it required the SBA to adopt implementing regulations and to do so in just fifteen days.  *Id.*; *see also Schuessler*, 2020 WL 2621186, at *11 (recognizing that in light of the speed with which Congress wanted PPP funds deployed, Congress did not spell out in the statute all requirements for PPP participation," and instead "entrusted the details to the SBA, engrafting the PPP on the SBA's existing Section 7(a) [L]ending [P]rogram, and giving the SBA emergency rulemaking authority").

The CARES Act expressly modified some Section 7(a) requirements for PPP loan guarantees. *See, e.g.*, 15 U.S.C. § 636(a)(36)(D), (I)–(J), (R) (exempting the PPP from Section 7(a) requirements regarding affiliation rules, an applicant's ability to obtain credit elsewhere,

collateral and personal guarantee requirements, and prepayment penalties). But Congress also made clear that, "[e]xcept as otherwise provided," "the [SBA] may guarantee" PPP loans "under the same terms, conditions, and processes" as other Section 7(a) loans. 15 U.S.C. § 636(a)(36)(B). Nowhere does the CARES Act modify the "sound value" requirement codified in 15 U.S.C. § 636(a)(6), so it applies with full force here. Congress thus adopted the PPP as a form of Section 7(a) lending and left intact the requirement that loans must be of "sound value." *Gateway*, 983 F.3d at 1257 ("Congress knew how to suspend or render inapplicable to PPP loans the traditional § 7(a) requirements when it wanted to do so, and it did that with some of the requirements. But not the sound value requirement."). Further, Congress did not expressly prohibit the SBA from excluding bankrupt debtors from PPP loan guarantees; to the contrary, Congress built upon the broad rulemaking authority it gave the SBA under Section 7(a) by authorizing the SBA to, inter alia, set the "terms conditions, and processes" for PPP loan guarantees. 15 U.S.C. § 636(a)(36)(B). *Gateway*, 983 F.3d at 1257 ("That Congress gave the SBA discretion over the matter is also evidenced by the fact that the Act does not limit the SBA's longstanding general authority to implement § 7(a) and the sound value requirement. Quite the opposite.").

Because Congress did not address the interplay of 15 U.S.C. § 636(a)(6) and PPP eligibility requirements, but instead "plac[ed] PPP within § 7(a), specifically chang[ed] some § 7(a) requirements but not the sound value one, and delegate[ed] rulemaking authority," the legislature "left it up to the SBA to determine how to apply the sound value requirement to PPP loans, and that includes specifying eligibility requirements." *Gateway*, 983 F.3d at 1257. At a minimum, prior to the enactment of the 2021 EAA, the question whether bankrupt debtors may obtain PPP loan guarantees is ambiguous at *Chevron*'s first step. *Gateway*, 983 F.3d at 1257; *Vestavia Hills*, 2021 WL 1165038, at *9-12; *Agana*, 2021 WL 1702311, at *7; *Tradeways*, 2020 WL 3447767, at

*14 ("[N]othing in the CARES Act unambiguously addresses whether the bankruptcy debtors are eligible to participate in the PPP."); *Rochester*, 466 F. Supp. 3d at 379 ("[N]othing in the CARES Act requires that a bankrupt debtor be eligible for participation in the PPP—this detail was left by Congress for determination by the SBA."); *In re Henry Anesthesia Assocs. LLC,* No. 19-64159-LRC, 2020 WL 3002124, at *8 (Bankr. N.D. Ga. June 4, 2020); *Schuessler*, 2020 WL 2621186, at *10–11 ("Nothing in the statutory text suggests that . . . Congress was providing an exhaustive list of eligibility requirements that the SBA could not augment through rulemaking.").

To the extent that Plaintiff contends that the Sixth Circuit's decision in *DV Diamond Club of Flint, LLC v. SBA*, 960 F.3d 743, 746 (6th Cir. 2020), is dispositive or compels a different result at step one of *Chevron*'s analysis, such argument is mistaken. *DV Diamond Club* is not dispositive, since that decision was not a merits determination—the Sixth Circuit only denied the United States' request to stay a preliminary injunction. Courts have repeatedly rejected arguments analogous to that made by Plaintiff here.

For example, in *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021), the Ninth Circuit concluded that a prior published motions panel order denying stay of a temporary restraining order pending appeal did not bind the merits panel's resolution of the appeal of the restraining order and subsequently-issued preliminary injunction. "The published motions panel order may be binding as precedent for other panels deciding the same issue, but it is not binding here." *Id*. at 660. The Ninth Circuit explained that the issues the motions panel and merits panel faced were "different." *Id*. "In deciding whether the court should stay the grant or denial of a preliminary injunction pending appeal, the motions panel is predicting the likelihood of success of the appeal. That is, the motions panel is predicting rather than deciding what our merits panel will decide. In resolving the merits of a preliminary injunction appeal, our merits panel is deciding the

likelihood of success of the actual litigation." *Id.*; *see also Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) ("In assessing the lower courts' exercise of equitable discretion, we bring to bear an equitable judgment of our own." In considering a stay of an injunction, "it is ultimately necessary to balance the equities—to explore the relative harms to applicant and respondent, as well as the interests of the public at large.") (internal citation omitted).

If these conclusions apply in the context of an appeal of the injunction, they plainly hold for a merits appeal that after judgment in the court below. Put another way, if the Sixth Circuit would not be bound by its motions panel's denial of stay in *DV Diamond Club* if that case returned to the court of appeals for a merits determination, then this Court cannot be bound by the motions panel's ruling in *DV Diamond Club* in its determination of the merits here.

Moreover, *DV Diamond* Club is inapposite on the facts of this case. At issue in *DV Diamond Club* was an SBA rule "that renders sexually oriented businesses . . . ineligible to receive PPP loan guarantees." 2020 WL 2988528, at *1. The precise question in *DV Diamond Club* was whether the term "any business," as used in section 636(a)(36)(D), applied to sexually oriented businesses. *Id.* at *2. For purposes of *Chevron*'s step one, *DV Diamond Club* did not have to look beyond the provision of 636(a)(D) in answering it did. *Id.* ("The term 'any' carries an expansive meaning. It refers to a member of a particular group or class without distinction or limitation and, in this way, impl[ies] *every* member of the class or group.") (internal citations and quotations omitted). But, as developed below, the bankruptcy exclusion at issue requires a different analysis than the sexually oriented business rule at issue in *DV Diamond Club*. Thus, it is not surprising that courts across the country have repeatedly rejected applying *Diamond Club*, particularly in cases involving the bankruptcy exclusion. *See Pharaohs GC, Inc. v.* SBA, 990 F.3d 217 (2d Cir.

2021) (declining to follow *Diamond* Club outside the precise procedural posture of that case); *Tradeways*, 2020 WL 3447767, at \*12-13 (declining to follow *Diamond Club*); *Diocese of Rochester*, 2020 WL 3076103, at \*6-7 (declining to follow *Diamond Club*); *Defy Ventures, Inc. v. SBA*, No. CCB-20-1838, 2020 WL 3546873, at \*7-8 (D. Md. June 29, 2020) (declining to follow *Diamond Club* in a case involving a criminal PPP exclusion); *accord Schuessler*, 2020 WL 2621186, at \*11; *Gateway*, 983 F.3d at 1264; *Agana*, 2021 WL 1702311, at \*7.

As *Diocese of Rochester* explained, the phrase "any business" in section 636(a)(36)(D)(i) cannot be read in isolation in the context of the bankruptcy exclusion—

> [I]n making the threshold determination under *Chevron*, a reviewing court should not confine itself to examining a particular statutory provision in isolation.' To the contrary, '[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.

*Id.* at \*6 (internal quotations and citation omitted); *see also Tradeways*, 2020 WL 3447767, at \*13. In this context, by interpreting section 636(a)(36)(D)(i) beyond size restrictions to include every member of a class or group, Plaintiff puts far more weight on the provision than it can bear. *See Tradeways*, 2020 WL 3447767, at \*13 (holding section 636(a)(36)(D)(i) "merely serves to identify the types and size of organizations that are eligible to receive PPP funds"); *Diocese of Rochester*, 2020 WL 3071603, at \*6 (holding section 636(a)(36)(D)(i) "is properly understood not as setting forth the exclusive criteria for participation in the PPP, but merely as expanding the size limitations that would otherwise have been in place"). These courts' conclusions flow naturally from reading section 636(a)(36)(D)(i) with a view to the PPP's place in the overall statutory scheme of section 7(a). Under the section 7(a) program, the SBA guarantees loans only to "small business concerns," 15 U.S.C. § 636(a), which the Small Business Act defines by reference to size restrictions. 15 U.S.C. § 636(a)(1)–(2); *see also* 13 C.F.R. § 121.101(a) ("SBA's size standards define whether a

34

business entity is small and, thus, eligible for Government programs and preferences reserved for 'small business' concerns."); 13 C.F.R. Part 122 (establishing size standards). Congress sought to expand these size restrictions in the CARES Act by providing under section 636(a)(36)(D)(i) that, "*in addition to small business concerns*, any business concern . . . shall be eligible to receive a covered loan" if the business has less than 500 employees or qualifies under industry specific rules. *Id.* (emphasis added.)

That Congress relaxed size restrictions for PPP loan guarantees does not suggest that it intended size to be the only condition. *Diocese of Rochester*, 2020 WL 3071603, at *6 ("[T]he Court disagrees with Plaintiffs that in expanding the size restrictions, Congress unambiguously provided that there could no other eligibility criteria."). In fact, the provision is just one of several adjusting eligibility requirements. *See, e.g.*, 15 U.S.C. § 636(a)(36)(D)(ii) (permitting sole proprietors and independent contractors to receive PPP loans); 15 U.S.C. § 636(a)(36)(D)(iv) (removing certain affiliation rules); 15 U.S.C. § 636(a)(36)(J) (waiving collateral and personal guarantee requirements). These provisions "clearly anticipate the existence of additional eligibility criteria." *Diocese of Rochester*, 2020 WL 3071603, at *7. Further, "the CARES Act clarifies that unless otherwise provided, 'the Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under' the PPP. . . . Yet, these provisions would be entirely superfluous if § 636(a)(36)(D)(i) eliminated all preexisting eligibility criteria." *Tradeways*, 2020 WL 344767, at *13 (quoting 15 U.S.C. § 636(a)(36)(B)).

Moreover, Weather King's claim here involves the soundness of a loan to a business that implicates a *statutory* obligation Congress placed upon the SBA. Whether entities in bankruptcy may receive PPP loan guarantees thus implicates a statutory provision regarding credit risk not relevant in *DV Diamond Club*, where an SBA regulation was at issue. The bankruptcy exclusion

35

here arises out of the existing section 7(a) statutory requirement, left unaltered by Congress, that all loans "shall be of such value . . . as reasonably to assure repayment." 15 U.S.C. § 636(a)(6). When *DV Diamond Club*'s interpretation of "any business" in section 636(a)(36)(D)(i) is read alongside section 636(a)(6), as *Chevron*'s step one commands, there is statutory ambiguity whether entities in bankruptcy or entities with owners in bankruptcy may obtain a PPP loan guarantee. *See Tradeways,* 2020 WL 3447767, at *13 ("[*DV Diamond Club's*] reading of § 636(a)(36)(D)(i) puts the CARES Act on a collision course with the Small Business Administration Act and longstanding SBA regulations.").

What is more, Plaintiff's argument rests on the premise that Congress implicitly abrogated a statutory provision left intact for decades and historically considered by the SBA—a point *DV Diamond Club* did not have to consider. As *Diocese of Rochester* explained in rejecting a similar argument, "Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." 2020 WL 3071603, at *7 (quoting *Whitman v. Am. Trucking Assocs.*, 531 U.S. 456, 468 (2001)). *Diocese of Rochester* refused to "presume that simply by using the phrase 'any business' concern in one part of the CARES Act, Congress meant to implicitly eliminate the long-standing statutory requirements for Section 7(a) loans." *Id.* (citing *Jones v. United States*, 526 U.S. 227, 234 (1999) ("Congress is unlikely to intend any radical departures from past practice without making a point of saying so.")); *see also Tradeways*, 2020 WL 3447767, at *13.

In sum, nothing in the CARES Act speaks directly to the question of whether debtors in bankruptcy may obtain PPP loan guarantees; rather, Congress vested the SBA with the authority necessary to adopt such a policy. The act does not narrow the SBA's broad authority to determine the criteria to be used in evaluating "sound value." Instead, Congress provided that the SBA "may"

36

guarantee PPP loans, 15 U.S.C. § 636(a)(36)(B), and preserved and expanded the SBA's rulemaking authority so that the agency could formulate standards allowing lenders to effectively evaluate an unprecedented volume of loan applications in a period of months. 15 U.S.C. § 9012; *Gateway*, 983 F.3d at 1260 ("By placing the PPP within an existing loan program, staying silent about its longstanding sound value requirement while specifically changing other requirements, delegating rulemaking authority to the SBA, and remaining silent about bankruptcy status, Congress reasonably could have meant for the SBA to sue its expertise to fill the gap."). The CARES Act was silent as to debtor eligibility for the PPP, and the SBA reasonably filled the legislative gap.

### 2. *Chevron*'s Step Two: SBA Did Not Act in An Arbitrary, Capricious, or Unreasonable Manner

The SBA recognized that the exigent circumstances giving rise to the PPP made it impossible for lenders to undertake the customary case-by-case evaluation of a borrower's creditworthiness. *Gateway*, 1293 F.3d at 1262 ("Congress gave the SBA only 15 days to issue rules, which is practically warp speed for regulatory action, a command that undoubtedly sprang from the felt need for quick action in light of the burgeoning economic crisis stemming from the pandemic."); *Tradeways*, 2020 WL 3447767, at *14 ("Time was of the essence. And, Congress clearly communicated the urgency of the crisis to the SBA."); First Interim Final Rule, 85 Fed. Reg. at 20,811-12 (noting "[t]he CARES Act was enacted to provide immediate assistance" and "relief to America's small businesses expeditiously"). Accordingly, the SBA adopted the bankruptcy regulation after concluding that a streamlined process was necessary and consistent with congressional intent, *see* First Interim Final Rule, 85 Fed. Reg. at 20,811-12, and that, particularly absent the safeguards provided by the usual, more extensive and tailored underwriting practices for Section 7(a) loans, allowing businesses in active bankruptcy to participate in the PPP

would present "an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans." Fourth Interim Final Rule, 85 Fed. Reg. at 23,451. The SBA's determination "did not arise out of thin [air]" since the "SBA's pre-existing [Section] 7(a) loan application asks a prospective borrower to disclose whether it or an affiliate has filed for bankruptcy." *Tradeways*, 2020 WL 3447767, at *14; SOP § 50 10 5(K) at 37, 180. A bright line rule excluding debtors in bankruptcy was thus "a reasonable effort to accommodate the conflicting policies . . . and one that Congress might reasonably have sanctioned." *Rochester*, 466 F. Supp. 3d at 379; *see also Vestavia Hills*, 2021 WL 1165038 ("It was reasonable to interpret Congress's silence with respect to the sound value requirement as permitting the agency to exclude businesses that would be potentially be unable to repay the loan should they not meet the requirements for forgiveness."); *Agana*, 2021 WL 1702311, at *7.

In holding that the SBA's bankruptcy exclusion rule was reasonable under *Chevron*'s second step, the Eleventh Circuit emphasized the "manifestly competing interests" in the CARES Act: one the one hand, "the purpose of the PPP was to quickly help small businesses in distress or before they become distressed," but, on the other hand, "as we have stressed and stressed again, Congress did put the program in § 7(a), which has a sound value requirement that applies to 'all' § 7(a) loans." *Gateway*, 983 F.3d at 1262 (quoting 15 U.S.C. § 636(a)(6)). Congress, moreover, "did not accommodate [such manifestly competing interests] with specificity when it came to whether bankruptcy debtors are eligible for PPP loans," and instead "left that to the SBA." *Id.* According to the Eleventh Circuit, the SBA "reasonabl[y] accomodat[ed] . . . the competing interests . . . by replacing its usual lending criteria with a simple bright-line proxy based on bankruptcy status." *Id. Gateway* noted its holding was further buttressed "[g]iven all of the circumstances and the urgency with which [the SBA] was forced to act." *Id.*

The question under *Chevron*'s second step is whether the SBA's bankruptcy exclusion is arbitrary, capricious, or manifestly contrary to statute. *See supra* at 29. Under a typical § 7(a) loan, the SBA complies with § 636(a)(6) by asking on its standard loan application whether applicants have "ever filed for bankruptcy protection" as part of the lenders' individual credit reviews. SBA Form 1919. But individual credit reviews are not feasible under the PPP; instead, the SBA allowed "lenders to rely on certifications of the borrower in order to determine eligibility." First Interim Final Rule, 85 Fed. Reg. 20,811-12. A bright line rule excluding debtors in bankruptcy was "a reasonable effort to accommodate the conflicting policies . . . and one that Congress might reasonably have sanctioned." *Diocese of Rochester*, 466 F. Supp. 3d at 379.

The SBA did not eliminate underwriting altogether, but rather streamlined the process. The SBA's statement in its First Interim Final Rule that it will not require lenders to comply with section 13 C.F.R. § 120.150's typical underwriting requirements *presupposes* debtors in bankruptcy are excluded from PPP loan guarantees. Indeed, the First Interim Final Rule itself precludes debtors in bankruptcy from obtaining PPP loan guarantees. It provides that "[e]ach lender's underwriting obligation under the PPP is limited to," *inter alia*, reviewing the PPP application form. 85 Fed. Reg. at 20,815. In turn, the application form requires the borrower to certify that it is "not presently involved in a bankruptcy." *See* SBA Form 2483. The First Interim Final Rule thus incorporates the PPP application form and the bankruptcy exclusion provided on that form. *Schuessler*, 2020 WL 2621186, at *10 (finding that the First Interim Final Rule "includes the exclusion of bankrupt debtors from PPP participation"); *Henry*, 2020 WL 3002124, at *2.

In short, consistent with her broad authority and existing law, the Administrator reasonably excluded debtors in bankruptcy from obtaining PPP loan guarantees. *Diocese of Rochester*, 466

F. Supp. 3d at 379 ("Against this backdrop, the court cannot conclude that the SBA's adoption of a rule excluding debtors from the PPP is beyond the agency's delegated authority.") (quoting *Schuessler*, 2020 WL 2621186, at *10); *see also Tradeways*, 2020 WL 3447767, at *14 ("[T]he CARES Act was passed in the midst of an unprecedented global pandemic in order to stop the nation's economic tailspin. Time was of the essence. And, Congress clearly communicated the urgency of the crisis to the SBA. . . . [T]he Court cannot conclude that the SBA's rule is an unreasonable interpretation of the priorities evinced in the CARES Act."). Whether a court believes the SBA made the best interpretation is inapposite. The SBA's answer to the rulemaking powers thrust upon it reasonably reconciled the lending requirements of § 7(a) with the goals of the CARES Act, and its interpretation was not arbitrary, capricious, or manifestly contrary to statute as a matter of law.

## C.     The SBA Did Not Act Arbitrarily Or Capriciously Under 11 U.S.C. § 706(2)(A)

Plaintiff's third count asserts that the SBA's action were arbitrary and capricious. *See* Compl. ¶¶ 76-90. This contention is wholly unsupported by the record. Under section 706(2)(A) of the APA, reviewing courts may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance law." Like *Chevron* step two, APA arbitrary and capricious review under section 706(2)(A) is narrow and deferential, requiring only that the agency "articulate[] a rational relationship between the facts found and the choice made.'" *Motor Vehicle Mfrs. Assoc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). A court's role under section 706(2)(A) simply is to review agency action to determine whether the decision "was based on a consideration of the relevant factors and whether there was a clear error of judgment." *Id.* at 43. Under this framework, the agency must only "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts and the choice made." *Id.* An agency's

decision normally will be arbitrary and capricious if it: (1) "has relied on factors which Congress has not intended it to consider"; (2) "entirely failed to consider an important aspect of the problem"; (3) "offered an explanation for its decision that runs counter to the evidence before the agency"; or (4) "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* Otherwise, courts do not "broadly require an agency to consider all policy alternatives in reaching [its] decision." *Id.*

As the Eleventh Circuit held, the SBA's bankruptcy regulation readily satisfies APA arbitrary-or-capricious review. *Gateway*, 983 F.3d at 1264 ("[I]n adopting the non-bankruptcy rule for PPP eligibility . . . the SBA did not act arbitrarily or capriciously."). The SBA adopted its policy towards bankrupt debtors in furtherance of the "sound value" requirement for Section 7(a) loans, which squarely applies to the PPP. 15 U.S.C. § 636(a)(6), (a)(36)(B); *Gateway*, 983 F.3d at 1249, 1263. In the typical Section 7(a) context, the SBA implements the sound value provision by requiring that applicants are "creditworthy." 13 C.F.R. § 120.150. To that end, the SBA insists upon a multi-factor inquiry into, *inter alia*, the "credit history of the applicant," "[s]trength of the business," "[a]bility to repay the loan with earnings from the business," and "[p]otential for long-term success," *id.*, and asks on the application form for regular Section 7(a) loans whether the applicants or their affiliates have ever filed for bankruptcy protection. SBA Form 1919 at 2.

In implementing the PPP, the SBA recognized that its usual approach to determining "sound value" would not permit it to "provide relief to America's small businesses expeditiously." First Interim Final Rule, 85 Fed. Reg. at 20,812. The SBA therefore sought to "streamlin[e] the requirements of the regular 7(a) loan program" by excusing PPP lenders from assessing the various indicia of creditworthiness set forth in 13 C.F.R. § 120.150. *Id.* Instead, the SBA would "allow lenders to rely on certifications of the borrower in order to determine [borrower] eligibility," *id.*,

including the question of whether the applicant is presently involved in a bankruptcy. SBA Form 2483 at 1. Thus, the SBA "fashioned its consideration of bankruptcy status into a streamlined and bright-line rule that would speed up decisions about whether PPP loans should be made." *Gateway*, 983 F.3d 1263. Additionally, the SBA consulted with the Secretary of the Treasury in reaching its conclusion, "which means that the expertise of two agencies was brought to bear on the issue." *Id.* For these reasons alone, the Eleventh Circuit held that the SBA's bankruptcy exclusion was a rational conclusion" that satisfied arbitrary-or-capricious review under 5 U.S.C.§ 706(2)(A). *Id.*

Moreover, the Administrative Record establishes rational grounds for the SBA's decision and demonstrates that the SBA considered the relevant factors in determining to exclude debtors from the PPP. The CARES Act builds upon the section 7(a) lending program, in which the SBA explicitly considers the borrower's bankruptcy history to ensure that loans be of "sound value . . . as reasonably to assure repayment." 15 U.S.C. § 636(a)(6); SBA Form 1919 (Questions 6 and 24, considering whether applicant, its owners, affiliates or any business controlled by applicants principals have "ever" been in bankruptcy); Miller Decl. ¶¶ 6−13. Mr. Miller explains he is "not aware of any lender that has extended section 7(a) loans to an entity in active bankruptcy. If such were the case, it would be very unusual and would cause the Agency to provide more scrutiny of the loan during oversight of the lender's decision to make the loan and perhaps lead to refusal of the Agency to honor its guaranty." *Id.* ¶ 13.

The bankruptcy exclusion in the PPP stems from these preexisting section 7(a) requirements. The preexisting bankruptcy questions of section 7(a) were "streamlined" for the PPP to accomplish Congress's and the SBA's objective that PPP loans be processed "expeditiously." First Interim Final Rule, 85 Fed. Reg. at 20,811; Miller Decl. at ¶ 5 ("SBA

42

determined that the intent of the [CARES] Act is that SBA provide relief to America's small businesses expeditiously").  Unlike other section 7(a) loans, the SBA eliminated the requirement to perform individual credit review for each PPP loan.  Instead, the PPP program imposed a bright line rule to exclude those in bankruptcy through its official application form.  As the SBA explains:

> The reason for including the bankruptcy exclusion in form 2483 was that SBA in consultation with Treasury determined that in order to meet the challenge of rescuing the economy from the effects of the Covid-19 virus pandemic, loan assistance authorized by the CARES Act had to be provided as expeditiously as possible with as little as possible underwriting. Since a company in bankruptcy required an inquiry into the state of the proceeding and possibly a court order for DIP financing, as well the possible resolution of a host of other issues and the prospect of the incurring of fees by the lender in monitoring the bankruptcy proceeding, it was determined that the wording of Form 2483 would be expeditious and less likely to slow the administration of the program and less likely to require the expenditure of additional time, effort and other resources. The purpose of a PPP loan is to help small businesses pay their employees and maintain operations to allow them to restart quickly over the next few months. SBA decided that this purpose would not be served by including all bankruptcies. Certain creditors, including administrative creditors, could assert claims to the PPP loan funds that would interfere with its authorized uses and the requirements for PPP loan forgiveness. SBA, in consultation with the Department of Treasury, determined there should be one streamlined rule that applies to all debtors in bankruptcy to avoid the need for case by case reviews.

Miller Decl. ¶ 17.[16] This streamlining of the consideration of bankruptcy status through the PPP application form is wholly within the SBA's delegated discretion.  The CARES Act did not amend the "shall" requirement in 15 U.S.C. § 636(a)(6) that loans be of "sound value."  The CARES Act

---

[16] Plaintiff has contended that the Miller Declaration is a post-hoc rationalization and should be excluded from the Administrative Record. But the Miller Declaration is not an "after-the-fact" or *post hoc* justifications.  As the Supreme Court recently underscored, an "agency can offer a fuller explanation of [its] reasoning" after taking an action as long as the explanation reflects the agency's reasoning "at the time of the agency action."  *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020), at *9.  Even an "amplified articulation of a prior conclusory observation" is permissible. *Id.* The Miller Declaration is just that: a fuller explanation of the basis for the bankruptcy exclusion *when it was made.  See, e.g.*, *Vestavia Hills*, 2021 WL 1165038, at *15 (concluding that the Miller Declaration does not constitute post-hoc rationalizations).

instead explicitly left that provision unaltered, along with section 7(a) lending procedures more broadly, except where specifically noted. *See* CARES Act § 1102(a)(2) (providing that "[e]xcept as otherwise provided in this paragraph, the Administrator *may* guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection.") (emphasis added); 15 U.S.C. § 636(a)(36)(B). The bankruptcy exclusion reasonably reconciles the "shall" requirement concerning the sound value of loan-making under 15 U.S.C. § 636(a)(6) with the obligation to expeditiously process CARES Act PPP loans by replacing the case-by-case consideration of bankruptcy history with a bright line rule on the application form.

The Administrative Record thus demonstrates the SBA's decision to exclude debtors in bankruptcy from the PPP was rational, based on consideration of the relevant factors, and within the scope of the authority delegated to the agency by statute. Put another way, based on the SBA's published rules, this Court can reasonably discern why the SBA did what it did and conclude as a matter of substance that the decision was not arbitrary or capricious. *Tradeways*, 2020 WL 3447767, at *16 ("[W]hat [plaintiff] considers arbitrary agency action is simply the SBA fillings in the gaps Congress left in the CARES Act so that it could nimbly respond to a complex, rapidly-evolving crisis."); *In re Henry Anesthesia Assocs. LLC*, 2020 WL 3002124, at *10; *Schuessler*, 2020 WL 2621186, at *12. The bankruptcy regulation reflects a valid accommodation of the exigencies that necessitated streamlining the underwriting process through the use of plainly rational criteria. *See generally Gateway*, 983 F.3d at 1263-64. Requiring anything more from the SBA runs counter to the deferential arbitrary-and-capricious standard of review. *Id.* For these reasons, most courts have concluded that the SBA's rulemaking was reasonable under the circumstances. For instance, in *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239 (11th Cir. 2020), the Eleventh Circuit explained:

> We cannot say that the SBA failed to consider any important aspect of the problem, or offered an explanation contradicted by evidence that was put before it — there was no evidence put before it. Nor can we say that the SBA's explanation was implausible, much less that it was so implausible that it could not have been based on a difference in view or could not be a product of the SBA's expertise. Bankruptcy debtors are financially distressed and have competing creditors, which it is not implausible to believe will increase the risk of unauthorized use of funds and non-repayment. We will not substitute our view for the SBA's judgment that the gravity of the risk is "unacceptably high." The SBA has long considered bankruptcy status as relevant to § 7(a)'s sound value requirement and creditworthiness regulations. That it fashioned its consideration of bankruptcy status into a streamlined and bright-line rule that would speed up decisions about whether PPP loans should be made is not implausible, irrational, or the product of arbitrary and capricious decision making.

*Id.*; *see also*, *e.g.*, *Tradeways*, 2020 WL 3447767, at *14-15; *Schuessler*, 2020 WL 2621186, at *12; *Vestavia Hills*, 2021 WL 1165038, at *18. The same result should be reached here.

### D.    Weather King's Retroactivity Argument Fails

Finally, Weather King contends that SBA engaged in retroactive rulemaking in violation of the APA. Compl. ¶¶ 62-66. In enjoining the SBA, the bankruptcy court agreed with this claim. Bankr. Adv. Proc. Dkt. 26 at 3 ("Debtor's application for a PPP loan from Dollar Bank (the "PPP Loan") was submitted on April 14, 2020, and was approved and fully funded on April 25, 2020. The SBA's regulations in force at the time the Debtor applied for and obtained the PPP Loan did not exclude bankruptcy debtors."). But this argument is wrong and reflects a fundamental and fatal misunderstanding of federal regulation.

As explained above, the SBA posted its first regulations implementing the PPP on April 2, 2020, *see supra* at 7, 10, 31, less than one week after the CARES Act's passage and the day before the program opened to borrowers. In its First Interim Final Rule, the SBA explained that the PPP "streamlin[ed] the requirements of the regular 7(a) program." 85 Fed. Reg. at 20,812. PPP lenders would not have to undertake the multi-factor creditworthiness test set forth at 13 C.F.R. § 120.150, but could "rely on certifications of the borrower" required on the PPP Application Form. *Id*. The

first question on the PPP Application Form, issued the same day, asks whether the borrower is "presently involved in any bankruptcy." SBA Form 2483 (Ex. 4).

The First Interim Final Rule, which incorporated the PPP Application Form, clearly set forth in the application form that debtors in bankruptcy were ineligible for the PPP. That rule was promulgated consistent with the CARES Act requirement that the SBA issue rules within 15 days. And that rule, as it established the program and the application needed to obtain a PPP loan guaranteed by the SBA, naturally pre-dates any submitted application for a loan or the provision of PPP loan funds guaranteed by the SBA. That the SBA later, in the Fourth Interim Final Rule, provided further explanation for the bankruptcy exclusion does not make the exclusion retroactive.

The text of the Fourth Interim Final Rule supports this conclusion. First, the section addressing the bankruptcy exclusion is titled: "Eligibility of Businesses Presently Involved in Bankruptcy Proceedings." The language generally tracks the exclusion on the application - whether the borrower is "presently involved in any bankruptcy." Second, the Fourth Interim Final Rule explains that the application "reflects th[e] restriction" that debtors in bankruptcy are ineligible for the PPP. The Fourth Interim Final Rule is not promulgating a new regulation, but explaining a term found in the PPP application. Had the Fourth Interim Final Rule created a new aspect of the PPP, or altered an existing aspect, an amendment of the PPP application may have been required. That is not what happened.

Courts have thus rejected arguments similar to the one made by Weather King here in similar circumstances. For instance, in *Clay v. Johnson*, 264 F.3d 744 (7th Cir. 2001), the Seventh Circuit concluded that it could apply a formal comment by the Federal Reserve Board governing interpretation of the Truth in Lending Act, issued not only after the acts in question but after district court litigation had commenced. The court explained that a "rule simply clarifying an unsettled or

confusing area of the law does not change the law, but restates what the law according to the agency is and has always been." *Id*. at 749 (quotations and citations omitted). Moreover, "[w]e give great deference to the promulgating agency's expressed intent as to whether its rule changes the law or merely clarifies it . . . and will defer to an agency's expressed intent that a regulation is clarifying unless the prior interpretation of the regulation or statute in question is patently inconsistent with the later one." *Id*. at 749 (quotations and citations omitted). Here, the Fourth Interim Final Rule merely clarified the bankruptcy exclusion found on the PPP application form promulgated with the First Interim Final Rule. The Fourth Interim Final Rule did not change the law, and was entirely consistent with the SBA's denial of eligibility to debtors in bankruptcy contained in the application issued before the PPP began.

Finally, as Defendants have explained, a significant majority of the more than 50 courts to address the SBA's bankruptcy exclusion, including both courts to have ruled since the EAA was passed, have concluded that the bankruptcy exclusion did not violate the APA. But even for those courts that, previously concluded that the SBA's rule was inconsistent with APA requirements, not one based that ruling on retroactivity. This court should decline to do so here.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant Defendants' motion for summary judgment.

Dated: October 25, 2021                    Respectfully submitted,

BRYAN M. BOYNTON
Acting Assistant Attorney General

BRIDGET M. BRENNAN
Acting United States Attorney

SUZANA K. KOCH
Assistant U.S. Attorney

United States Attorney's Office
801 West Superior Avenue, Suite 400
Cleveland, OH 44113

/s/ Marc S. Sacks
RUTH A. HARVEY
MARGARET M. NEWELL
MARC S. SACKS
MICHAEL S. TYE
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 875
Ben Franklin Station
Washington D.C. 20044
Tel. (202) 307-1104
Fax (202) 514-9163
marcus.s.sacks@usdoj.gov

ATTORNEYS FOR THE UNITED
STATES

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I HEREBY CERTIFY that in compliance with Local Rule 7.1(f), the United States has concurrently filed a motion for an extension of the page limits for dispositive motions requesting relief permitting the United States to file a brief of 47 pages. Should the Court deny that motion, the United States will file a brief in compliance with the page limitations for dispositive motions set forth in Local Rule 7.1(f).

/s/ Marc S. Sacks
MARC S. SACKS
Commercial Litigation Branch
Civil Division
United States Department of Justice

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 25, 2021 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

<u>/s/ Marc S. Sacks</u>
MARC S. SACKS
Commercial Litigation Branch
Civil Division
United States Department of Justice