# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| U.S. SMALL BUSINESS ADMINISTRATION, | ) ) ) | **CASE NO. 5:20-CV-2711** |
| Movant/Appellant, | ) ) | JUDGE CHARLES E. FLEMING |
| vs. | ) ) ) | |
| WEATHER KING HEATING & AIR, INC., | ) ) ) | **MEMORANDUM OPINION AND** |
| Respondent/Appellee. | ) | **ORDER** |

On May 22, 2020, the Northern District of Ohio Bankruptcy Court granted Respondent Weather King Heating & Air, Inc.'s ("Weather King") Motion for Preliminary Injunction in case number 19-52957.  The Bankruptcy Court concluded that Weather King would likely prevail on the merits of its claim that the U.S. Small Business Association ("SBA") exceeded its statutory authority when it categorically excluded bankruptcy debtors from Paycheck Protection Program ("PPP") eligibility, and that SBA engaged in retroactive rulemaking with respect to its application of the bankruptcy exclusion to Weather King.  The Preliminary Injunction enjoins SBA from rescinding or altering Weather King's PPP loan approval or SBA's guarantee of that loan, and prohibits SBA from considering Weather King's bankruptcy status in connection with Weather King's application for loan forgiveness.

On June 19, 2020, SBA filed a Motion for Withdrawal of Reference and a Notice of Appeal of the Preliminary Injunction.  Both matters have been consolidated into the above-captioned case.  Concluding that SBA did not exceed its statutory authority when it excluded debtors in bankruptcy from PPP loan eligibility and that SBA did not engage in retroactive rulemaking as applied to Weather King, the Court VACATES the Bankruptcy Court's Preliminary Injunction.  Further

1

concluding that the bankruptcy exclusion is not arbitrary, capricious, or an abuse of discretion and that the bankruptcy exclusion does not violate 11 U.S.C. 525(a), the Court GRANTS SBA's Motion for Summary Judgment and DENIES Weather King's Motion for Summary Judgment.

## BACKGROUND

### Weather King files bankruptcy and obtains a PPP loan
### based on a false application

Weather King filed a Chapter 11 bankruptcy on December 16, 2019.  (ECF No. 18, Declaration of Rajbinder S. Rai ("Rai Dec."), PageID# 201, ¶ 4).  Five months later, Weather King applied for a PPP loan via Dollar Bank on April 14, 2020.  (*Id.* at PageID# 202, ¶ 5).  The application misrepresented Weather King's bankruptcy status, checking the "no" box when asked whether it was "presently involved in any bankruptcy."  (*See* ECF No. 19-4, SBA Application Form 2483 ("SBA Form 2483"), PageID# 278).[1]  The parties do not dispute that Weather King's application included this misrepresentation; rather, Weather King argues that the bankruptcy question on SBA Form 2483 is compound and confusing, and does not provide adequate notice of the bankruptcy exclusion.  (*See* ECF No. 22, Weather King Response in Opposition to SBA's Motion for Summary Judgment ("Weather King Response"), PageID# 332–35).

Based on the application submitted, Weather King received a PPP loan from Dollar Bank in the amount of $109,200.00 on April 22, 2022.  (ECF No. 18, PageID# 202, ¶ 7).  On May 5, 2020, Weather King moved the Bankruptcy Court for after-the-fact authorization to obtain credit, in essence asking the Bankruptcy Court to ratify the loan already applied for and received.  (Case No. 19-52957, ECF No. 66, Emergency Motion of Weather King Heating & Air Inc. for Entry of an Interim Order Authorizing Debtor to Obtain Credit Pursuant to 11 U.S.C. § 364 and Setting a

---

[1] *See also* ECF No. 19-1, Lender Application Form, PageID# 265 (establishing that Weather King certified to Dollar Bank that it was "not presently involved in a bankruptcy").

Final Hearing to Approve Same ("Emergency Motion")).  SBA objected to the Emergency Motion, arguing that Weather King's PPP loan was "inappropriately obtained" (Case No. 19-52957, ECF No. 74, P. 2), and that the Bankruptcy Court therefore lacked jurisdiction to authorize Weather King's receipt and use of the PPP loan.  The Bankruptcy Court granted the Emergency Motion on May 22, 2022.  (Case No. 19-52957, ECF No. 77).

The same day, the Bankruptcy Court entered a Preliminary Injunction against SBA in a concurrently pending adversary proceeding, concluding that Weather King would prevail on the merits of its claims that SBA exceeded its authority when it categorically excluded bankruptcy debtors from PPP eligibility and that the bankruptcy exclusion violated 11 U.S.C. § 525's mandate precluding government discrimination against bankrupt debtors when awarding grants and subsidies.  (Case No. 20-05023, ECF No. 26).  The Preliminary Injunction enjoined SBA from using the bankruptcy exclusion and Weather King's failure to identify itself as a bankrupt debtor in its PPP loan application to (1) "rescind, annul, or otherwise alter its approval of [Weather King's] PPP Loan;" (2) "rescind, annul, or otherwise alter its guaranty of [Weather King's] PPP Loan extended to Dollar Bank;" and (3) "process any application for forgiveness of the PPP Loan submitted by [Weather King]."  (*Id.*).

### SBA appeals the Preliminary Injunction and moves the District Court for Mandatory Withdrawal of the Reference

SBA responded to the Preliminary Injunction by filing both a Notice of Appeal to the District Court (Case o. 5:20-cv-1241) and a Motion for Mandatory Withdrawal of the Reference in this case on June 19, 2020 (ECF No. 1).  This Court granted SBA's Motion to Withdraw the Reference on December 4, 2020, and consolidated the appeal with this case on December 13, 2020.  (ECF No. 4).

Withdrawal of the reference is predicated on Weather King's claim that the PPP bankruptcy exclusion violates existing law, and that resolution of that claim requires the interpretation of new, non-bankruptcy law—namely, the CARES Act.  Following the Court's withdrawal of the reference, the parties filed cross motions for summary judgment and opposed each other's affirmative motion.  Weather King asserts that: (1) SBA exceeded its statutory authority when it excluded bankruptcy debtors categorically from PPP eligibility; (2) SBA's rule excluding bankruptcy debtors from PPP eligibility is arbitrary, capricious, an abuse of discretion, and/or otherwise not in accord with the law; (3) the bankruptcy exclusion as applied to Weather King is impermissible retroactive rulemaking in violation of 5 U.S.C. 706(2)(A) and (D), and offends 5 U.S.C. 552(A); and (4) the bankruptcy exclusion violates 11 U.S.C. 525(A).

### The CARES Act and SBA's implementation of the CARES Act

During the pendency of Weather King's bankruptcy, the COVID-19 Pandemic ("Pandemic") began in earnest, as did the federal government's efforts to keep the American economy afloat during an unprecedented time of crisis and uncertainty.  A key product of these efforts was the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which provided for, *inter alia*, the PPP: a unique, fast-tracked, federally-guaranteed loan program that put money in the hands of small businesses to pay their employees, continue existing benefit programs, and remain current on rent, mortgage, and utility payments.  *See* CARES Act, Pub. L. No. 116-136, § 1102, 134 Stat. 281 (2020).  If a small business used the loan funds for certain permissible purposes, the loan became eligible for forgiveness, up to the full amount of the loan. *Id.* at § 1102(a)(M).

The PPP was inserted beneath the umbrella of SBA's robust 7(a) Loan Program.  *See* CARES Act, Pub. L. No. 116-136, § 1102(a), 134 Stat. 281 (2020); Business Loan Program

Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811 (Apr. 15, 2020); Small Business Act, 15 U.S.C. § 636(a) (Oct. 1, 2021).  Section 1102(a)(2)(B) of the CARES Act explains that PPP loans may be guaranteed by SBA "under the same terms, conditions, and processes" as any other 7(a) loan.  Even so, the PPP expressly modifies certain requirements for other 7(a) loans, such as eliminating the need for business owners to personally guarantee the loan and the applicant's inability to obtain credit elsewhere; the PPP does not supplant or stand on footing apart from section 7(a), since the PPP represents amendments—new inclusions and new exclusions—to the existing mandates expressed in section 7(a).  *See* CARES Act, Pub. L. No. 116-136, § 1102(a), 134 Stat. 281 (2020).  The parties do not dispute that the changes made to section 7(a) to accommodate the PPP hastened the loan application, approval, and funding process, and provided parameters for potential loan forgiveness.

Thus, the CARES Act provided that PPP loans are SBA guaranteed and exist within the confines of SBA's 7(a) loan program; yet the need to immediately infuse the economy with PPP loan money was critical.  To that end, Congress, via the CARES Act, required the SBA Administrator to promulgate rules within 15 days of the CARES Act's passage to implement the program, and permitted SBA to issue rules without regard to the Administrative Procedure Act's ("APA") traditional notice and comment period.  *Id.* at § 1114, 134 Stat. at 312.  The SBA Administrator described Congress's directive in its First Interim Final Rule:

> The intent of the Act is that SBA provide relief to America's small businesses expeditiously.  This intent, along with the dramatic decrease in economic activity nationwide, provides good cause for SBA to dispense with the 30-day delayed effective date provided in the Administrative Procedure Act.  Specifically, small businesses need to be informed on how to apply for a loan and the terms of the loan under section 1102 of the [CARES] Act as soon as possible because the last day to apply for and receive a loan is June 30, 2020.

85 Fed. Reg. 20,811.

SBA's First Interim Final Rule became effective on April 15, 2020 ("First IFR").[2] The First IFR instructed small businesses (1) how to apply for a PPP loan, (2) how to use PPP loan funds, and (3) how to receive PPP loan forgiveness. At issue in this case is the first of those three instructions.

Application for a PPP loan begins with eligibility.  The CARES Act generally states that, "During the covered period, in addition to small business concerns, ***any business concern***, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) shall be eligible to receive a covered loan . . . ." CARES Act, Pub. L. No. 116-136, § 1102(a)(2)(D)(i), 134 Stat. 281 (2020) (emphasis added).  Following that general statement, the CARES Act goes on to restrict loan eligibility to an entity with "not more than the greater of—(I) 500 employees; or (II) if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, veterans organization, or Tribal concern operates."  (*Id.*).  SBA's eligibility-related rules are in step with, but do not necessarily mirror, these requirements:

A. "A small business concern as defined in section 3 of the Small Business Act (15 U.S.C. § 632), and subject to SBA's affiliation rules under 13 CFR 121.03(f) unless specifically waived by the Act; or

B. A tax-exempt nonprofit organization described in 501(c)(3) of the Internal Revenue Code (IRC), a tax-exempt veterans organization described in section 501(c)(19) of the

---

[2] On October 25, 2021, the same day both parties filed their Motions for Summary Judgment, Weather King filed a Motion Requesting the Court to take Judicial Notice of Adjudicative Facts in Support of Motion for Summary Judgment.  (ECF No. 15).  That Motion included the First, Second, Third, and Fourth IFRs, and a series of SBA "FAQ's" from its website.  Weather King's Motion is GRANTED to the extent that those materials are relied upon in this Memorandum Opinion and Order.

IRC, Tribal business concern described in section 31(b)(2)(C) of the Small Business Act, or any other business, and

C.  You were in operation as of February 15, 2020 and either had employees for whom you paid salaries and payroll taxes or paid independent contractors, as reported on a Form 1099-MISC."

85 Fed. Reg. 20,812.  Sole proprietorships, independent contractors, and self-employed individuals are also eligible, according to the CARES Act, but the SBA Rules specify that such entities are only eligible if they were in operation on February 15, 2020.  *Id.*

Certain entities that fall within the above-described categories are nonetheless ineligible under the SBA rules.  For example, the First IFR excludes, in a non-exhaustive list of causes for ineligibility, businesses which have "ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted within the last seven years and caused a loss to the government."  *Id.*  This basis for ineligibility is not a product of the CARES Act, but is a long-standing requirement for all other 7(a) loans.[3]  The application form used for other SBA 7(a) loans does not directly state that those delinquent on federal debt are ineligible to receive a loan under the program, but the status of an applicant's existing federal debt is the topic of questions 3, 3(a), and 3(b) of SBA Form 1919, which is the pre-PPP 7(a) loan application form and prerequisite to receiving a pre-PPP 7(a) loan.[4]

---

[3]  *See  7(a) loans*, U.S. SMALL BUSINESS ADMINISTRATION,  https://www.sba.gov/funding-programs/loans/7a-loans#section-header-2 (last visited June 10, 2022) (listing entities delinquent on federal debt as ineligible for a loan under section 7(a)).

[4]  SBA  Form  1919,  U.S.  SMALL  BUSINESS  ADMINISTRATION,  chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.sba.gov/sites/default/files/2021-12/Form%201919_10-21-2020-rev-1_lt-508.pdf (last revised Sept. 2020) (asking "Has the Applicant and/or its Affiliates ever obtained or applied for a direct or guaranteed loan from SBA, or another Federal agency loan program (including, but not limited to USDA, B&I, FSA, EDA), or been a guarantor on such a loan? (*if "Yes," answer questions 3.a) and 3.b) below.*)

The exclusion from eligibility applicable to entities with delinquent or defaulted federal loans does not appear in SBA's enabling statute, 15 U.S.C. 631, *et seq.*, but is instead one example of SBA's interpretation of its congressional mandate that "[a]ll loans made under this subsection shall be of such sound value or so secured as reasonably to assure repayment[.]" 15 U.S.C. 636(a)(6).

Also relevant to this Court's analysis is the First IFR's guidance to private lenders for determining PPP borrower eligibility: "SBA will allow lenders to rely on certifications of the borrower and use of loan proceeds and to rely on specified documents provided by the borrower to determine qualifying loan amount and eligibility for forgiveness." *Id.* Those certifications are found in SBA Form 2483, the completion of which is a prerequisite of PPP loan approval.  85 Fed. Reg. 20,814.

The First IFR explains the application requirements as they relate to both the applicant and the lending institution.  From the applicant's perspective, under section q titled "What forms do I need and how do I submit an application?" the First IFR answers: "The applicant must submit SBA Form 2483 (Paycheck Protection Program Application Form) and payroll documentation, as described above."  85 Fed. Reg. 20,814.  In guidance directed to lenders, section b titled "What do lenders have to do in terms of loan underwriting," the First IFR answers: "i. Confirm receipt of borrower certifications contained in Paycheck Protection Program Application form issued by the Administration; . . . Each lender's underwriting obligation under the PPP is limited to the items above and reviewing the 'Paycheck Protection Application Form.'" 85 Fed. Reg. 20,815.  SBA's

---

. . .

    a)   Is any of the financing currently delinquent?

. . .

    b)   Did any of this financing ever default and cause a loss to the Federal Government?")

Third Interim Final Rule, effective April 20, 2020, reiterates a lender's underwriting obligations, stating: "The Administrator recognizes that, unlike other SBA loan programs, the financial terms for PPP Loans are uniform for all borrowers, and the standard underwriting process does not apply because no creditworthiness assessment is required for PPP Loans."  85 Fed. Reg. 21,750.

The application certifications are, therefore, a central component and mandatory prerequisite to obtain a PPP loan.  One certification a PPP applicant must make is that:

> [T]he information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

85 Fed. Reg. 20,814.

The application, in turn, seeks information pertaining to the applicant's business, including its size, affiliations, locations, franchise arrangements, and its financial health.  For example, the application asks, at question one: "Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department of agency, or presently involved in any bankruptcy?"  (ECF No. 19-4, PageID# 278).  Question two asks whether the applicant has ever been delinquent or defaulted on a government loan.  (*Id.*).  The application also states, just above question one, "If questions (1) or (2) below are answered "Yes," the loan will not be approved." (*Id.*).  Additionally, above questions five and six, which inquire about the applicant's criminal history, the application also notes that, "If questions (5) and (6) are answered 'Yes,' the loan will not be approved." (*Id.*).

Later, the SBA's Third Interim Final Rule ("Third IFR") restated the need for the borrower certifications via the application and reiterated the rule expressed by the First IFR's language that no creditworthiness assessment is required to apply.  Section g(2)(a) asks, "*Are eligible businesses owned by directors or shareholders of a PPP Lender permitted to apply for a PPP Loan through the Lender with which they are associated?*"  The response states: "The Administrator recognizes that, unlike other SBA loan programs, the financial terms for PPP Loans are uniform for all borrowers, and the standard underwriting process does not apply because no creditworthiness assessment is required for PPP Loans.  Consequently, there is no meaningful risk of underwriting bias or below-market rates and terms."  85 Fed. Reg. 21750.

It was not until April 28, 2020, and the promulgation of SBA's Fourth Interim Rule ("Fourth IFR"), that the text of the bankruptcy exclusion appeared in a rule as opposed to prior rules referencing the exclusion through the application.  The Fourth IFR explains that, consistent with the application identified in the First IFR, businesses in bankruptcy will not be approved for a PPP loan:

> If the applicant or the owner of the applicant is the debtor in a bankruptcy proceeding, either at the time it submits the application or at any time before the loan is disbursed, the applicant is ineligible to receive a PPP loan.  If the applicant or the owner of the applicant becomes a debtor in bankruptcy after submitted a PPP application but before the loan is disbursed, it is the applicant's obligation to notify the lender and request cancellation of the application.  Failure of the applicant to do so will be regarded as a use of PPP funds for unauthorized purposes.
>
> The Administrator, in consultation with the Secretary, determined that providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or nonrepayment of unforgiven loans.  In addition, the Bankruptcy Code does not require any person to make a loan or a financial accommodation to a debtor in bankruptcy.  The Borrower Application Form for PPP loans (SBA Form 2483), which reflects this restriction in the form of a borrower certification, is a loan program requirement.  Lenders may rely on an applicant's representation concerning the applicant's or an owner of the applicant's involvement in a bankruptcy proceeding.

85 Fed. Reg. 23451.  Following this language, the Fourth IFR also expresses a new "safe harbor"

provision limited to the certification concerning the necessity of a PPP loan:

> Any borrower that applied for a PPP loan prior to the issuance of this regulation and repays the loan in full by May 7, 2020 will be deemed by SBA to have made the required certification in good faith.
> The Administrator, in consultation with the Secretary, determined that this safe harbor is necessary and appropriate to ensure that borrowers promptly repay PPP loan funds that the borrower obtained based on a misunderstanding or misapplication of the required certification standard.

85 Fed. Reg. 23451–52.

Two additional Interim Final Rules—the Fifth and Sixth Interim Final Rules ("Fifth IFR"

and "Sixth IFR," respectively)—were thereafter promulgated to address seasonal employers (Fifth

IFR, 85 Fed. Reg. 23917, Apr. 27, 2020), loan disbursement requirements, and SBA's ability to

cancel loans which have not been disbursed due to a borrower's failure to submit required loan

documentation, including a promissory note, within 20 days of loan approval (Sixth IFR, 85 Fed.

Reg. 23450, Apr. 28, 2020).

At the end of 2020, the same Congress that passed the CARES Act passed the Consolidated

Appropriations Act of 2021, Pub. L. No. 116-260, 134 Stat. 1182 (2020), which included the

Economic Aid Act ("EAA"), Pub. L. No. 116-260, 134 Stat. at 1993.  The EAA expressly modified

section 7(a)(36) of the Small Business Act, extended the PPP with an additional round of loans

available through March 31, 2021, § 323(d)(1)(A), 134 Stat. at 2019, and included provisions that

could open PPP eligibility to certain bankrupt debtors under certain circumstances, § 320(a)(g)(1),

134 Stat. at 2015.  But the portion of the EAA opening PPP participation to certain bankrupt

debtors was not absolute; rather than requiring SBA to extend PPP loans to bankrupt debtors by

statute, Congress made section 320 of the EAA effective ***only when***

> the [SBA] submits to the Director of the Executive Office for United States Trustees a written determination that, subject to satisfying any other eligibility requirements, any debtor in possession or trustee that is authorized to operate the business of the debtor under section 1183, 1184, 1203, 1204, or 1304 of title 11, United States Code, would be eligible for a [PPP] loan.

§ 320 (f)(1)(A), 134 Stat. at 2016 (clarification added).[5]  The SBA Administrator never issued the written determination that would have rendered section 320 effective.

The Consolidated Appropriations Act of 2021 also protected bankrupt debtors' access to certain CARES Act relief unrelated to the PPP, such as foreclosure and eviction moratoriums and mortgage forbearances.  As the result of the Consolidated Appropriations Act of 2021, this relief could not be denied "because the person is or has been a debtor [in bankruptcy]."  11 U.S.C. § 525(d).

## STANDARD OF REVIEW

Although cross-motions for summary judgment are the proper mechanism for a court to review an agency decision, such review is not made under the standard set forth in Fed. R. Civ. P. 56.  *Sierra Club v. United States Forest Serv.*, 828 F.3d 402, 407 (6th Cir. 2016).  "This is because a motion for summary judgment 'invites improper consideration of evidence outside the administrative record.'"  *Daraghma v. U.S. Citizenship & Immigration Servs.*, 228 F. Supp. 3d

---

[5] SBA's Motion for Summary Judgment correctly summarizes the three categories of debtors which could have been eligible for PPP loans, subject to the SBA Administrator's approval as:

"1.      Debtors or trustees as set forth in subchapter V of Chapter 11, created by the Small Business Reorganization Act to streamline bankruptcy for small businesses.  11 U.S.C. § 1183–84.

"2.      Debtors or trustees as set forth in Chapter 12, which allows 'family farmers' and 'family fishermen' to restructure their finances.  11 U.S.C. § 1203–04.

"3.      Debtors in Chapter 13, which enables individuals with regular income to develop a plan to repay all or part of their debt.  11 U.S.C. § 1304."  (ECF No. 19, PageID# 239).

Since Weather King filed a traditional Chapter 11 Bankruptcy, it would not have qualified for a PPP loan under section 320(f)(1)(A) had the SBA Administrator approved that section of the EAA.  Weather King does not dispute this fact.

818, 822 (N.D. Ohio 2017) (quoting *Alexander v. Merit Sys. Prod. Bd.*, 165 F.3d 474, 480–81 (6th Cir. 1999)).  Summary judgment is appropriate, however, when it "serves as a mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and is otherwise consistent with the APA standard of review."  *Id.* (quoting *Singh v. Johnson*, No. 15-cv-12957, 2016 WL 3476701, at *3 (E.D. Mich. June 27, 2016)).

The APA standard of review provides that "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action," and "shall hold unlawful and set aside agency action, findings, and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege, or immunity;

(C) In excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) Without observance of procedure required by law;

(E) Unsupported by substantial evidence in a case subject to sections 556 and 557 of this title [*i.e.*, in a case when an administrative hearing is required] or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) Unwarranted by the facts to the extent that the facts are subject to trial *de novo* by the reviewing court."

5 U.S.C. § 706(2)(a); *see Cardinal Land Conservancy, Inc. v. United States Dep't of Agric.*, No. 1:18-cv-00534, 2022 WL 798360, at *7–8 (S.D. Ohio Mar. 16, 2022).  In sum, "[w]hen conducting judicial review under the APA courts do not ask whether the facts are undisputed, but rather whether as a matter of law the evidence in the administrative record permitted the agency to make

the decision it did." *Ohio v. United States Army Corps of Eng'rs*, 259 F. Supp. 3d 732, 744 (N.D. Ohio 2017) (internal citations omitted).

## DISCUSSION

### a. SBA did not exceed its statutory authority when it excluded bankruptcy debtors categorically from PPP eligibility.

Weather King first argues that SBA exceeded the authority given to it by the CARES Act when it excluded bankruptcy debtors from PPP eligibility. (ECF No. 17, Weather King's Memorandum in Support of Motion for Summary Judgment, PageID# 185). This argument has three bases: First, on the authority of the Sixth Circuit's *DV Diamond Club of Flint, LLC v. U.S. Small Bus. Admin.*, 960 F.3d 743 (6th Cir. 2020), Weather King argues that Congress intended that "any business concern," including businesses in active bankruptcy, should be eligible for PPP participation. (*Id.*). Second, Weather King points to the eligibility requirements in the CARES Act and argues that, since creditworthiness is not an enumerated eligibility requirement, SBA's bankruptcy exclusion is outside of the CARES Act's scope. (*Id.* at PageID# 186–87). And third, to the extent that the CARES Act authorizes SBA to "guarantee covered loans under the same terms, conditions, and processes as [other loans] made under this subsection," the bankruptcy exclusion is a new rule and therefore beyond the scope of SBA's authority. (*Id.* at PageID# 188).

### *Chevron* Review Standard

Review of an administrative agency's statutory construction begins with the statute's text. *Arangure v. Whitaker*, 911 F.3d 333, 336 (6th Cir. 2018). To do that, this Court is bound to apply the two-step review articulated in *Chevron USA, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). *Chevron* directs the district court to first determine whether Congress "had an intention on the precise question at issue." *Chevron*, 467 U.S. at 843 n.9. If Congress's intent is clear, "that is the end of the matter; for the court, as well as the agency, must give effect to the

14

unambiguously expressed intent of Congress."  *Id.* at 842–43.  In so doing, this Court must "exhaust 'traditional tools' of statutory interpretation and 'reject administrative constructions' that are contrary to the clear meaning of the statute."  *Arangure*, 911 F.3d at 336 (quoting *Chevron*, 467 U.S. at 843 n.9).

Congressional silence or an ambiguity in the statute's text (following diligent district court review) requires this Court to move on to *Chevron* step two, which asks "whether the agency's answer is based on a permissible construction of the statute."  *Id.* at 843.  Notably, not all statutory silence triggers deference.  *Arangure*, 911 F.3d at 337 n.2 (citing *Chevron*, 467 U.S. at 843). "*Chevron*'s theory of implicit delegation only applies to [silences] where we can plausibly infer Congress intentionally left a statutory gap for the agency to fill."  *Id.* (citing *Chevron*, 843–44). This Court is mindful, particularly in matters of implicit delegated authority, that it "may not substitute its own construction of a statutory provision for a reasonable interpretation made by the Administrator of an agency." *Atrium Med. Cir. v. U.S. Dep't of Health & Human Servs.*, 766 F.3d 560, 566 (6th Cir. 2014).

### *DV Diamond Club of Flint* does not restrict this Court's analysis

The Court must initially address Weather King's reliance upon the Sixth Circuit's *DV Diamond Club of Flint, LLC v. U.S. Small Bus. Admin.*, 960 F.3d 743 (6th Cir. 2020), which the parties agree is persuasive rather than controlling precedent applicable to this matter.  (*See* ECF No. 19, PageID# 245–46; ECF No. 22, PageID# 315).  There, DV Diamond Club and other similar, sexually-oriented businesses challenged SBA's Rule rendering such businesses ineligible to receive PPP loans.  960 F.3d at 745.  The district court determined that the plaintiffs were likely to succeed in showing that the rule excluding sexually-oriented businesses from PPP participation

exceeded SBA's statutory authority, and accordingly, issued a preliminary injunction requiring SBA to approve PPP loans sought by the plaintiffs within a certain time period.  *Id.* at 746–47.

Because of the preliminary injunction's time constraints, SBA petitioned the Sixth Circuit to stay enforcement of the preliminary injunction during the pendency of its appeal.  The Sixth Circuit initially noted that its review of SBA's Motion was that of an abuse of discretion, which is "highly deferential to the district court's decision."  *Id.* at 746 (quoting *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007) (internal quotations omitted)).  Therefore, the Sixth Circuit could only reverse the district court's ruling if the district court "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard."  *Id.* (quoting *S. Glazer's Distrib. Of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (internal citations omitted)).

Under this deferential standard of review and upon consideration of *Chevron*'s first step, the Sixth Circuit found that the district court's analysis evidenced a reasonable interpretation of the applicable law.  Specifically, the Sixth Circuit determined the language of the CARES Act concerning eligibility—that "any business concern . . . shall be eligible to receive a covered loan . . ."—"unambiguously foreclosed the SBA from precluding sexually-oriented businesses from receiving PPP loan guarantees during the pandemic."  *Id.* at 746; *see* 15 USC § 636(a)(36)(D)(i). This is because "[t]he term 'any' carries an expansive meaning" and "refer[s] to a member of a particular group or class without distinction or limitation . . . [thus implying that] *every* member of the class or group" is included.  *Id.* at 746.  Where sexually-oriented businesses are generally excluded from SBA loan participation, the "any business concern" language evidenced Congress's intent to render SBA's more restrictive eligibility rules inapplicable, and thus, enforcement of the district court's Preliminary Injunction was not stayed.  *Id.* at 747.

16

Judge Siler issued a dissenting opinion, noting not only the fast turn-around of the Court's decision due to the time constraints of the preliminary injunction, but also observed that the district court's interpretation puts the "any business concern" language at odds with the PPP's placement beneath the larger 7(a) loan program umbrella and the language that the PPP should be administered "under the same terms, conditions, and processes" as other 7(a) loans. *Id.* at 748 (quoting 15 U.S.C. § 636(a)(36)(B)).  The dissent characterizes the Sixth Circuit's affirmance as a windfall, opining that the plaintiffs "should not be allowed to ride the gravy train without a careful analysis of this law more than we can give them on short notice." *Id.* at 748.

District courts analyzing the bankruptcy exclusion have declined to follow *DV Diamond Club* because, unlike *DV Diamond Club*, courts addressing the bankruptcy exclusion <u>must</u> grapple with the tension between the CARES Act's broad "any business concern" language and the congressional directive permitting SBA to guarantee PPP loans under the "same terms, conditions, and processes as a loan made under [section 7(a)]."  The *DV Diamond Club* panel did not have to engage in that analysis because the inclusion or exclusion of sexually-oriented businesses from PPP eligibility does not implicate a "term, condition, [or] process" of section 7(a).  There are no references to sexually-oriented businesses in the whole of section 7(a) from which SBA could divine the sexually-oriented business exclusion; rather, that exclusion was borne from SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, which renders "Businesses Providing Prurient Sexual Material" categorically ineligible for SBA assistance.  Where the CARES Act clearly and unambiguously increases SBA's general eligibility rules to "any business concern" with fewer than 500 employees and supplies no support for explicit or implicit agency delegation to bar sexually-oriented businesses from eligibility, this Court does not disagree with *DV Diamond Club*'s holding nor its rationale.

17

But the bankruptcy exclusion presents a more complex question than that which was before the *DV Diamond Club* Court and thus requires a different analysis to keep with this Court's "emphatic[] duty to say what the law is." *Arangure v. Whitaker*, 911 F.3d 333, 336 (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)).  Unlike sexually-oriented businesses, the exclusion applicable to bankrupt debtors implicates one of section 7(a)'s "terms, conditions, and processes" because 15 U.S.C. 636(a)(6) mandates that "all loans made under this subsection shall be of such sound value or so secured as reasonably to assure repayment . . . ."  (Emphasis added).  Unlike the sexually-oriented business exclusion struck down in *DV Diamond Club*, the bankruptcy exclusion speaks to this "sound value" requirement.  *See, e.g.*, *Tradeways, Ltd. v. U.S. Dep't of the Treasury*, No. ELH-20-1324, 2020 WL 3447767, at *13 (D. Md. June 24, 2020) (holding that, in the context of the bankruptcy exclusion, application of *DV Diamond Club's* broad interpretation of section 636(a)(36)(D)(i) "puts the CARES Act on a collision course with the Small Business Administration Act and longstanding SBA regulations. . . . "that loans 'shall be of such sound value or so secured as reasonably to assure repayment'"); *Diocese of Rochester v. U.S. Small Bus. Admin.*, 466 F. Supp. 3d 363, 376 (W.D.N.Y. 2020) (declining to follow *DV Diamond Club* and refusing to presume "that simply by using the phrase 'any business' concern in one part of the CARES Act, Congress meant to implicitly eliminate the long-standing statutory requirements for Section 7(a) loans").

From a procedural perspective, this Court also believes that *DV Diamond Club* is too dissimilar from the case at bar to limit this Court's analysis by its holding.  Where this Court is tasked with a merits analysis on summary judgment to interpret the CARES Act and SBA's associated rules related to the bankruptcy exclusion, *DV Diamond Club* reviewed, for abuse of discretion, a district court's grant of a preliminary injunction: an order which is, by its nature,

18

issued "*before the court has a chance to decide the case.*" *Preliminary Injunction*, Black's Law Dictionary (5th pocket ed. 2016); s*ee DV Diamond Club*, 960 F.3d at 745.

Based upon these substantive and procedural dissimilarities, this Court would shirk its obligation to diligently analyze the issues and the parties' arguments if it summarily resolved the totality of the claims before it on the authority of *DV Diamond Club*—and a review of the "any business concern" language—alone.  As such, the Court must approach *Chevron*'s step one anew.

### *Chevron* Step One: The bankruptcy exclusion as a response to section 7(a)'s "sound value" requirement

This Court's *Chevron* analysis therefore begins with the text of the CARES Act to determine whether Congress spoke directly on whether bankrupt debtors should or should not qualify for a PPP loan.  *See Chevron USA, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984); *Arangure v. Whitaker*, 911 F.3d 333, 336 (6th Cir. 2018).  The parties do not dispute that the CARES Act is devoid of reference to debtors in bankruptcy.

Weather King, relying heavily on *DV Diamond Club*, insists that the CARES Act's language rendering "any business concern" employing fewer than 500 employees eligible for PPP assistance evidences Congress's clear intent to make PPP money widely available to businesses without regard to bankruptcy status.  (ECF No. 17, PageID# 185–86).  Weather King points out that, of the eligibility requirements listed in section 636(a)(36), creditworthiness is not one.  (*Id.* at PageID# 190).  SBA counters that the CARES Act's eligibility language is neither exhaustive nor restrictive; while section 636(a)(36)(D) of SBA's enabling statute (into which the CARES Act's PPP language is incorporated) expresses certain eligibility requirements, section 636(a)(36)(B) states that "the Administrator *may* guarantee covered loans under the same terms, conditions, and processes as a loan made under the subsection."  (ECF No. 19, PageID# 243). SBA further argues that an essential "term" and "condition" of the 7(a) loan program is the

19

requirement, unaltered by Congress, that "all loans . . . be of sound value," and that Congress left it to SBA to determine how to best apply the sound value requirement to PPP loans in light of the time constraints of the program.  (*Id.* at PageID# 249).

Weather King's narrow reading of the CARES Act based on *DV Diamond Club* is not tenable for two reasons.  First, as the Eleventh Circuit explained in the first Circuit Court decision to address this issue, "[I]t would be illogical to conclude that [section 636(a)(36)(D)(i) of the CARES Act sets size as the one and only requirement for PPP eligibility."  *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1258 (11th Cir. 2020) (clarification added).  This is because other sections of the CARES Act also modify typical 7(a) lending requirements and bear on eligibility.  For example, while 7(a) loan applicants usually only qualify if they cannot get credit elsewhere, the CARES Act waives that requirement.  *Id.* (citing 15 U.S.C. § 636(a)(36)(I)).  The CARES Act also waives 7(a)'s personal guarantee requirement, permitting applicants to receive loans without a personal guarantee or collateral.  15 U.S.C. § 636(a)(36)(J).  If Congress intended for the "any business concern" language to act as a blanket covering every single business with less than 500 employees, as Weather King argues it did, then these provisions carving out additional eligibility criteria would be meaningless.  This Court cannot adopt such an interpretation.  *See United States v. Menasche*, 348 U.S. 528, 538–39 (1955) (explaining that "[t]he cardinal principle of statutory construction is to save and not to destroy," and therefore, courts have a duty "to give effect, if possible, to every clause and word of a statute . . . rather than emasculate an entire section") (internal quotations and citations omitted).

What the CARES Act *does not* state is that the contours of eligibility spelled out in the Act are exhaustive.  As *Gateway* points out, nothing in the CARES Act "prohibit[s] the SBA from establishing other, non-size related eligibility criteria."  983 F.3d at 1258.  The lack of direct

guidance from Congress one way or the other on eligibility criteria exposes a gap between the CARES Act's congressional mandate and SBA's authority to promulgate rules with the goal of implementing the PPP.

Second, there is no language in the CARES Act exempting PPP loans from 7(a)'s statutory "sound value" requirement, which is part of the "terms, conditions, and processes" that apply to all 7(a) loans.  15 U.S.C. §§ 636(a)(6), 636(a)(36)(B); s*ee Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 410 (2d Cir. 2022); *Diocese of Rochester v. U.S. Small Bus. Admin.*, 466 F. Supp. 3d 363, 376 (W.D.N.Y. 2020) ("The Court will not presume that simply by using the phrase 'any business' concern in one part of the CARES Act, Congress meant to implicitly eliminate the long-standing statutory requirements for Section 7(a) loans.").[6]  Apart from the bankruptcy exclusion, Weather King does not take issue with SBA's efforts to comply with the sound value requirement, such as requiring PPP borrowers to sign promissory notes containing particular repayment terms, which is not a product of the CARES Act's text but rather SBA's rulemaking authority.  85 Fed. Reg. 23451 (Apr. 28, 2020) (the Sixth Interim Final Rule, or "Sixth IFR"), citing FAQ 19 (posted Apr. 8, 2020).  For all that the CARES Act accomplished, it plainly did not narrow SBA's authority to determine the criteria to be used in evaluating "sound value."

If it weren't clear from the CARES Act's text that Congress did not speak directly on whether bankrupt debtors should be eligible for PPP participation, the EAA illuminates the gray areas.  In *In re Vestavia Hills, Ltd.*, No, 20-cv-01308, 2021 WL 1165038 (S.D. Cal. Mar. 26, 2021), the court simplified the interplay between the CARES Act and EAA with reference to the bankruptcy exclusion:

---

[6] *See also Jones v. United States*, 526 U.S. 227, 234 (1999) ("Congress is unlikely to intend any radical departures from past practice without making a point of saying so.").

> Had Congress presumed that all debtors in bankruptcy were already eligible and intended only to limit the availability of PPP loans to a small subset of debtors in bankruptcy for the third round of the program . . . there would have been no need to condition the effective date of the provision on the SBA's determination of their eligibility.

*Id.* at *13.  Indeed, as SBA states in its Motion, the EAA—drafted by the same Congress that passed the CARES Act itself—explicitly recognizes SBA's authority to decide whether bankrupt entities should be eligible for the PPP because it identifies the SBA Administrator "as a gatekeeper who must first determine whether, with the discretion delegated to the SBA, the listed categories of debtors will be permitted to obtain PPP loan guarantees."  (ECF No. 19, PageID# 240 (citing § 324(f)(1)(A), 134 Stat. at 2016)).

The CARES Act, therefore, does not directly address PPP eligibility for bankrupt debtors, nor expressly limit SBA's rulemaking authority with regard to borrower eligibility. It also does not obviate SBA's statutory mandate to ensure that all of its loans are "of such sound value or so secured as reasonably to assure repayment . . . ."  *See* 15 U.S.C. § 636(a)(6).  Instead, the text of the CARES Act contains conspicuous gaps which are the likely products of the CARES Act's expedited passage and Congress's directive that SBA promulgate rules governing the PPP within 15 days thereof.  Coupled with the EAA's later recognition of SBA's authority to decide the matter, the Court concludes that Congress implicitly left it to SBA to establish eligibility requirements in a manner that both complied with SBA's statutory obligations and met the needs of the program. As such, the Court cannot find that Congress spoke directly on whether bankrupt debtors qualify for a PPP loan, and must move on to step two of the *Chevron* analysis.

### *Chevron* Step Two: SBA's rules are based on a permissible construction of the CARES Act

Step two of the *Chevron* analysis requires this Court to ask whether SBA's answer to applying the sound-value requirement to the PPP—here, the bankruptcy exclusion—is based on a

permissible construction of the CARES Act.  *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984).  *Chevron* explains that Congress may either explicitly or implicitly delegate gap-filling authority to an agency:

> If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.  Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.  Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit.  In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of the agency.

*Id.*  Both matters—implicit and explicit delegation—are relevant here, but the Court will focus on the implicit delegation of authority to SBA within the CARES Act.  Different than the explicit delegation in the EAA, the CARES Act implicitly delegated authority to SBA to promulgate rules outlining PPP eligibility vis-à-vis bankrupt debtors.  It did so by leaving SBA gaps to fill with reasoned decision making.  *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005) (citing *Chevron*, 467 U.S. at 865–66) ("[a]mbiguities in statutes within an agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in reasonable fashion.").  Implicit and explicit delegation carry the same authoritative weight. *Gun Owners of Am. v. Garland*, 19 F.4th 890, 899 (6th Cir. 2021) (citing *City of Arlington v. F.C.C.*, 569 U.S. 290, 306 (2013)).  The Court is therefore tasked with determining whether the bankruptcy exclusion is a reasonable interpretation of the CARES Act by SBA.

### Bankruptcy Exclusion as a "New Rule"

Looking exclusively at the CARES Act and its implicit delegation of rulemaking authority regarding bankrupt debtor PPP eligibility, Weather King first argues that: (1) the bankruptcy exclusion is an unreasonable interpretation of the CARES Act (ECF No. 22, PageID# 308); (2) the bankruptcy exclusion is a new rule as opposed to an "existing term, condition, or process" of other

7(a) loans (ECF No. 17, PageID# 188); and (3) that selective exclusion of bankrupt debtors from PPP participation does nothing to further the "sound value" requirement because there are no "lending criteria" identified in the CARES Act (*id.* at PageID# 190).  Weather King maintains that Congress authorized PPP relief without concern for the likelihood of repayment, and thus, without concern for the "sound value" requirement in the Small Business Act.  This is so, Weather King asserts, because PPP eligibility was meant to be "uniform for all borrowers."

Weather King makes these arguments by splicing together portions of the CARES Act and several choice sentences from SBA's IFRs into a proverbial, statutory "Frankenstein."  First and foremost, section 636(a)(36)(B) is unrestrictive; it states that "the Administrator *may* guarantee covered loans under the same terms, conditions, and processes as a loan made under [section 7(a)]."  (Emphasis added).  In fact, since "SBA's pre-existing 7(a) loan application asks a prospective borrower to disclose whether it or an affiliate has filed for bankruptcy," the Court strains to see the consideration of a business's bankruptcy as a new feature of the 7(a) program. *Tradeways, Ltd. v. U.S. Dep't of Treasury*, No. ELH-20-1324, 2020 WL 3447767, at *14 (D. Md. June 24, 2020).

More importantly, an essential "term" or "condition" of the 7(a) loan program is the requirement, unaltered by Congress, that "all loans *shall* be of sound value or so secured as reasonably to assure repayment. . . ."  § 636(a)(6) (emphasis added).  Reading these two sections together, the SBA was first required by section 636(a)(6) to ensure that all loans, including PPP loans, are of such sound value as to reasonably assure repayment.  Second, SBA was permitted, but not required, to apply typical 7(a) loan terms, conditions, and processes to its rules governing PPP eligibility.  To the extent that the sound value requirement is a "condition" of 7(a) loan

approval, then the bankruptcy exclusion is not a new rule, but an iteration of an existing rule made pursuant to SBA's congressional mandate.

With SBA's Third IFR, which states that the PPP eligibility is "uniform for all borrowers," Weather King adds that the bankruptcy exclusion is evidence of internal inconsistencies within SBA's PPP rules (since a business with 500 or fewer employees in bankruptcy is treated differently than a business with 500 or fewer employees not in bankruptcy).  (ECF No. 17, PageID# 190). Here, however, Weather King wholly removes the context in which the "uniform for all borrowers" language exists.  Section 2.a concerns potential lender bias when an eligible business is owned by a director or shareholder of a PPP Lender.  85 Fed. Reg. 21,750.  Explaining that such businesses are nonetheless eligible despite ownership by a director or shareholder of a PPP Lender, the Third IFR states that "there is no meaningful risk of underwriting bias or below-market rates and terms," because "the financial terms for PPP Loans are uniform for all borrowers."  *Id.*  For *eligible* businesses, "the standard underwriting process d[id] not apply because no creditworthiness assessment [wa]s required."  *Id.*  Indeed, *all* potential PPP borrowers were required to complete the application and make the required certifications, and *none* had to submit additional documentation concerning its financial health and ability to repay; all potential PPP borrowers were required to state whether or not they were in bankruptcy and to certify that their answers to the application questions were "true and accurate in all material respects."  85 Fed. Reg. 20,814; SBA Form 2483.  Where SBA determined eligibility based on the same criteria for every applicant, such determinations can only be described as "uniform."

<u>Internal Inconsistencies</u>

The text of the Third IFR, therefore, does not at all support Weather King's argument that the bankruptcy exclusion is internally inconsistent with SBA's other PPP rules, including the Third

and Fourth IFRs.  If SBA's PPP rules were internally inconsistent, they would be, by definition, arbitrary and capricious and would fail to establish the reasoned decision making required in the second step of *Chevron*.  *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 695 (6th Cir. 1989).

Weather King points to the Third IFR, which states that there is "no creditworthiness assessment" required for lenders to approve PPP applicants, and the Fourth IFR, which grounds the bankruptcy exclusion in an unacceptably high risk of nonrepayment of unforgiven loans.  This Court has already explained why the "no creditworthiness assessment" language is consistent with the first two IFRs.  SBA further explains that the Third and Fourth IFRs are more specific rules intended to explain the rules enumerated in the First IFR, and therefore, comparison between the Third and Fourth IFRs misses the intent  of its administrative rulemaking.  (ECF No. 19, PageID# 259–60).

Not only is SBA's answer to this specific question consistent with the Fourth IFR's bankruptcy exclusion language, but it is also consistent with the First IFR's more general explanation of the program; all potential borrowers must complete the application and certify that the loan is necessary and the application responses are truthful. There are no credit checks or underwriting requirements; lenders are permitted to rely upon a potential borrower's good faith responses and certifications.  85 Fed. Reg. 20,812.  The application itself puts potential borrowers on notice of three bright-line exclusions from eligibility based upon risk of unauthorized use of the funds: (1) bankruptcy debtors; (2) applicants that are delinquent or have defaulted on an SBA or other Federal agency loan in the last seven years resulting in a loss to the government; and (3) applicants owned by individuals with certain criminal backgrounds.  SBA Form 2483.

26

Returning to Weather King's position that the Third IFR's "no creditworthiness assessment" language is internally inconsistent with the bankruptcy exclusion, the Court can hardly describe the PPP application and approval process as an "assessment." A lender's "assessment" under the PPP consists entirely of looking at which application boxes a potential borrower checked, reviewing the initialed certifications, and requiring the signature of the applicant's authorized representative. Either certain "yes" boxes are checked, and the application is denied, or certain "no" boxes are checked, and the application is approved. It is difficult, if possible at all, to label this an assessment; this is especially true since the applicant's answers and certifications are accepted as true at face value. But for the First IFR's safe harbor indicating that lenders "will be held harmless for borrowers' failure to comply with program criteria," the PPP likely would have posed too great a risk for more scrupulous lenders to justify participation.

SBA's basis for the bankruptcy exclusion explained in the Fourth IFR—that "providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans"—is likewise consistent with the Third IFR's "no creditworthiness assessment" language. The CARES Act directive to SBA that it guarantees PPP loans on the "same terms, conditions, and processes" as other Section 7(a) loans means that SBA must, in some form, address the Small Business Act's "sound value" requirement in its PPP rules. "[H]ad Congress intended the CARES Act to eliminate all eligibility criteria governing SBA loans administered under [section] 7(a) of the Small Business Act, one would expect Congress to have spoken clearly." *Tradeways, Ltd.*, 2020 WL 3447767, at *13.

SBA's rules promulgated after the First IFR cannot be read in a vacuum. Rather, the Fourth IFR offers a consistent, "amplified articulation" of the bankruptcy exclusion incorporated into the First IFR via SBA Form 2483. *In re Vestavia Hills, Ltd. v. Small Bus. Admin.*, No. 20-cv-01308,

27

2021 WL 1165038 (S.D. Cal. Mar. 26, 2021) ("The information in the Fourth IFR is therefore properly regarded as an 'amplified articulation' of the First IFR's reasoning, however sparse or conclusory, . . . and the Court can consider the Fourth IFR's explanation in determining whether the decision to exclude debtors in bankruptcy proceedings was arbitrary and capricious." (quoting *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.D.C. 2006)).  This makes sense because "[i]f a reviewing court finds the record inadequate to support a finding of reasoned analysis by an agency and the court is barred from considering rationales urged by others, only the agency itself can provide the required clarification."  *Alpharma*, 460 F.3d at 6–7 (quoting *Loc. 814, Intern. Broth. Of Teamsters, Chauffers, Warehousemen v. N.L.R.B.*, 546 F.2d 989, 992 (D.D.C. 1976)).  If the law prohibited SBA from explaining the bases for its rules by issuing subsequent guidance and sent SBA back to the drawing board to rescind all four IFRs and reissue a new PPP rule, SBA's ability to administer emergency measures like the PPP would be forever hamstrung by the judiciary.

As SBA's Motion states, the Third IFR's reference to "eligible borrowers" cannot apply to entities in bankruptcy because the application states that such entities are *not* eligible.  (ECF No. 23, PageID# 349–50).  Viewing this part of the Third IFR in tandem with the others discussed above, the bankruptcy exclusion becomes a bright-line rule that protects the sound value of PPP loans.  Since all borrowers need only complete the application and make the certifications, and since lenders could not perform any underwriting or credit checks, the bankruptcy exclusion denies PPP participation to the *most* risky borrowers. It does so while streamlining the program to get PPP money into the hands of non-bankrupt businesses, thus quickly and responsibly fulfilling the purpose of the PPP.  This balance between making the PPP widely available yet reasonably assuring repayment is not only reasonable, but "one that Congress might reasonably have

sanctioned." *Diocese of Rochester v. U.S. Small Bus. Admin.*, 466 F. Supp. 3d 363, 378 (W.D.N.Y. 2020) (quoting *In re Penobscot Valley Hosp.*, No. 20-1005, 2020 WL 3032939, at *9 (D. Maine, June 3, 2020)).  *See Till v. SCS Credit Corp.*, 541 U.S. 465, 479 (2004) (explaining, in the context of selecting a cramdown rate in a Chapter 13 bankruptcy, that "bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers").

Certification of Financial Distress

Neither is the requirement that applicants certify their financial distress inconsistent with the sound value requirement.  (*See* ECF No. 17, PageID# 191).  The CARES Act, and the PPP in particular, were enacted out of the necessity to address rapidly-developing economic uncertainty resulting from the COVID-19 Pandemic. *See In re Gateway Radiology Consultants*, 983 F.3d 1239, 1262 (11th Cir. 2020) ("[T]he purpose of the PPP was to quickly help small businesses in distress or before they became distressed"). The bankruptcy exclusion was adopted by the SBA after concluding that a streamlined process was necessary and consistent with Congress's intent. 85 Fed. Reg. 20,811–12.  Absent the safeguards supplied by the usual, more extensive and tailored underwiring practices for section 7(a) loans, SBA determined that allowing businesses in active bankruptcy to participate in the PPP would present an "unacceptably high risk of unauthorized use of funds or non-repayment of unforgiven loans."  85 Fed. Reg. 23,451 (Fourth IFR).  To the extent that businesses in financial distress were eligible and bankrupt debtors—which are not only financially distressed but also have competing creditors—were not, the PPP presumes financial distress related to "current economic uncertainty" but offers none of the protections afforded to debtors under the Bankruptcy Code.  *See* 85 Fed. Reg. 20,814.  The Court cannot agree that a business in financial distress because of the Pandemic and a business, like Weather King, which

both qualified for and filed a Chapter 11 bankruptcy before the Pandemic even began, are on equal footing.

Pursuant to step two of *Chevron*, this Court finds that the bankruptcy exclusion is based on a reasonable interpretation of the CARES Act, and this Court is not alone.  In *In re Vestavia Hills, Ltd.*, No. 20-90073, 2021 WL 1165038, at \*13 (S.D. Cal., Mar. 26, 2021), for example, the district court found that "[i]t was reasonable [for SBA] to interpret Congress's silence with respect to the sound value requirement as permitting the agency to exclude businesses that would be potentially be [*sic*] unable to repay the loan should they not meet the requirements for forgiveness." According to the Eleventh Circuit, SBA's history of considering bankruptcy status as part of 7(a)'s sound value requirement combined with the manner in which the exclusion created "a streamlined and bright-line rule that would speed up decisions about whether PPP loans should be made" rendered the bankruptcy exclusion not only reasonable, but also plausible, rational, and the result of sound decision making.  *Gateway*, 983 F.3d at 1263.   The Maryland District Court found that it was reasonable for SBA "to adopt a bright-line rule in order to expedite the underwriting process and facilitate the hasty distribution of PPP funds, instead of issuing a flexible standard that would require lenders to scrutinize each PPP application on a case-by-case basis." *Tradeways, Ltd.*, 2020 WL 3447767, at \*14.  This Court agrees, and finds Weather King's arguments on this point to be without merit.

> **b.    SBA's rule excluding bankruptcy debtors from PPP participation is not arbitrary, capricious, or an abuse of discretion, and it is in accordance with law under 11 U.S.C. 706(2)(A).**

Resolution of whether SBA exceeded its statutory authority does not end the inquiry. Weather King also asserts that the bankruptcy exclusion is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with 11 U.S.C. 706(2)(A).  (ECF No. 17, PageID#

191–94).  "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained. . . . A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision."  *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  To comply with section 706(2)(A), an agency "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Louisville Gas & Elec. Co. v. Fed. Energy Regul. Comm'n*, 988 F.3d 841, 845 (6th Cir. 2021) (quoting *Motor Vehicle Mfrs. Ass'n of U.S.*, 463 U.S. at 43).

<u>The Miller Declaration</u>

As an initial matter, SBA submitted the Declaration of John A. Miller in support of its Motion for Summary Judgment.  (ECF No. 19-2, PageID# 266).  It did so in an effort to explain SBA's process when it promulgated the PPP rules and the manner in which the bankruptcy exclusion fit into that process.  But "[a]n agency must defend its actions based on the reasons it gave when it acted."  *In re Vestavia Hills, Ltd. v. U.S. Small Bus. Admin.*, No. 20-cv-01308, 2021 WL 1165038 (S.D. Cal. Mar. 26, 2021) (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1909 (2020).  Thus, in "reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record."  *Id.*  (quoting *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573 (2019)).

31

The Miller Declaration was signed by John Miller on June 5, 2020, which is after Weather King's application for and receipt of a PPP loan, and after SBA's promulgation of the Sixth IFR. The Court therefore limits its analysis to SBA's rules and views the Miller Declaration critically to ensure that it does not provide a post-hoc rationalization for the agency rules and explanations in place when Weather King received its loan. *See Regents of the Univ. of California*, 140 S. Ct. at 1908 (2020) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971), *overruled on other grounds*).  Ultimately, the Miller Declaration is superfluous in light of the Court's interpretation of the CARES Act and SBA's rules.  Therefore, the Court finds that it need not analyze or discuss the Miller Declaration further.

## Internal Inconsistencies

Weather King begins its arbitrary and capricious rulemaking argument by asserting that SBA's rules are internally inconsistent and, therefore, per se arbitrary and capricious.  This Court has already determined that SBA's First, Second, Third, and Fourth IFRs area all consistent with one another, and therefore, this argument lacks merit.

## Retroactive Rulemaking

Weather King avers that application of the Fourth IFR to Weather King when Weather King applied for and received its PPP loan prior to the Fourth IFR's publication is impermissible retroactive rulemaking.  Weather King points out that a regulation has retroactive effect when it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." (ECF No. 17, PageID# 195) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 2801 (1994)).  Weather King's reliance upon *Landgraf*, however, ignores that Weather King did not possess a "right" to a PPP loan when it obtained one; Weather King was never eligible to receive a PPP loan, and only received a PPP

loan because of a misstatement on its application.  Nor does the Fourth IFR's explanation of the bankruptcy exclusion "impose new duties" on Weather King "with respect to transactions already completed".  The bankruptcy exclusion had been in place since the First IFR.  Weather King cannot complete a transaction based upon false information and then, when caught, claim that the truth of its circumstances imposes a new duty upon it.  Weather King's existing duty to complete the application truthfully, and apparent failure to do so, is not ratified by Dollar Bank or SBA's delay in learning about the falsity.

In fact, it is arguable that Weather King's actions constituted bank fraud.  *See* 18 U.S.C. 1344 (the federal criminal statute for bank fraud).  Yet, Weather King seems to be making the untenable argument that even though it made a false statement to Dollar Bank to secure the PPP loan (that it is not in bankruptcy), it does not matter because bankruptcy debtors should not be excluded anyway.  Ruling in favor of such an argument would open the floodgates to applicants falsifying information in bank loan applications to circumvent exclusion from getting a loan, then arguing (after receiving the loan and the falsification is discovered) that the false statement does not matter because the exclusion should not apply anyway.  Such a precedent would be extremely problematic, to say the least.

<u>The Practicality of the Bankruptcy Exclusion</u>

As a matter of practicality, Weather King argues that SBA's rationale for the bankruptcy exclusion fails to consider that debtors in bankruptcy present a lesser risk of nonrepayment than other distressed entities because they are the subject of judicial oversight and their lenders (including PPP lenders) are in a better position to have their unsecured loans repaid.  (ECF No. 17, PageID# 193).  SBA counters that the bankruptcy exclusion need not be the best way to satisfy the

33

sound value requirement; SBA requires only a rational basis for the choice, and the choice to exclude bankrupt debtors from PPP participation was rational.  (ECF No. 19, PageID# 253).

In *Gateway*, the Eleventh Circuit addressed the position that Weather King now takes in this case.  *In re Gateway Radiology Consultants*, 983 F.3d 1239, 1263 (11th Cir. 2020).  Explaining first that the Court was without the benefit of the notice-and-comment period nor a properly developed administrative record, the *Gateway* Court stated:

> We cannot say that the SBA failed to consider any important aspect of the problem or offered an explanation contradicted by evidence that was put before it—there was no evidence put before it.  Nor can we say that the SBA's explanation was implausible, much less that it was so implausible that it could not have been based on a difference in view or could not be a product of the SBA's expertise.  Bankruptcy debtors are financially distressed and have competing creditors, which is not implausible to believe will increase the risk of unauthorized use of funds and non-repayment.  We will not substitute our view for the SBA's judgment that the gravity of the risk is "unacceptably high."  The SBA has long considered bankruptcy status as relevant to § 7(a)'s sound value requirement and creditworthiness regulations.  That it fashioned its consideration of bankruptcy status into a streamlined and bright-line rule that would speed up decisions about whether PPP loans should be made is not implausible, irrational, or the product of arbitrary and capricious decision making.

*Id.* Other courts have recognized the unique risk of nonrepayment or unauthorized use of PPP funds, and added that SBA was not required to "consider all policy alternatives in reaching a decision."  *In re Archbishop of Agaña*, No. 20-00002, 2021 WL 1702311, at * 7 (D. Guam, Feb. 23, 2021) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

SBA recognized that its usual approach to determining sound value would not permit it to "provide relief to America's small businesses expeditiously," as expressed in the First IFR.  85 Fed. Reg. 20,812.  As a practical matter, SBA decided that lenders could rely on three, bright-line exclusions: (1) borrowers involved in a bankruptcy, (2)  borrowers which have defaulted on federal

loans in the past, and (3) borrowers with certain types of criminal history. While Weather King offers no explanation for the latter two exclusions (and, in fact, incorrectly identifies bankrupt debtors as the sole category of applicants excluded from PPP participation),[7] all three categories directly address the sound-value problem with a simple, easy-to-apply solution.[8]

This Court's review of SBA's decision making is by no means a rubber stamp; the deference owed to SBA under an arbitrary and capricious challenge requires the Court to ensure that such decision making is reasoned. *Judulang v. Holder*, 565 U.S. 42, 53 (2011). Yet, as the *Tradeways* court pointed out, even though SBA could have taken different approaches, like prioritizing accessibility to the PPP over efficiency or by excluding only the most categorically risky bankruptcy debtors from eligibility, those alternatives do not undercut SBA's reasonable "interpretation of the priorities evinced in the CARES Act." 2020 WL 3447767 at * 15.

### B. The bankruptcy exclusion as applied to Weather King does not amount to impermissible retroactive rulemaking.

Next, Weather King argues that the Fourth IFR cannot be applied to it because it was promulgated after Weather King's application for and receipt of PPP loan funds. (ECF No. 17, PageID# 194). Weather King explains that the Frequently Asked Questions appearing on SBA's website following the Fourth IFR state that borrowers who submitted applications before the Fourth IFR need not take action. (*Id.* at PageID# 195).[9] SBA counters that Weather King had

---

[7] *See* ECF No. 22, PageID# 307.

[8] The criminal history questions pre-date the PPP, and have been interpreted as implicating creditworthiness. *See, e.g.*, *Defy Ventures, Inc. v. U.S. Small Bus. Admin.*, 469 F. Supp. 3d 459, 466–67 (D. Md. 2020) ("[T]o ensure creditworthiness, the SBA will consider the '[c]haracter [and] reputation" of the applicant. 13 C.F.R. § 120.150(a). Therefore, businesses with associates '[c]urrently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction' are also ineligible for financial assistance. SBA, SOP 50 10 5(K); *Bros. Petroleum, LLC v. United States*, 569 F. Supp. 3d 405, 411 (E.D. La. 2021) (explaining that the SBA considers criminal history for its loans for creditworthiness purposes).

[9] The Frequently Asked Questions appearing on SBA's website also state that they "[do] not carry the force and effect of law independent of the statutes and regulations on which [they are] based." (ECF No. 15-5, PageID# 143).

actual notice of the bankruptcy exclusion because of the application, and therefore the typical notice requirements do not matter.  (ECF No. 23, PageID# 352).

Having already explained that the bankruptcy exclusion cannot be construed as "retroactive rulemaking" under *Landgraf*, the Court turns to SBA's notice argument.  "Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published."  5 U.S.C. § 552(a)(1).

Weather King argues that the application does not afford bankruptcy debtors with actual notice of the bankruptcy exclusion because the application question is compound and confusing. (ECF No. 22, PageID# 332–34).  The application asks: "Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy?"  (ECF No. 19-4, SBA Form 2483, PageID# 278).  Weather King offers a strained reading of this question, suggesting that it could be read to ask whether the issue of a "proposed debarment" is the subject of a federal agency proceeding or bankruptcy.  This reading is not based in any tenant of grammatical construction and defies the English language. At bottom, if the question were whether the issue of an applicant's debarment is the subject of agency of bankruptcy court proceedings, the Court is left to wonder what to do with the words "voluntarily excluded from participation in this transaction," which appear to have no place in Weather King's reading.  In fact, Weather King's proposed reading omits this phrase as well: "Is the Applicant or any owner of the Applicant presently . . . proposed for debarment . . . by any Federal department or agency, or presently involved in any bankruptcy?"

A plainer reading reveals that it is an inartfully written, four-part question: "Is the Applicant or any owner of the Applicant [1] presently suspended, debarred, proposed for debarment, [2] declared ineligible, [3] voluntarily excluded from participation in this transaction by any Federal department or agency or [4] presently involved in any bankruptcy?" The multi-part aspect of the question aside, this is, as the Eleventh Circuit put it, "[a] straightforward request for a straightforward answer." *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1250 (11th Cir. 2020) (analyzing this question in context of PPP borrower, which misrepresented its bankruptcy status on SBA Form 2483). The statement above question one then provides: "If questions (1) or (2) below are answered 'Yes,' the loan will not be approved." (ECF No. 19-4, PageID# 278). Weather King does not dispute that it completed and signed SBA Form 2483. (ECF No. 18, PageID# 202, ¶ 5).

Moreover, the certifications required by both the CARES Act and the First IFR buttress the question-one bankruptcy exclusion by requiring applicants to certify in good faith (1) "All SBA loan proceeds **will be used** only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule[;]" and similarly, (2) "The funds **will be used** to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud." (ECF No. 19-4, SBA Form 2483, PageID# 278) (emphasis added).

Weather King's bankruptcy filings evidence its understanding that, as a debtor-in-possession in a Chapter 11 reorganization, *it could not certify in good faith how its PPP loan proceeds would be used because it lacked the autonomy to do so*. Weather King's May 5, 2020

Emergency Motion petitioned the Bankruptcy Court to authorize (by post-hoc ratification) its application for credit via the PPP.  (ECF No. 66, Case No. 19-52957-amk).  Weather King's Motion articulated reasons why the Bankruptcy Court should accept and approve (and again, ratify) Weather King's exercise of business judgment in obtaining the loan.  (*Id.*).  It also explained how Weather King must use the loan proceeds as required by SBA's Rule and how the PPP loan would benefit Weather King's creditors.  (*Id.*).  Weather King's Motion for Summary Judgment acknowledges these facts as well.  (ECF No. 17, PageID# 184).

Absent the Bankruptcy Court's approval of Weather King's Emergency Motion, Weather King does not dispute that the PPP loan proceeds would have been accessible by Weather King's other creditors.  This is SBA's very justification for the bright-line bankruptcy exclusion.  The difference between debtors in possession and non-bankrupt entities is that debtors in possession lack corporate autonomy and cannot, without bankruptcy court approval, exercise the kind of business judgment required to certify in good faith how the loan proceeds will be used.  Those certifications are the most critical aspect of the PPP loan application process, and are expressly required by both the CARES Act and SBA's rules.

The Court therefore finds that Weather King had actual knowledge of the bankruptcy exclusion based on its completion of SBA Form 2483 and its conduct thereafter.  Question one makes clear that bankrupt debtors are ineligible for the PPP; the certifications identified and described directly in the First IFR and the CARES Act required applicants to affirmatively certify the manner in which the funds would be used.  Weather King knew it could not do this.[10] Accordingly, Weather King's as-applied arguments are without merit.

---

[10] Having determined that Weather King had actual knowledge of the bankruptcy exclusion, this Court need not determine whether SBA Form 2483 is a "publication" that had to be explicitly incorporated by reference into the First IFR.  *See* 5 U.S.C. 552(a)(1) ("Except to the extent that a person has actual and timely notice of the terms thereof, a

     **c.**     **The rule excluding bankruptcy debtors as a singular class of applicants from PPP eligibility does not violate 11 U.S.C. § 525(a).**

Finally, Weather King argues that 11 U.S.C. § 525(a) prohibits SBA from denying a bankrupt debtor's participation in the PPP based solely on bankruptcy status. (ECF No. 17, PageID# 197). Section 525(a) of the Bankruptcy Code provides that "a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, [or] discriminate with respect to such a grant against . . . a person that is or has been a debtor under this title . . . ." Section 525(a) embodies the congressional policy that the bankruptcy process is intended to give debtors a fresh start. *In re Rose*, 23 B.R. 662, 666–67 (Bankr. D. Conn. 1982).

Weather King argues that PPP loans are subsidies or grants based on the program's easily-obtainable loan forgiveness. (*Id.* at PageID# 198–99). SBA counters that PPP loans are just that: loans. (ECF No. 19, PageID# 228). SBA points out that PPP loans have the same features as most other loans. (*Id.* at PageID# 229). For example, PPP loans carry an interest rate, mature after two years, and may be refinanced. 85 Fed. Reg. 20,814. PPP loans require borrowers to execute a promissory note and include amortization terms and conditions. *Id.* at 23,450. Furthermore, there are eligibility requirements for PPP loan forgiveness; until a borrower's compliance with the eligibility terms is confirmed, all borrowers have a payment obligation. Since PPP loans are indeed loans, SBA contends that they are not covered by section 525 and do not run afoul of the Bankruptcy Code. (*Id.* at PageID# 230).

The Sixth Circuit spoke on this issue more than twenty years ago in *Toth v. Mich. State Hous. Dev. Auth.*, 136 F.3d 477 (6th Cir. 1998), expressly rejecting the reading of section 525(a)

---

person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published.").

that Weather King implores this Court to adopt.  In *Toth*, the Court refused to read section 525(a) broadly, noting that, at that time, the Second and Third Circuits had construed section 525(a) narrowly and within the spirit in which Congress originally drafted it:

> The items enumerated in the statute—licenses, permits, charters, and franchises—are benefits conferred by government that are unrelated to the extension of credit.  They reveal that the target of §525(a) is government's role as a gatekeeper in determining who may pursue certain livelihoods.  It is directed at governmental entities that might be inclined to discriminate against former bankruptcy debtors in a manner that frustrates the "fresh start" policy of the Bankruptcy Code, by denying them permission to pursue certain occupations or endeavors.  The intent of Congress incorporated into the plain language of § 525(a) should not be transformed by employing an expansive understanding of the "fresh start" policy to insulate a debtor from all adverse consequences of a bankruptcy filing or discharge.  A reckoning of an applicant's financial responsibility is an essential part of any lender's evaluation of a post-discharge application for a loan or extension of credit.

136 F.3d at 480.  Weather King argues that a loan may exist in name only and function as a subsidy, thus entitling a debtor to section 525(a) protection.  (ECF No. 17, PageID# 199 (citing *In re Haffner*, 25 B.R. 882 (N.D. Ind. 1982)).  However, the Sixth Circuit's explanation of what is and is not covered by section 525 makes clear that a private extension of credit—even a potentially forgivable, federally guaranteed loan—is not of the same type of government benefit that Congress meant to preserve for bankrupt debtors.

The Second Circuit also recently addressed this issue in *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403 (2d Cir. 2022).  It noted that "grant" is undefined and thus should be afforded its ordinary meaning.  *Id.* at 418.  Since the words "other" and "similar" appear in the list of matters upon which the government may not discriminate against bankruptcy debtors, "grant's" meaning must be narrowed "to only those [grants] that conceivably resemble the other listed terms in the statute—licenses, permits, charters, and franchises."  *Id.* at 419 (applying the canon of construction *noscitur a sociis*, which "counsels that a word is given more precise content by the neighboring

40

words with which it is associated") (quoting *Houmaidan v. Sallie Mae, Inc.*, 3 F.4th 595, 604 (2d Cir. 2021)).

According to *Springfield*, the list of words in section 525(a) share two commonalities: "they are (1) unobtainable from the private sector, and (2) essential to a debtor's fresh start." *Id.* at 419 (quoting *Stoltz v. Battleboro Hous. Auth. (In re Stoltz)*, 315 F.3d 80, 90 (2d Cir. 2002)).[11] District courts that have passed on this matter have similarly narrowed the possible meanings of "grants" to be consistent with the other listed words in section 525(a). *See, e.g.*, *Diocese of Rochester v. U.S. Small Bus. Admin.*, 466 F. Supp. 3d 363, 379 (W.D.N.Y. 2020) (holding that "even if PPP loans were properly characterized as 'grants,' they are not grants that are similar to a license, permit, charter, or franchise"); *Tradeways, Ltd. v. U.S. Dep't of Treasury*, No. ELH-20-1324, 2020 WL 3447767, at *18 (D. Md. June 24, 2020) (holding that PPP loans are not grants " 'similar' to a 'license, permit, charter, franchise' issued by the government").

Finally, the Consolidated Appropriations Act of 2021 amends section 525 of the Bankruptcy Code to add a new subsection that expressly bars discrimination based on bankruptcy status in the provision of certain CARES Act benefits, but not PPP loans. *See* 11 U.S.C. § 525(d). The *Archbishop of Agaña* court observed this conspicuous absence from the Act, stating, "had congress intended for section 525 to apply to PPP loan guarantees, it would have stated so expressly in the Consolidated Appropriations Act, 2021, as it did with the amendment addressing federally-backed multifamily mortgage loans and in the immediately preceding subsection for student loans through prior amendment." *In re Archbishop of Agaña*, No. 20-00002, 2021 WL 1702311, at 8 (D. Guam, Feb. 23, 2021).

---

[11] Weather King's reliance on *Stolz* is also inapposite. In *Stolz*, the Court determined that a lease was a "grant" within the ambit of section 525(a), but only because "lease" is within the Black's Law Dictionary definition of "grant." 315 F.3d at 90. The same cannot be said of the term "loan," which does not appear in the definition of "grant" nor "subsidy."

*Springfield*'s reading of the EAA (which is within the Consolidated Appropriations Act of 2021), ends the inquiry: "If we were to read Section 525(a) as covering PPP loans—if we were to assume all bankrupt debtors were already protected from discrimination *without* requiring the approval from the Administrator—this provision [of the EAA extending PPP eligibility to certain bankrupt debtors conditioned on the SBA Administrator's approval] would be meaningless." *Id.* at 427.

<u>CONCLUSION</u>

The Court finds, as a matter of law, that the bankruptcy exclusion was a reasonable interpretation of the CARES Act within SBA's statutory authority, and that the bankruptcy exclusion is not arbitrary, capricious, or based on an abuse of discretion nor violative of 11 U.S.C. § 525(a). The Court further finds, as a matter of law, that SBA did not engage in retroactive rulemaking as applied to Weather King, and that the bankruptcy exclusion should be enforced against Weather King accordingly.

It is therefore ORDERED, ADJUDGED, and DECREED that SBA's Motion for Summary Judgment (ECF No. 19) is GRANTED, and Weather King's Motion for Summary Judgment (ECF No. 16) is DENIED.

It is further ORDERED, ADJUDGED, and DECREED that the Bankruptcy Court's Preliminary Injunction (Case No. 20-05023, ECF No. 26) is hereby VACATED.

**IT IS SO ORDERED.**

**Dated: January 31, 2023**

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**